## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTRA-NATIONAL HOME CARE, LLC, and AMERICARE HOME HEALTHCARE SERVICES, LLC, | |
| *Plaintiffs*, | No. 2:20-cv-01545-WSH |
| v. | |
| DEPARTMENT OF LABOR, et al., | |
| *Defendants*, | |
| AGEWELL HOME HELPERS, Inc., | |
| *Plaintiff*, | No. 2:20-cv-01773-WSH |
| v. | |
| DEPARTMENT OF LABOR, et al., | |
| *Defendants*. | |

## ** ORAL ARGUMENT REQUESTED **

## MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' RENEWED MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

BACKGROUND.......................................................................................................... 3

STANDARDS OF REVIEW......................................................................................... 4

ARGUMENT ................................................................................................................ 5

I.    Sovereign Immunity Does Not Prohibit Plaintiffs' Preenforcement Suits. ...... 5

    A.    Under *Ex Parte Young*, pre-enforcement suits seeking to restrain
        enforcement of unlawful government actions are not barred by
        sovereign immunity.................................................................................. 6

    B.    The Declaratory Judgment Act and the APA expand the availability of
        pre-enforcement review and waive sovereign immunity in suits for
        non-monetary relief. ................................................................................ 8

    C.    The APA's waiver of sovereign immunity applies here. ...................... 11

II.   Plaintiffs Have Adequately Pled that the Care Workers Are Eligible For the
    Live-In Exemption. ......................................................................................... 15

III.  The Statute of Limitations Does Not Warrant Dismissal............................... 17

    A.    The statute of limitations does not apply to APA claims seeking only
        equitable relief...................................................................................... 17

    B.    In any event, Plaintiffs' claims are timely under § 2401(a). ............... 20

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case is about whether, under *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984), a federal agency may destroy home care businesses across the country by construing the Fair Labor Standards Act (FLSA) in a manner that conflicts with Supreme Court precedent and ignores basic economic realities. The answer is no.

Right now, however, what is before the Court is the Government's remarkable contention that sovereign immunity bars this pre-enforcement suit because it would somehow interfere with the Government's enforcement discretion. That contention flunks Rule of Law 101. Both the Administrative Procedure Act (APA), 5 U.S.C. § 702, and foundational caselaw, *see Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), establish that plaintiffs "may challenge [a] regulation without waiting for enforcement proceedings." *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 822 (6th Cir. 2015) (Sutton, J.). "That makes sense, as courts 'normally do not require plaintiffs to bet the farm'" by waiting until the Government brings an enforcement action, possibly after years of crippling investigations. *Id.* (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 490–91 (2010)). The Government's contention also misconstrues the pleadings, as Plaintiffs do not ask this Court to direct the Agency's lawful discretionary, investigative, or enforcement functions. Rather, they ask the Court to "hold unlawful and set aside" an invalidly promulgated rule, the ordinary remedy for an APA pre-enforcement suit. 5 U.S.C. § 706(2).

The Government also asks that this action be dismissed for failure to state a claim based on the Little Tucker Act's six-year statute of limitations, 28 U.S.C. § 2401(a), which it asserts began running when the challenged Rule was published in October 2013. 78 Fed. Reg., 60,454 (Oct. 1, 2013). This is wrong for several reasons. As an initial matter, there is no reason to think that this 19th century statute of limitations even applies to pre-enforcement suits like this one that seek only equitable relief. As the Supreme Court noted in *Abbott Laboratories*, declaratory relief in an APA case is an *equitable* remedy, so the timeliness of a pre-enforcement suit is instead subject to the doctrine of laches. 387 U.S. at 155. And laches is available *only* where no federal statute of limitations applies. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 679 (2014).

But even if § 2401(a) applies here, the clock did not start ticking until Plaintiffs' claims "accrued," which the Third Circuit has said does not happen until "the plaintiff either knew, or in the exercise of reasonable diligence should have known, that [it] had a claim." *Paucar v. Att'y General of U.S.*, 545 F. App'x 121, 124 (3d Cir. 2013) (internal quotation marks omitted). Two of the three Plaintiffs *did not even exist* when the rule was published in October of 2013, so their right to relief could not have possibly accrued then. Their rights accrued only when they were first created in 2015 and in 2016. They filed suit less than six years later, so their suits are timely.

As for the other Plaintiff, "[d]ifferent legal wrongs give rise to different rights of action." *Herr*, 803 F.3d at 820. A party is subject to a new legal wrong every time

it accrues a new liability under an invalid rule, so its claims are also timely. And contrary to the Government's suggestion, an agency's interest in insulating its rules from judicial control after six years is not absolute. After all, "[r]egulated parties may always assail a regulation as exceeding the agency's statutory authority in enforcement proceedings against them." *Id.* at 821. They may also do so in pre-enforcement actions whenever they suffer new legal wrongs. *Id.*

## BACKGROUND

Plaintiffs process Medicaid and payroll documents for home care workers that give aid and companionship to elderly and disabled family members. The families in this case are ethnically Nepalese refugees from Bhutan who were resettled in the United States after being exiled by the Bhutanese government. Plaintiffs provide the administrative and payroll services necessary for refugee families to qualify for Medicaid reimbursements so that they can care for their elderly and infirm family members at home.

