IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTRA-NATIONAL HOME CARE, LLC, and AMERICARE HOME HEALTHCARE SERVICES, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEPARTMENT OF LABOR, *et al.*,<br><br>*Defendants*. | No. 2:20-cv-01545-WSH |
| AGEWELL HOME HELPERS, Inc.,<br><br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF LABOR, *et al.*,<br><br>*Defendants*. | No. 2:20-cv-01773-WSH |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF REGARDING
THE COURT'S ORDER TO SHOW CAUSE**

## INTRODUCTION

The Third Circuit held on appeal that "because the enforcement proceedings [against Intra-National, Americare, and Agewell] are pending in another court, the District Court *need not necessarily* hear" this case. *Intra-Nat'l Home Care, LLC v. United States Dep't of Lab.*, No. 22-2628, 2024 WL 4100245, at *3 (3d Cir. Sept. 6, 2024). This Court then ordered Plaintiffs to show cause "why this Court should not exercise its discretion to dismiss" this case "based on the core issue in this matter being 'pending in litigation elsewhere.'" Order 2, ECF No. 81. In their response, Plaintiffs do not dispute that the core issue in this case is pending in litigation elsewhere—the enforcement proceedings against Intra-National, Americare, and Agewell. In the two-and-a-half years since this case was originally dismissed, those cases have been litigated. Discovery was conducted. Motions for summary judgment were filed and then denied without prejudice to allow the parties to address the Supreme Court's *Loper Bright* decision. In one of the cases, those motions have now been re-filed and fully briefed. In the others, the motions would have been filed had Plaintiffs not leveraged this Court's show-cause order to move, again, for a stay in those proceedings. Even a quick skim of the dockets in the enforcement actions demonstrates the work the parties have put into advancing those cases toward final judgment. Accordingly, this case should be dismissed, and the legal issue Plaintiffs raise here should be folded into the enforcement proceedings as contemplated by the Third Circuit.

Plaintiffs' collection of arguments to the contrary are unavailing. Plaintiffs' first two points—that the first-filed rule controls and that Defendants waived their present argument—were presented to the Third Circuit. If they had merit, the Third Circuit would not have ruled that this Court had discretion to dismiss. Moreover, this Court already held that at least one of the enforcement cases arises from different facts. And Plaintiffs' decision to file suit only after they learned they were being investigated by the Department places this case well within the "anticipatory filing" exception to the equitable doctrine. As for waiver, the context of the November 2021 transcript makes clear that Defendants were discussing mootness and statute of limitations—not the issue of discretionary dismissal now before the court. Plaintiffs are also

wrong to claim that allowing the cases to continue in parallel would best serve judicial economy. It requires little more than a new section to the summary judgment briefs for Plaintiffs to raise their rule challenge in the enforcement cases, in contrast with doing so in a full and separate lawsuit as they propose to do here.

Finally, Plaintiffs make the rather odd request that this Court preemptively contravene the federal rules on appellate stays. Appellate bonds under Fed. R. Civ. P. 62(b) and Fed. R. App. P. 8(a) serve an important purpose: protecting injured parties from loss caused by delay in execution of judgment or, in other words, making sure other creditors do not get a wrongdoers' assets before the people they harmed. If Plaintiffs are genuinely at risk of bankruptcy (and they offer no evidence in support of that claim), that supports securing funds now for the many home-care workers from whom Plaintiffs withheld wages, not freeing them of any future obligation to secure such funds. In any event, Plaintiffs' concern is premature and more appropriately handled by the court overseeing the enforcement cases. Among other options, that court would have discretion to set the amount of any necessary supersedeas bond and could consider Plaintiffs' arguments at that time.

## BACKGROUND

In 2013, the Department of Labor published a regulation under which third-party agencies such as Intra-National are prohibited from availing themselves of the exemptions from the Fair Labor Standards Act's minimum wage and overtime compensation requirements with respect to their domestic service employees. 78 Fed. Reg. 60,454; 29 C.F.R. § 552.109 ("2013 Regulation"). The regulation was challenged by home care organizations and upheld on the merits by the D.C. Circuit, *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015), and the Supreme Court declined review, *id.*, *cert. denied*, 579 U.S. 927 (2016).

Years later, the Wage and Hour Division of the U.S. Department of Labor notified Intra-National that it was investigating its compliance with the FLSA. Ex. 1, Letter of January 23, 2020. After receiving the letter, and while under active investigation, on October 9, 2020, Intra-National and Americare filed this facial challenge to the 2013 Regulation. Complaint, ECF No. 1.