These home care workers are exempt from the FLSA's overtime requirements under the "companionship services" and "live-in" exemptions. 29 U.S.C. §§ 213(a)(15), (b)(21); Consol. Compl., Doc. No. 25 ¶¶ 59–71. Before 2013, the Department of Labor had always interpreted the exemptions as applicable to any employees that met the statutory terms, regardless of who the employer was. But in 2013, the Department promulgated a rule purporting to make the FLSA's exemptions inapplicable to so-called "third party employers," *i.e.*, employers who are

not members of the family or household receiving the care workers' services. 29 C.F.R. § 552.109.

The FLSA's overtime requirements would subject Plaintiffs to crushing liability, destroy their family-oriented business model, and result in thousands of disabled and infirm refugees forgoing care from their loved ones. Consequently, when the Department of Labor began investigating Plaintiffs for alleged FLSA violations, Plaintiffs brought these pre-enforcement suits under the APA, asking the Court to set aside the 2013 rule as contrary to law and arbitrary and capricious agency action. Consol. Compl. Doc. No. 25 ¶¶ 156–167.[1]

The Government moves to dismiss these claims on two grounds. First, the Government argues that Plaintiffs' claims are jurisdictionally barred by sovereign immunity. And second, the Government argues that the claims are barred by the six-year statute of limitations.

## STANDARDS OF REVIEW

**Rule 12(b)(1)**. The burden demonstrating sovereign immunity lies with the party asserting that defense. *E.g.*, *Garcia v. Richard Stockton Coll. of N.J.*, 210 F. Supp. 2d 545, 548 (D.N.J. 2002). In a facial challenge like this one, the Court

---

[1] The Consolidated Complaint initially also sought declaratory judgment that Plaintiffs are not "employers" under the FLSA and, in the alternative, that certain states should be deemed joint employers. The parties recently stipulated to dismiss these claims without prejudice. *See* Doc. No. 34.

considers all plausible factual allegations in the amended complaint to be true. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006).

**Rule 12(b)(6)**. Under Rule 12(b)(6), the Court accepts "as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (quotation marks and citations omitted). "When an amended complaint does not reference or incorporate the prior complaint, the modified complaint functions as the operative complaint, superseding the prior complaint in its entirety." *Kitt v. City of Pittsburgh*, 2016 WL 640534, at *3 n.3 (W.D. Pa. Feb. 18, 2016).

## ARGUMENT

### I. SOVEREIGN IMMUNITY DOES NOT PROHIBIT PLAINTIFFS' PRE-ENFORCEMENT SUITS.

The Government's argument that the doctrine of sovereign immunity prohibits Plaintiffs' challenge to the 2013 Rule misapprehends the basic rules that apply to pre-enforcement review. As explained below, the Government's position is impossible to square with a century of Supreme Court precedent and with the plain text of the APA.[2]

---

[2] The Government's contention that the federal question statute (28 U.S.C. § 1331) and the Declaratory Judgment Act (28 U.S.C. § 2201(a)) do not waive sovereign immunity is a red herring. Plaintiffs never alleged otherwise; the Consolidated Complaint cites these statutes because they are necessary to establish other aspects of subject matter jurisdiction that the Government does not challenge.

### A. Under *Ex Parte Young*, pre-enforcement suits seeking to restrain enforcement of unlawful government actions are not barred by sovereign immunity.

"All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it." *United States v. Lee*, 106 U.S. 196, 220 (1882). Thus, for well over a century, the Supreme Court recognized that "the exemption of the United States from judicial process does not protect their officers and agents . . . from being personally liable to an action of tort by a private person whose rights of property they have wrongfully invaded or injured, even by authority of the United States." *Belknap v. Schild*, 161 U.S. 10, 18 (1896). And sovereign immunity never prevented defendants from challenging the validity of a statute or rule in enforcement suits, as "[a]sserting a defense against a government does not offend its sovereign immunity." John Harrison, *Ex Parte Young,* 60 Stan. L. Rev. 989, 996 (2008).

But because after-the-fact suits for damages or defenses in enforcement proceedings were sometimes inadequate to protect individual rights, federal and state officers were also *preemptively* subject to the equitable power of the federal courts. In *Ex Parte Young,* the Supreme Court affirmed an injunction restraining the Attorney General of Minnesota from enforcing an unconstitutional state rate-regulation law over objections of sovereign immunity. 209 U.S. 123 (1908). *Ex Parte Young* recognized that sovereign immunity was not implicated because a "negative injunction was nothing more than the pre-emptive assertion in equity of a defense that would otherwise have been available in . . . enforcement proceedings at law."