Meanwhile, the Department completed its investigation and formally brought enforcement actions against Agewell, Intra-National, and AmeriCare. *See Su v. Agewell Home Helpers, Inc.*, No. 2:21-cv-00108-DSC (W.D. Pa. Jan. 26, 2021); *Su v. Intra-Nat'l Home Care LLC*, No. 2:21-cv-01391-AJS (W.D. Pa. Oct. 15, 2021); *Dep't of Lab. v. Americare Healthcare Servs.*, LLC, No. 2:21-cv-05076-EAS-KAJ (S.D. Ohio Oct. 19, 2021). Plaintiffs acknowledge in their brief that this lawsuit was "prompted by DOL's investigation." Pls.' Brief Showing Cause 4–5, ECF. No. 82 ("Br."). Plaintiffs sought to consolidate this case and the enforcement action against Intra-National, Pls.' Mot. to Consolidate, ECF 59, which the Court rejected, *id.* at Mem. & Op., ECF 68. The Court then dismissed this case on statute of limitations grounds. Order, ECF 71.

Plaintiffs appealed to the U.S. Court of Appeals for the Third Circuit. Notice of Appeal, ECF 73. Plaintiffs made some of the arguments they now advance in their brief responding to the show-cause order. Plaintiffs argued that "'the first-filed rule' . . . directs that it is the enforcement suits, not this case, that should not proceed at this juncture." Reply Br. for Appellants 10, *Intra-National Home Care LLC v. Dep't of Labor,* No. 22-2628 (3d Cir. Mar. 20, 2023) ("Appellant Reply Br."). And Plaintiffs argued—citing the same oral argument excerpts that they now put before this Court, Br. 6—that "[t]he government's representations constitute an unambiguous waiver" of contrary arguments. Appellant Reply Br. 3. Although the Third Circuit reversed the statute of limitations ruling, it nevertheless held that "because the enforcement proceedings are pending in another court, the District Court *need not necessarily* hear it." *Id.* Referring implicitly to the separate enforcement cases, the Third Circuit explained that "[a] court may even in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere." *Id.* (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 155 (1967)).

For the two years this case was on appeal, the enforcement actions continued. The parties in the *Americare* case originally filed summary judgment motions on October 30, 2023. *See* Def.'s Mot. Partial Summ. J., *Dep't of Lab. v. Americare*, ECF No. 77. The Court ordered additional briefing addressing the Supreme Court's ruling in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), *see* Order, *Americare,* ECF No. 108, and the parties completed that briefing by

3

November 6, 2024, *see* Reply Supp. Pl.'s Mot. Summ. J., *Americare,* ECF No. 118. Those motions are now pending. Similarly, the parties in the Intra-National case filed summary judgment motions on October 16, 2023, *see* Mot. Summ. J., *Su v. Intra-National,* ECF No. 119, and those motions were subsequently denied without prejudice for the parties to address *Loper Bright*, *see* Order, *Su v. Intra-National,* ECF No. 150. The new Intra-National motions were set to be due November 18, 2024, *see* Order, *Su v. Intra-National,* ECF No. 153, and the first Agewell motions were set to be due December 20, 2024, *see* Am. Case Mgmt. Order, *Su v. Agewell,* ECF No. 57. Then, Intra-National and Agewell moved for a stay following this Court's show-cause order, Mot. Stay, *Su v. Intra-National,* ECF No. 161; Mot. Stay, *Su v. Agewell,* ECF No. 68, which the court in those actions granted "until Judge Hardy renders a decision on the show cause order." Order, *Su v. Intra-National,* ECF No. 166; Order, *Su v. Agewell,* ECF No. 70.

## ARGUMENT

### I. This Court Should Dismiss this Case to Avoid Duplicative Litigation.

The Third Circuit's decision makes clear that this Court has discretion to dismiss this lawsuit. Plaintiffs nevertheless fight that conclusion, citing multiple times to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976), for the proposition that district courts have a "virtually unflagging obligation" to exercise jurisdiction. Br. 2, 8. But the Third Circuit has explicitly held that the *Colorado River* standard does not apply to actions seeking declaratory relief. *Rarick v. Federated Serv. Ins.*, 852 F.3d 223, 227 (3d Cir. 2017). When a lawsuit only seeks declaratory relief, "federal courts may decline jurisdiction." *Id.*