6

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 262, (2011) (Kennedy, J.,

concurring) (citing *Ex Parte Young*, 209 U.S. at 165–66); *see also* Harrison, *supra*, at

997–99.

As relevant here, in *Ex Parte Young*, Mr. Young, the Minnesota Attorney

General, argued that anti-suit injunctions were barred by sovereign immunity

because they interfered with the sovereign's enforcement discretion. 209 U.S. at

158–59. The Supreme Court roundly rejected this argument, reasoning that the

Attorney General's

> discretion regarding the enforcement of the laws when and as he
> deems appropriate is not interfered with by an injunction which
> restrains the state officer from taking any steps towards the
> enforcement of an unconstitutional enactment, to the injury of
> complainant. In such case no affirmative action of any nature is
> directed, and the officer is simply prohibited from doing an act which
> he had no legal right to do.

*Id*. at 159. Unlike suits seeking to compel official action, like the payment of money

from the Treasury or the "specific performance of a State's contract," *Va. Office for

Prot. & Advocacy*, 563 U.S. at 257, under *Young,* pre-enforcement suits seeking to

invalidate official action are not defeated by sovereign immunity. 209 U.S. at 158–

59. As in an enforcement action, sovereign immunity cannot defeat an anticipatory

affirmative defense of invalidity.

*Ex Parte Young* applies "not only with respect to violations of federal law by

state officials, but also with respect to violations of federal law by federal officials."

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *see also* Richard

H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System*

892 (7th ed. 2015) (*Young*'s "principle . . . has also come to apply in suits challenging *federal* official action."). Both before and after the APA was enacted, federal courts have often entertained suits to restrain the enforcement of unlawful federal agency action without regard to sovereign immunity. *See, e.g.*, *Shields v. Utah Idaho Cent. R.R. Co.*, 305 U.S. 177 (1938) (pre-APA case affirming anti-suit injunction restraining prosecutions under the Railway Labor Act based on invalid agency order); *Abbott Labs.*, 387 U.S. at 140; *Herr*, 803 F.3d at 822.

### B. The Declaratory Judgment Act and the APA expand the availability of pre-enforcement review and waive sovereign immunity in suits for non-monetary relief.

The Declaratory Judgment Act of 1934 expanded the number of plaintiffs that could seek pre-enforcement review before violating a federal regulation. 28 U.S.C. § 2201. Under the Declaratory Judgment Act, relief is available "irrespective of whether the suit would have been cognizable in equity or whether plaintiff would have had an adequate remedy at law in defending actions at law instituted by the defendants." *Anderson v. Aetna Life Ins. Co.*, 89 F.2d 345, 347–48 (4th Cir. 1937); *accord* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). Hence, the equitable requirement to prove, as in *Young*, the inadequacy of judicial review in enforcement proceedings at law, is no bar to seeking pre-enforcement declaratory relief.

The APA of 1946 codified existing doctrine allowing pre-enforcement review. Section 10(a) of the Act recognized that "[a]ny person suffering legal wrong because

of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof." Administrative Procedure Act, ch. 324, § 10(a), 60 Stat. 243 (1946). Section 10(b) further recognized that review could be had through "proceeding[s] for judicial review" or "any applicable form of legal action (including actions for declaratory judgments . . .) in any court of competent jurisdiction." *Id.* § 10(b). Under the APA, judicial review of agency action is available "without specific statutory authorization, even though the action challenged was neither ultra vires nor unconstitutional, and even though the suit by which review was sought was, all but nominally, against the United States." *See* Antonin Scalia, *Sovereign Immunity and Nonstatutory Review of Federal Administrative Action: Some Conclusions from the Public-Lands Ca*ses, 68 Mich. L. Rev. 867, 1917 (1970).

The Supreme Court interpreted the APA and the Declaratory Judgment Act in the landmark case of *Abbott Laboratories v. Gardner.* 387 U.S. 136 (1967). *Abbott Laboratories* "revolutionized administrative law by also allowing facial, pre-enforcement challenges to agency orders, absent statutory preclusion of such pre-enforcement review." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2060 (2019) (Kavanaugh, J., concurring) (emphasis omitted). In *Abbott Laboratories*, the Supreme Court allowed drug companies to seek pre-enforcement review of a rule promulgated by the Food and Drug Administration; the Supreme Court recognized that "it was the very purpose of the Declaratory Judgment Act to ameliorate" the need to wait until enforcement actions are brought to test the

9

validity of a rule, 387 U.S. at 152, and it also recognized that pre-enforcement suits raise presumptively reviewable APA claims, *id*. at 140.