The Court should exercise its discretion to dismiss this case. Courts in the Third Circuit consider a "non-exhaustive" set of eight factors when determining whether to exercise jurisdiction under the Declaratory Judgment Act. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014). Factors 5 and 8, which relate to state court and insurance cases respectively, do not apply here. Factors 1, 2, and 3—the likelihood that a declaration will resolve the uncertainty of obligation between the parties, the convenience of the parties, and the public interest in settlement

of the uncertainty of obligation[1]—provide little reason for this Court to decide Plaintiffs' challenge to the 2013 Regulation as compared to the courts handling the enforcement cases. The enforcement cases provide equally convenient forums for the parties: two are also in the Western District of Pennsylvania, and the Ohio case was filed in the district of Americare's corporate headquarters. Compl. ¶ 3, *Dep't of Labor v. Americare*, ECF No. 1. And each case would have the same preclusive effect as to Plaintiffs regarding the validity of the 2013 Regulation.

Factors 4 and 6—the availability and relative convenience of other remedies and the avoidance of duplicate litigation—weigh clearly in favor of dismissal. The legal question at issue is identical whether raised here or as an affirmative defense in the enforcement cases.[2] Indeed, in the Ohio enforcement case, Americare has already raised and briefed the issue for summary judgment. *See* Def.'s Mot. Partial Summ. J., *Dep't of Labor v. Americare,* ECF No. 77. The enforcement actions thus offer appropriate forums to seek appropriate remedies for Plaintiffs.[3] Plaintiffs are likely to argue that these goals could also be accomplished by a stay in the enforcement cases. But this Court cannot provide that relief. Moreover, because the enforcement actions "seek[] legal relief," *Colorado River*'s "virtually unflagging obligation" to exercise

---

[1] To the extent Plaintiffs argue there is public interest in determining the legality of the 2013 Regulation, (1) that can be accomplished through the enforcement cases, (2) the D.C. Circuit has already rejected a challenge to the 2013 Regulation, *Home Care Ass'n of Am.*, 799 F.3d at 1084, and (3) as a practical matter, the Third Circuit is likely to address the issue first in *Walsh v. Wicare Home Care Agency, LLC*, No. 24-2565 (3d Cir. Aug. 22, 2024), an appeal of a similar Department enforcement action that is currently being briefed.

[2] While Plaintiffs Intra-National and Americare raised the validity of the 2013 Regulation as an affirmative defense in their enforcement proceeding pleadings, it appears that Agewell did not. *See* Answer & Affirmative Defenses, *Su v. Agewell*, ECF No. 15. Agewell nevertheless had the opportunity to raise their rule challenge as an affirmative defense; to the extent it declined to do so, this Court need not save them from that choice.

[3] Defendants also note that the Administrative Procedures Act, the basis of Plaintiffs' claims, authorizes review only of "final agency action *for which there is no other adequate remedy in a court*." 5 U.S.C. § 704 (emphasis added). Here, of course, the ability to challenge the 2013 Regulation as an affirmative defense in the enforcement cases provides just such an adequate remedy. *See Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("[T]he alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"). Although the Third Circuit's opinion suggests this limitation is not dispositive, it remains a factor the Court may consider in determining whether to exercise jurisdiction.

jurisdiction does apply to those cases. *Rarick*, 852 F.3d at 227. This Court has discretion to dismiss; those courts do not.

Factor 7, "prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*," also supports dismissal. *Reifer*, 751 F.3d at 146. Although two of the enforcement cases were eventually filed in the same district as this case, the anticipatory nature of Plaintiffs' suit still demonstrates procedural fencing. Plaintiffs' own brief suggests this suit is aimed at avoiding the procedural rules for appellate stays, as discussed further below. Plaintiffs may also wish to avoid litigating this legal issue in the shadow of their own bad conduct—the posture they face in the enforcement cases. But neither consideration suggests that Plaintiffs will receive anything but a fair hearing of their arguments in the enforcement cases, and bare litigation strategy is a poor reason for this Court to use its discretion to retain jurisdiction.