Despite all this, some federal courts still got sovereign immunity wrong in APA cases. Scalia, *supra*, at 923 n.249 (collecting cases). Prior to 1976, in so-called "nonstatutory review" cases arising under the APA, courts would sometimes draw mystifying distinctions between unconstitutional or *ultra vires* agency actions and other kinds of unlawful actions, like abuses of agency discretion or declaratory cases in the nature of mandamus. *See Schlafly v. Volpe*, 495 F.2d 273, 281 (7th Cir. 1974) (highlighting the confusion); H.R. Rep. 94-1656, at 5–10, 1976 U.S.C.C.A.N. 6121, at 6125–30 (1976) (same).

To eliminate this confusion, section 10 of the APA was amended in 1976 to expressly "waive[] the Federal Government's immunity from a suit 'seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.' " *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The amendment's purpose was "to remove the defense of sovereign immunity as a bar to judicial review of federal administrative action otherwise subject to judicial review." H.R. Rep. 94-1656, at 1, 1976 U.S.C.C.A.N. 6121, at 6121 (1976). If the APA claim seeks relief other than monetary damages, no sovereign immunity applies. 5 U.S.C. § 702.

10

### C. The APA's waiver of sovereign immunity applies here.

This is a garden-variety APA pre-enforcement suit. Plaintiffs claim that a final rule, 29 C.F.R. § 552.109, is unlawful and arbitrary or capricious and should therefore be set aside under 5 U.S.C. § 706. *See* Consol. Compl., Doc. No. 25 ¶¶ 156–160 (Count 1) and ¶¶ 161–167 (Count 2). And Plaintiffs specifically allege that this Court has authority to hear this case "under the judicial review provisions of the Administrative Procedure Act." *Id.* ¶ 21.

The final rule makes Plaintiffs ineligible for the companionship services or live-in exemptions and thus unlawfully subjects them to potential FLSA liability. Plaintiffs therefore plead a "legal wrong." 5 U.S.C. § 702. Plaintiffs seek only declaratory and non-monetary equitable relief against the United States and its officers acting under color of federal law and are thus covered by the express terms of the APA's waiver. *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 400 (3d Cir. 2012). Under *Ex Parte Young* and the APA, sovereign immunity does not bar this suit. The Government's sovereign immunity argument therefore fails. It is that simple.

But the Government tries to confuse the issue. Relying on *Gentile v. SEC*, 974 F.3d 311 (3d Cir. 2020), the Government argues that because "the essential purpose of these actions" is to stop enforcement suits under the FLSA, the lawsuit seeks review of agency action "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and therefore falls outside the scope of the APA's framework, including the sovereign immunity waiver. Doc. 30-1, 13 (citing *Gentile*, 974 F.3d at 316–17).

11

The Government's argument misses the mark. In general, agency action is "committed to agency discretion by law" *only* when "there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 79-752, at 26 (1945)). Only a limited set of agency actions are presumed to be committed to agency discretion by law, including, as the Government points out, whether to open an investigation or whether to institute enforcement suits in particular cases. *See Gentile*, 974 F.3d at 319 (citing examples). The famous *Attorney General's APA Manual*, for example, cites "the refusal by the National Labor Relations Board to issue a complaint" against an employer as one typical example of discretionary action. U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 136 (1947). The rationale for this presumption is that discretionary actions like whether to bring suit are purely executive decisions that involve no legal wrong against an individual and raise resource-prioritization questions that are best left to the Executive's nigh-unreviewable discretion. *See Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985). This is black-letter law, but it is irrelevant to a facial challenge to a rule's legality.

The claims at issue here are not subject to this narrow presumption against judicial review. Unlike in *Gentile*, where the plaintiff sought review of the SEC's decision to initiate an investigation, 974 F.3d at 318–19, Plaintiffs in this case seek to invalidate a final rule, 29 C.F.R. § 552.109, claiming it is contrary to law and arbitrary and capricious. Consol. Compl., Doc. No. 25 ¶¶ 156–167. This suit is thus an ordinary APA pre-enforcement claim under *Abbott Laboratories* and its progeny,

so it falls squarely within its "basic presumption of judicial review [for] one suffering legal wrong because of agency action." *Weyerhaeuser Co. v. U. S. Fish and Wildlife Serv.*,139 S. Ct. 361, 370 (2018) (internal quotation marks omitted). As in any ordinary suit involving the validity of a rule, there are "judicially manageable standards," *Heckler*, 470 U.S. at 830, here: either the rule is a legally sound and reasonable interpretation of the FLSA's exemptions, or it is not.