The D.C. Circuit's analysis in *Morgan Drexen, Inc. v. Consumer Financial Protection Bureau*, 785 F.3d 684 (D.C. Cir. 2015), is illustrative. Applying factors similar to those in *Reifer*, the court affirmed the district court's decision to dismiss a declaratory judgment suit against a federal agency because a pending "enforcement action in California could resolve all of the issues in this case." *Id.* at 697. The court reasoned that adjudication by the district court might not have settled the full controversy and that a ruling in the government's favor could result in "piecemeal litigation," allowing the enforcement action to continue. *Id.* And the court rejected the plaintiffs' argument that it had filed the declaratory judgment action first, holding that "the real question for the court is not which action was commenced first but which will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict." *Id.* These considerations similarly apply to the case at hand, and this Court should similarly dismiss.[4]

---

[4] Indeed, even a favorable decision for Plaintiffs in this case would not be dispositive in the enforcement actions. Plaintiffs would still need to prove that the companionship services and live-in exemptions factually applied to their employees. *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991) (employer asserting FLSA exemption has the burden of proving the exemption applies).

## II. Plaintiffs' Arguments Do Not Justify a Different Result.

Plaintiffs do not address the *Reifer* factors, choosing instead to make collateral arguments in favor of their preferred parallel-case outcome. Each of these arguments fails.

### A. The First-Filed Rule Does Not Apply.

Plaintiffs first argue that this Court should retain the case because they filed this suit before the Department of Labor managed to file its enforcement actions. As an initial matter, Plaintiffs already made this argument to the Third Circuit, *see* Appellant Reply Br. 10, and the Third Circuit nevertheless confirmed that this Court still had discretion to dismiss the case. Beyond that, the first-filed rule does not apply for at least two reasons.

*First*, the first-filed rule applies in cases "involving the same parties and the same issues already before another district court." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988). But this Court already determined that this case and the enforcement action against Intra-National "do not involve the same issues of fact or grow out of the same transaction." Mem. Op. 4, ECF No. 68. Instead, "the sole commonality . . . is a legal issue, namely, the validity and enforceability *vel non* of the DOL regulation." *Id.* That remains the case. Indeed, the enforcement cases involve far more issues—including, most obviously, the factual issues surrounding Plaintiffs' conduct—which is why it then did not make sense to consolidate the enforcement cases before this Court, and now makes sense to dismiss this case altogether.

*Second*, this case is a paradigmatic anticipatory suit, an exception to the first-filed rule. As the Third Circuit has held, "[b]ecause the first-filed rule is based on principles of comity and equity, it should not apply when at least one of the filing party's motives is to circumvent local law and preempt an imminent . . . action." *Univ. of Pa.*, 850 F.2d at 977; *see also id.* (citing *Ven–Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir.1982) for holding that "first filing not controlling when it was made 'in apparent anticipation of imminent judicial proceedings' by opposing party"). Plaintiffs acknowledge that this case was prompted by their anticipation of an enforcement suit. Br. 4–5. The first-filed rule therefore does not apply.

Plaintiffs attempt to dodge this only by claiming that exceptions to the first-filed rule

7

are limited to "rare or extraordinary circumstances." Br. 4. In fact, "rare or extraordinary circumstances" was just one term in a series of exceptions included for the Third Circuit's overarching conclusion that the first-filed rule should not be applied in a "wooden" manner. *Univ. of Pa.*, 850 F.2d at 972 ("That authority, however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping."). To the contrary, "[e]xceptions to the first-filed rule are not rare and are made when justice or expediency requires." *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 744 (E.D. Pa. 2005). Consistent with the equitable nature of the first-filed rule, many courts have found that an "anticipatory filing" is enough to defeat the rule. *See, e.g.*, *Ven-Fuel*, 673 F.2d at 1195; *Salaman v. United Cap. Funding Corp.*, 2017 WL 616549, at *4 (E.D. Pa. Feb. 14, 2017); *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 623 (W.D. Pa. 2009).

  **B.**  **Prudential Dismissal Was Not Waived by Defendants.**

  Plaintiffs next argue that Defendants waived the argument that the Court should dismiss this suit due to the pending enforcement proceedings. Again, Plaintiffs made this very argument on appeal. Appellant Reply Br. 3. And again, the Third Circuit's opinion did not adopt their argument. There was no waiver here, in any event. "Waiver . . . is the intentional relinquishment or abandonment of a known right." *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (cleaned up). The cherry-picked quotes from oral argument three years ago fall well short of that. In context, when the government's counsel said that the enforcement action did not affect this case, he was referring to the Court's jurisdiction in light of potential mootness concerns: the government's counsel explained "there would be no reason that this Court would be divested of *jurisdiction* because of those ongoing enforcement actions." Tr. 14:22–15:2, ECF No. 63 (emphasis added). In the same colloquy, the Court agreed that the question concerned its jurisdiction to proceed in the first instance, *see id*. 15:1–3; it then raised the same mootness concerns with Plaintiffs' counsel later in the argument, *id*. 38:4–6. That context makes clear that the government's counsel was addressing a threshold jurisdictional concern, and

8

not whether this Court could exercise its discretion to dismiss this action in light of the enforcement cases.[5] Thus there is no waiver.