Nor is there anything special about Plaintiffs' requested relief. Even without an injunction, the APA remedy of vacatur would make the FLSA unenforceable against Plaintiffs. As the Third Circuit has put it: "at the merits stage, courts invalidate—without qualification—unlawful administrative rules as a matter of course, leaving their predecessors in place until the agencies can take further action." *Pennsylvania v. President, United States*, 930 F. 3d 543, 575 (3d Cir. 2019). But as with anti-suit injunctions, this remedial consequence does not interfere with the agency's enforcement discretion; rather, it sets the boundaries within which enforcement discretion may be lawfully exercised. *Ex Parte Young* is gin clear on this point:

> [The government's discretion] is not interfered with by an injunction which restrains the state officer from taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainant. In such case no affirmative action of any nature is directed, and the officer is simply prohibited from doing an act which he had no legal right to do.

209 U.S. at 159. As in *Young,* Plaintiffs seek one thing only: an order prohibiting federal officials from "doing an act which [they have] no legal right to do," *id.*, so

their APA claims and requested relief are not barred by sovereign immunity. Plaintiffs therefore "may challenge [a] regulation without waiting for enforcement proceedings." *Herr*, 803 F.3d at 822. Regulated entities do not have to "bet the farm" by first violating the rule and defending against enforcement actions. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 490 (2010).

The Government's argument to the contrary in this matter conflicts with over a century of Supreme Court precedent and has no limiting principle. *Every* APA pre-enforcement suit has the "essential purpose," Doc. 30-1 at 13, of restraining enforcement suits, including *Abbott Laboratories* and *Ex Parte Young*. That is why they are called *pre*-enforcement suits. The Government's contention that "[a]n employer seeking to avoid liability under the FLSA may not sue the Secretary of Labor for declaratory relief" is thus incorrect. Doc. No. 30-1 at 11. In fact, the first case it cites explicitly rejects the Government's conclusion. *Herman v. Excel Corp.*, 37 F. Supp. 2d 1117, 1119–21 (C.D. Ill. 1999) (holding that, while the FLSA "does not provide for a declaratory judgment action by an employer against the Secretary of Labor," declaratory judgment was nevertheless proper under the APA).

The other two district court cases the Government cites do not support it either. The first, *Usery v. Brandel*, did not even consider whether declaratory relief is available under the APA. 1981 WL 2305, at *2 (W.D. Mich. Apr. 8, 1981). The Government's reliance on *Wohl Shoe Co. v. Wirtz*, 246 F. Supp. 821, 821–22 (E.D. Mo. 1965), is even more puzzling. To be sure, the Government is correct that *Wohl Shoe* rejected pre-enforcement review in a similar context, holding that because of

14

sovereign immunity the Labor Department's actions were "contestable only when the Secretary [of Labor] seeks enforcement by suit" under the FLSA. *Id.* at 822. But this decision was handed down two years before the Supreme Court's landmark decision in *Abbott Laboratories* and more than a decade before Congress amended the APA in 1976 to explicitly waive sovereign immunity. It is in no way good law.

The Government's failure to mention these points, or to even acknowledge the existence of pre-enforcement review, is odd. Defending pre-enforcement suits is the bread and butter of the Federal Programs Branch of the Justice Department, which represents the Department of Labor in this case. And when, in prior litigation, other plaintiffs raised *identical* APA claims in the Court of Appeals for the D.C. Circuit, the Government never raised any sovereign immunity defense, likely because any such argument would border on frivolous. *See generally Home Care Ass'n v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015). The claims here are virtually the same, and if anything, this case is riper for judicial review than *Weil* given the ongoing investigations and enforcement suits already brought against Plaintiffs.[3]

## II.  PLAINTIFFS HAVE ADEQUATELY PLED THAT THE CARE WORKERS ARE ELIGIBLE FOR THE LIVE-IN EXEMPTION.

The 2013 Rule purports to set forth binding interpretations of both the FLSA's exemptions for companionship services (29 U.S.C. § 213(a)(15)) and live-in

---

[3] Plaintiffs were not parties to that suit and are not "'bound by [it]s decree.'" *PDR*, 139 S. Ct. at 2060 (Kavanaugh, J., concurring) (quoting *Abbott Labs.*, 387 U.S. at 154).

domestic workers (29 U.S.C. § 213(b)(21)). *See* 29 C.F.R. § 552.109. Plaintiffs' pre-enforcement challenge seeks vacatur of both provisions. *See* Consol. Compl., Doc. No. 25 ¶¶ 160, 166–67.

In a footnote, the Government argues that Plaintiffs failed to adequately allege in their *initial* complaints that any of their care workers is a live-in domestic employee, and that Plaintiffs' Consolidated *Amended* Complaint challenging the Government's interpretation of the live-in exemption is therefore insufficient to create standing to challenge that part of the rule. Doc. 30-1, 4 n.5.

This argument is meritless. The operative complaint, not a previous pleading, controls. *See Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) ("[I]n general, an amended pleading . . . supersedes the earlier pleading and renders the original pleading a nullity."). The Consolidated Amended Complaint directly addresses the issue the Government asserts was missing from the initial complaints, alleging that the care workers at issue are exempt from the FLSA's coverage under the live-in exemption, Consol. Compl., Doc. No. 25 ¶ 6, because these care workers "are family and *household members* paid for assistance expected of a family or *household member* . . . [and] not 'vocational' employees working outside of their home to care for others," *id.* ¶ 135 (emphasis added); *accord id.* ¶ 9 (The workers provide "in-home companionship services to elderly or disabled family or *household members* of low-income families.") (emphasis added).