## C. Judicial Economy Favors Dismissal.

Plaintiffs argue that judicial economy weighs in their favor. Although a final judgment in Plaintiffs' favor would have preclusive effect, it does not follow that such a ruling would increase efficiency. Critically, Plaintiffs' argument assumes that two other federal courts will grant stays while this Court considers Plaintiffs' yet-to-be-briefed summary judgment motion. In the *Americare* case in Ohio, summary judgment is already briefed, there has been no motion for a stay, and it is unclear why that court would grant one given its advanced posture. The *Intra-National* and *Agewell* cases, too, are only stayed pending this Court's resolution of its show-cause order, Order, *Su v. Intra-National*, ECF No. 166; Order, *Su v. Agewell*, ECF No. 70, and as Plaintiffs note, that court has previously denied Plaintiffs' more aggressive stay motions. Br. 7. The only certain way to avoid duplicative expenditure of judicial resources is for this Court to dismiss this case before merits briefing begins, leaving it to one or more of the remaining courts to resolve the legal question raised by Plaintiffs' defensive challenge to the 2013 Regulation.

## D. Relief from Appellate Bonds Does Not Justify Continuing this Case.

Plaintiffs' final argument is that the Court should keep this case so that they may avoid the federal rules relating to appellate bonds. But this is not a good reason for the Court to retain jurisdiction. Fed. R. Civ. P. 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." The purpose of this bond requirement is "to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency." *Grubb v. Fed. Deposit Ins. Corp.*, 833 F.2d 222, 226 (10th Cir. 1987). For that reason, the risk of insolvency can sometimes be a reason to impose a supersedeas bond, not

---

[5] It is possible that the government's counsel was also arguing in part that the enforcement actions did not reset the statute of limitations: two pages earlier, the government's counsel argued that "[t]he key point that kicks off the statute of limitations for an APA claim is the final agency action," Tr. 12:3–4, and that the final agency action was "the agency promulgating the rule," Tr. 11:20–22.

the opposite. *See Avirgan v. Hull*, 125 F.R.D. 185, 187 (S.D. Fla. 1989) ("The movants' admitted precarious financial condition, therefore, defeats their contention that this case is a rare instance where a bond is unnecessary or alternative collateral properly could be posted."); *but see Dillon v. City of Chicago*, 866 F.2d 902, 905 (7th Cir. 1988) (allowing consideration of appellee's "precarious financial situation" in determining whether to waive bond requirement). Here, allowing Plaintiffs to avoid an appellate bond risks loss of the back wages that the Department seeks to recover.

Regardless, Plaintiffs' arguments are premature and misdirected. If merited, there are various steps that the courts in the enforcement actions could take to address Plaintiffs' situation. The Federal Rules of Civil Procedure do "not direct the form or amount of a supersedeas bond." *Steel Workers Pension Tr. by Bosh v. Republic Steel*, 2023 WL 2245248, at *3 (W.D. Pa. Feb. 27, 2023). Courts therefore have "discretion as to the proper form of a supersedeas bond necessary to secure a stay in the execution of the judgment." *Id.*; *see also In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015). Alternatively, counsel for Plaintiffs suggested in a recent status conference in one of the enforcement cases that the parties could brief their challenge to the 2013 Regulation first, followed by an interlocutory appeal under 28 U.S.C. § 1292(b). That would also be at the discretion of the courts in the enforcement actions. The Department would likely oppose these requests, but they nevertheless illustrate that options for obtaining appellate review of any unfavorable ruling on the legality of the 2013 Regulation may be available to Plaintiffs even after dismissal of this action.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case. Defendants believe that this issue is sufficiently straightforward that oral argument is unnecessary.

Dated: December 18, 2024          Respectfully submitted,

                                              BRIAN M. BOYNTON
                                              Principal Deputy Assistant Attorney General
                                              Civil Division

JULIE STRAUS HARRIS
Assistant Director
Federal Programs Branch

*/s/ Clayton L. Bailey*
Clayton L. Bailey
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-1226
Fax: (202) 616-8470
Email: clayton.l.bailey@usdoj.gov

*Counsel for Defendants*