The Government says nothing about these passages, which readily meet the low threshold of alleging sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. THE STATUTE OF LIMITATIONS DOES NOT WARRANT DISMISSAL.

### A. The statute of limitations does not apply to APA claims seeking only equitable relief.

The APA does not itself contain any timing limitations. And, for the first four decades of its existence, courts either held that no limitations period applied or that APA pre-enforcement challenges were subject to the equitable doctrine of laches. In *Abbott Laboratories*, for example, the Supreme Court explained that, because the remedies of "declaratory judgment and injunctive [relief] are equitable in nature," they are subject to equitable defenses in APA pre-enforcement review challenges. 387 U.S. at 155. Thus, "[t]he defense of laches could be asserted if the Government is prejudiced by a delay." *Id.*; *see also Petrowicz v. Holland*, 142 F. Supp. 369, 374 (E.D. Pa. 1956).

This point is dispositive. The equitable defense of laches "cannot be invoked" "in face of a statute of limitations enacted by Congress." *Petrella*, 572 U.S. at 679. This is because "courts are not at liberty to jettison Congress' judgment on the timeliness of suit." *Id.* at 667; *see also United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at law."). This rule applies here. The six-year statute of limitations for suits against the Government, 28 U.S.C. § 2401(a), is "not controlling" when a plaintiff sues the

Government "to enforce rights cognizable only in equity"; rather, timeliness is analyzed under the doctrine of laches. *Saffron v. Dep't of the Navy*, 561 F.2d 938, 943 (D.C. Cir. 1977); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief."). Conversely, if a claim against the Government sounds in law or involves both law and equity concurrently (for example, if a fired employee seeks both damages and reinstatement), then § 2401(a) applies, *not* laches. *Saffron*, 561 F.2d at 943; *accord Petrella*, 572 U.S. at 677–78.

The upshot is this: when *Abbott Laboratories* concluded that the equitable defense of laches *was* available in pre-enforcement review cases under the APA, it was also necessarily concluding that § 2401(a) was *not* controlling in that context. The selection of one form of limitation necessarily precludes the other.[4]

This might seem surprising at first glance. Section 2401(a) speaks in broad terms, stating that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). And since the 1980s many courts have simply assumed that this applies to judicial review of agency action under the APA. *See Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1307 (Fed. Cir. 2008)

---

[4] The Court was aware of § 2401(a). Just six weeks before it decided *Abbott Laboratories*, the Court had held that a contract claim against the federal government "accrued" under § 2401(a) when the plaintiff could first bring suit, and not before. *Crown Coat Front Co. v. United States*, 386 U.S. 503, 514 (1967).

(collecting cases).[5]  The best argument in support of this assertion is that the merger of law and equity in the 1938 Federal Rules of Civil Procedure and § 2401(a)'s use of the term "civil action" mean that § 2401(a) applies even to purely equitable suits. *See Werner v. United States*, 188 F.2d 266, 268 (9th Cir. 1951); *see also United States v. One Toshiba Color Television*, 213 F.3d 147, 158 (3d Cir. 2000) (flagging the issue but not deciding it). *But see Saffron*, 561 F.2d at 943 (applying the law-equity distinction in determining whether § 2401(a) applied).

*Werner* is incorrect, however. The merger of law and equity did not change the "substantive and remedial principles [applicable] prior to the advent of the federal rules." *Petrella*, 572 U.S. at 679 (quoting C. Wright & A. Miller, 4 *Federal Practice and Procedure* § 1043 (3d ed. 2002)). And, in purely equitable suits, courts therefore must still presume that no statute of limitations applies unless Congress explicitly says otherwise. *See Holmberg*, 327 U.S. at 395. Against this background principle, the use of the generic term "civil action" in § 2401(a) is thus insufficient.

More fundamentally, *Werner*'s conclusion is impossible to square with *Abbott Laboratories*' endorsement of laches in APA pre-enforcement cases, because laches is unavailable when a federal statute of limitations applies—full stop. *Petrella*, 572 U.S. at 667; *Mack*, 295 U.S. at 489. Relatedly, *Werner* is not a pre-enforcement case,

---

[5] The Supreme Court has never considered the issue. The closest it has come is a passing comment in *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 626–27 (2018), that § 2401(a) applies to APA challenges. But this statement was pure dicta and was agreed upon by the parties without any discussion in their briefs. It is therefore not binding and should not be read as silently rejecting *Abbott Laboratories*.

19

and its textual argument does not obtain in that context. Section 2401(a) applies only to "right[s] of action," *i.e.*, "right[s] that can be enforced by legal action; a chose in action" Black's Law Dictionary (11th ed. 2019). This "right" or "chose" is a personal property right "to bring an action to recover a debt, money, or thing." *Id.*; *accord Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 275 (2008). But a plaintiff in a pre-enforcement case is not exercising a right to take possession of money or chattels; rather, it is preemptively asserting an *affirmative defense* against the *Government*'s "right of action," often before such a right of action even accrues to the Government.[6]

### B. In any event, Plaintiffs' claims are timely under § 2401(a).

Even if § 2401(a) does apply to Plaintiffs' claims, they are timely. The Government asserts without explanation that, for Plaintiffs' claims under Counts 1 and 2, the clock started on October 1, 2013, the date of the rule's publication in the

---

[6] Some have defined "right of action" to include the right to enforce a legal cause of action in law or equity. *See, e.g.*, John Norton Pomeroy, *Code Remedies: Remedies and Remedial Rights by the Civil Action* 459 (4th ed. 1904). For example, a single cause of action for breach of contract may be said to give rise to different rights of action, like damages (which sounds in law) or specific relief (which sounds in equity). *Id.* at 464. Unlike pre-enforcement review, however, such "equitable rights of action" seek to vindicate a chose in action. Not all equitable relief conforms to this pattern. For instance, when a court is asked to construe a will or partition a parcel of real property, suit is proper even though there has been no "violation of the plaintiff's primary rights." *Id.* at 551. "These classes of suits are prosecuted, not because there has been any denial of right or duty, but because in the absence of an accurate knowledge of their rights, or of power to arrange and adjust them by voluntary proceedings, an appeal to the courts becomes necessary in order to solve the problem or to accomplish the adjustment." *Id.* The same logic applies to pre-enforcement review.

Federal Register. *See* 78 Fed. Reg., 60,454 (Oct. 1, 2013). This contention is incorrect.

Section 2401(a)'s clock starts on the date that a cause of action "accrue[s]," which cannot happen until "the plaintiff can file suit and obtain relief." *Petrella*, 572 U.S. at 670 (internal quotation marks omitted); *Paucar,* 545 F. App'x at 124. Under the APA, no right of action exists until (1) the agency has taken "final agency action," 5 U.S.C. § 704, *and* (2) the potential plaintiff suffers a "legal wrong" or has otherwise been "adversely affected or aggrieved . . . within the meaning of the relevant statute," *id.* § 702; *Herr*, 803 F.3d at 818–19.

Thus, while the Government is correct that "[g]enerally" a claim under the APA accrues "on the date of the final agency action," Doc. 30-1, 14 (quoting *Paucar,* 545 F. App'x at 124), this is not the case when the legal wrong has yet to occur. In fact, in the next passage in *Paucar*, which the Government does not quote, the court explained that the key date is "when the plaintiff either knew, or in the exercise of reasonable diligence should have known, that he or she had a claim." *Id.* (quoting *Izaak Walton League of Am., Inc. v. Kimbell,* 558 F.3d 751, 759 (8th Cir. 2009)) (brackets omitted).

These points are dispositive for two of the Plaintiffs—Americare and Agewell—which did not even exist until 2015 and 2016, respectively, more than two years after 29 C.F.R. § 552.109 was published in the Federal Register. *See* Consol. Compl., Doc. No. 25 ¶¶ 29, 38. At the time of publication, neither had suffered a

"legal wrong" or could bring suit. *See Herr*, 803 F.3d at 820. Both of their claims are timely if the clock began running when they came into existence.

Plaintiff Intra-National's claim is timely for a similar reason. Under the APA, the imminent liabilities imposed by a new rule are not the *only* kinds of "legal wrong[s]" that can give rise to a cause of action. 5 U.S.C. § 702. As Judge Sutton explained in *Herr* under the APA, "[d]ifferent legal wrongs give rise to different rights of action . . . even if the different *legal* wrongs stem from the same order." 803 F.3d at 820 (citations omitted).

In that case, the court considered a pre-enforcement challenge filed in 2014 against a U.S. Forest Service rule prohibiting the use of motorboats within a federally owned protected zone of a lake in Michigan. The plaintiffs had used the lake since the 1970s and there was no question that the 2007 rule immediately affected their interest. *See id.*

The court, however, rejected the Government's argument that the challenge fell outside of § 2401(a)'s six-year window. As the court noted, in addition to renting property at the lake since the 1970s, the plaintiffs had also purchased a house there in 2010. *Id.* at 819. Thus, while "the boating restriction harmed the couple's recreational interests in 2007 and perhaps might have given them *a* right of action under the APA at that time," the purchase of the property in 2010 created a *new*, legally distinct "right of action." *Id.* at 820.

The same logic applies here. While the 2013 Rule certainly gave rise to a cause of action, there are also new "legal wrongs" against Plaintiffs that have

22

occurred since. Under the 2013 Rule, every time a care worker works overtime without the proper rate of compensation, a new potential liability attaches to Plaintiffs. And, in the enforcement context, "a new and separate cause of action for unpaid overtime wages accrue[s]" on "each payday where" an employer "failed to pay its employees proper wages." *Stone v. Troy Constr., LLC*, 935 F.3d 141, 154 (3d Cir. 2019) (cleaned up).

The same holds true in the pre-enforcement context. As discussed above, under *Ex Parte Young*, pre-enforcement suits are essentially preemptive assertions of affirmative defenses that could be raised in an enforcement proceeding. The accrual of a new claim of liability against Plaintiffs constitutes a new and distinct legal harm giving rise to a new and "different right[] of action," albeit one that "stem[s] from the same order." *Herr*, 803 F.3d at 820.

Finally, the Government appears to assert that for Count 2's arbitrary-and-capricious challenge, the question of accrual is irrelevant since, in its view, a "policy-based facial challenge to the government's decision" always "must be brought within six years of the decision." Doc. 30-1, 14 (quoting *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991)).

This is incorrect. The Third Circuit has never adopted *Wind River*, and that decision conflicts with the plain text of § 2401(a) and binding Supreme Court precedent. Under *Wind River*, the meaning of § 2401(a) is said to change depending on what kind of claim is being brought. For claims alleging that an agency acted contrary to law or unconstitutionally under 5 U.S.C. § 706(2)(B) or (C), *Wind River*

says that the normal rule applies: the party's "right of action" "accrues" as soon as (but not before) it is entitled to seek legal relief. 946 F.2d at 714–15. *But*, when a party brings "policy-based" or "procedural violation" challenges under 5 U.S.C. § 706(2)(A) or (D), *Wind River* asserts that harm is irrelevant: the clock starts as soon as the agency has acted. *Id.* at 715. "This is true even if the agency's action has yet to actually cause a legally cognizable injury or even remotely affect the party. It is true even if the party does not yet exist." John Kendrick, *(Un)limiting Administrative Review:* Wind River*, Section 2401(a), and the Right to Challenge Federal Agencies*, 103 Va. L. Rev. 157, 158 (2017).

*Wind River* did not tether its divergent rules in the text of the law, nor did it distinguish binding Supreme Court precedent holding that a claim against the Government cannot accrue before a party actually has a "mature" "claim or right to bring a civil action against the United States." *Crown Coat Front Co.*, 386 U.S. at 514; *see also* Kendrick, *supra*, at 179–202 (showing that there is no plausible textual justification for *Wind River*'s distinction).

Instead, *Wind River* held that the meaning of § 2401(a) should vary because having a different rule for policy and procedural challenges would "strike[] the correct balance between the government's interest in finality and a challenger's interest in contesting an agency's alleged overreaching." *Id.* at 715. Whatever the merits of this policy assertion, it is a question for Congress, not the courts, to decide.

Applying the normal limitations rule works no hardship on the Government. "A federal regulation that makes it six years without being contested does not enter

24

a promised land free from legal challenge." *Herr*, 803 F.3d at 821. A defendant in an enforcement proceeding can always challenge the legality of the rule being enforced. *Id.* at 821–22. The Government thus cannot assert a legitimate interest in repose from essentially defensive pre-enforcement suits. By contrast, under the Government's argument, small businesses that did not exist when a rule was promulgated must "bet the farm," a choice that the Supreme Court does not even "consider . . . a meaningful avenue of relief." *Free Enter. Fund,* 561 U.S. at 490–91.

## CONCLUSION

This Court should therefore deny the Government's motion to dismiss.

May 19, 2021                                          Respectfully submitted,

*s/ Bruce C. Fox*                                    *s/ Jonathan Berry*
Bruce C. Fox (PA 42576)                              Jonathan Berry (DC 1016352)
Allison N. Genard (PA 311253)                           *pro hac vice* pending
OBERMAYER REBMANN                                    Michael Buschbacher (DC 1048432)
MAXWELL & HIPPEL LLP                                    *pro hac vice* pending
525 William Penn Place                               Jordan E. Smith (DC 1600814)
   Suite 1710                                           *pro hac vice* pending
Pittsburgh, PA 15219                                 BOYDEN GRAY & ASSOCIATES
(412) 288-2461                                       801 17th Street NW, #350
bruce.fox@obermayer.com                              Washington, DC 20006
allison.genard@obermayer.com                         (202) 955-0620
                                                     berry@boydengrayassociates.com
John R. Linkosky (PA 66011)
715 Washington Avenue                                *Counsel for Plaintiffs Intra-National*
Carnegie, Pa. 15106                                  *Home Care, LLC and Americare*
linklaw@comcast.net                                  *Home Healthcare Services, LLC*

*Counsel for Plaintiffs*