IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTRA-NATIONAL HOME CARE, LLC, and AMERICARE HOME HEALTHCARE SERVICES, LLC, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 20-1545<br>) |
| UNITED STATES DEPARTMENT OF LABOR, et al., | )<br>)<br>) |
| Defendants. | )<br>) |
| AGEWELL HOME HELPERS, INC. d/b/a AGEWELL CAREGIVER SERVICE, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 20-1773<br>) |
| UNITED STATES DEPARTMENT OF LABOR, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION**

Presently pending are the parties' responses to this Court's Order to Show Cause (Docket No. 81) why this Court should not decline jurisdiction and dismiss these consolidated cases[1] involving claims for declaratory judgment filed by Plaintiffs Intra-National Home Care, LLC ("Intra-National), Americare Home Healthcare Services, LLC ("Americare"), and Agewell

---

[1]  On December 9, 2020, Defendants filed an unopposed motion to Consolidate *Agewell Home Helpers, Inc. v. DOL*, No. 20-1773 (W.D. Pa.), with *Intra-National Home Care, LLC v. DOL*, No. 20-1545 (W.D. Pa.). (Docket No. 11). On December 11, 2020, the Court issued an Order granting Defendants' motion and consolidating the cases. (Docket No. 12).

1

Home Helpers, Inc. d/b/a Agewell Caregiver Service ("Agewell"), against Defendants United States Department of Labor, the Secretary of Labor, and the Administrator of the Wage and Hour Division (collectively, the "DOL"). The parties have fully briefed the matter. (Docket Nos. 82, 83, 64, 85, 86). For the reasons set forth herein, the Court shall exercise its jurisdiction over Plaintiffs Intra-National and Agewell and dismiss Plaintiff Americare from the present action.

I. Procedural Background

On October 9, 2020, Plaintiffs initiated the instant declaratory judgment action in a pre-enforcement effort to challenge the validity of a regulation used by the DOL to investigate the legality of their compensation of direct care workers. (Docket No. 1). Plaintiffs allege at Count One of their Consolidated Amended Complaint for Declaratory and Injunctive Relief ("Consolidated Amended Complaint") that the DOL's regulation codified at 29 C.F.R. § 552.109 conflicts with the text of the Fair Labor Standards Act ("FLSA") and otherwise is contrary to law. (Docket No. 25, ¶¶ 156-60). At Count Two, Plaintiffs allege that the DOL did not provide adequate justification or explanation when promulgating the current version of 29 C.F.R. § 552.109, thus rendering it arbitrary and capricious. (Docket No. 25, ¶¶ 161-67). Plaintiffs also asserted additional claims at Counts Three and Four, but they voluntarily dismissed those claims pursuant to a Stipulation filed on May 18, 2021. (Docket No. 34).

As set forth in the Consolidated Amended Complaint, the FLSA, 29 U.S.C. §§ 201 *et seq.*, generally requires covered employers to pay non-exempt employees a minimum wage and overtime pay. (Docket No. 25, ¶¶ 58, 59). In 1974, Congress amended the FLSA to extend its minimum wage and overtime provisions to employees in "domestic service." *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007) (citing Fair Labor Standards Amendments of 1974 ("1974 Amendments"), Pub. L. No. 93-259, §§ 7(b)(1), (2), 88 Stat. 55, 62 (codified at

29 U.S.C. §§ 206(f), 207(l))). At the same time, Congress also exempted defined categories of domestic service workers from certain of its provisions, including companionship and live-in domestic service workers. (Docket No. 25, ¶¶ 60-63); *see also Long Island Care at Home*, 551 U.S. at 162 (citing 1974 Amendments, § 7(b)(3), 88 Stat. 55, 62 (codified at 29 U.S.C. § 213(a)(15)); 29 U.S.C. § 213(a)(15) (the "Companionship Exemption") and 29 U.S.C. § 213(b)(21) (the "Live-in Exemption")). The 1974 Amendments also included a grant of rulemaking authority empowering the Secretary of Labor to "prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act." 1974 Amendments, 88 Stat. 55, 76 (codified at 29 U.S.C. § 29(b)); *see Long Island Care at Home*, 551 U.S. at 165.

In 1975, shortly after Congress enacted the Companionship and Live-In Exemptions, the DOL promulgated a regulation permitting individuals employed by third-party agencies to be covered by these statutory exemptions. (Docket No. 25, ¶¶ 64-67 (citing 29 C.F.R. § 552.109(a) (prior to Jan. 1, 2015))). Plaintiffs contend that from 1975 to 2015, third-party agencies relied upon the DOL's Companionship and Live-In Exemptions when establishing their operations and pay practices, especially regarding direct care workers paid pursuant to the Medicaid Waiver Program. (Docket No. 25, ¶¶ 12, 71, 73). In 2007, the United States Supreme Court upheld the Companionship Exemption and its application to third-party agencies in *Long Island Care at Home*, 551 U.S. 158 (2007). (Docket No. 25, ¶ 69). However, after several unsuccessful attempts to change this regulation in 1993, 1995, and 2001, the DOL did revise 29 C.F.R. § 552.109 to eliminate the ability of third-party agencies to avail themselves of these exemptions. (Docket No. 25, ¶ 74); *see Home Care Ass'n of America v. Weil*, 799 F.3d 1084, 1088-89 (D.C. Cir. 2015). The DOL published this revised regulation in the Federal Register on October 1, 2013, and it became effective on January 1, 2015. (Docket No. 25, ¶¶ 13, 79 (citing Application

of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60455 (Oct. 1, 2013); 29 C.F.R. § 522.109 (2015) (referred to herein as the "2015 Regulation"); *see Home Care Ass'n of America*, 799 F.3d at 1088-89.

Plaintiffs are third-party agencies which employ or otherwise process service and payroll documents for direct care workers who mostly provide in-home companionship and assistance services to elderly and disabled family or household members of low-income families in Pennsylvania, Ohio, Michigan, and Iowa through the Medicare Waiver Program. (Docket No. 25, ¶¶ 1-2, 9). As described by Plaintiffs:

> Under the Medicaid Waiver Program, the federal government waives medical assistance rules intended for institutional care and allows States to use Medicaid reimbursement funds to provide care to elderly and disabled persons in their homes. State agencies administer the Medicaid Waiver Program by contracting with private intermediary entities, which determine the recipients' eligibility, create individual service plans, and approve Providers of in-home services. The Providers, which include third-party agencies such as Plaintiffs, then engage, coordinate training, and complete payroll services for the Direct Care Workers. The third party agencies receive Medicaid reimbursement funds from which the agencies pay the Direct Care Workers' wages, administrative costs, and FICA taxes.

(*Id.* ¶ 10). The Medicaid Waiver Program has provided a flat hourly rate of pay that does not afford any increased amount for overtime hours worked by associated direct care workers, and Plaintiffs and other third party agencies have long-relied upon the FLSA's Companionship and Live-In Exemptions from certain compensation obligations which might otherwise be applicable. (*Id.*, at ¶¶ 11-12).

As a consequence of the DOL's 2015 Regulation, Plaintiffs contend that they restructured the rates of pay applicable to their direct care workers to allow for overtime pay within the financial constraints of the Medicaid Waiver Program. (Docket No. 25, ¶ 100). The DOL deems this restructured arrangement to be a "serious violation" of the FLSA. (*Id.* ¶ 101). Plaintiffs

further contend that the DOL's decision to no longer permit them to avail themselves of the Companionship and Live-In Exemptions places a "crippling financial burden upon them" and "threatens their ability to continue to serve elderly and disabled care recipients." (*Id.* ¶ 109). Furthermore, Plaintiffs contend that the DOL has targeted third party agencies such as themselves for investigation and prosecution under the 2015 Regulation. (*Id.* ¶¶ 90-94, 103-110). Plaintiffs further contend that the "DOL's targeting of [them] and other third party agencies threatens to put them out of business and decimate the entire industry of home care providers." (Docket No. 25, ¶ 77).

Beginning approximately four months after Plaintiffs initially filed the instant declaratory judgment action, the DOL began filing enforcement actions against them. On January 26, 2021, the DOL sued Agewell and its owners in the Western District of Pennsylvania at Civil Action No. 21-108 (W.D. Pa.) (Cercone, J.). On October 15, 2021, the DOL sued Intra-National and its CEO in the Western District of Pennsylvania at Civil Action No. 21-1391(W.D. Pa.) (Cercone, J.). On October 19, 2021, the DOL sued Americare in the Southern District of Ohio at Civil Action No. 21-5076 (Sargus, J.).

This Court subsequently dismissed Plaintiffs' declaratory judgment action as untimely, but the United States Court of Appeals for the Third Circuit vacated this Court's dismissal order and remanded the case for further proceedings due to the United States Supreme Court's intervening decision in *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799 (2024). *See Intra-National Home Care, LLC v. DOL,* No. 22-2628, 2024 WL 4100245, at *3 (3d Cir. Sept. 6, 2024). Upon remand, this Court issued the Order to Show Cause to solicit the parties' positions on the Third Circuit's statement that this Court "may . . . in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation

elsewhere." *Intra-National Home Care, LLC,* 2024 WL 4100245, at *3 (quoting, *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 155 (1967)). (Docket No. 81). Plaintiffs filed briefs advocating that this Court exercise its jurisdiction pursuant to the Declaratory Judgment Act ("DJA") (Docket Nos. 82, 86), whereas the DOL filed a brief[2] advocating that this Court decline jurisdiction and dismiss the case so that the validity of the 2015 Regulation may be "folded into" the DOL's subsequently filed enforcement proceedings. (Docket No. 83).

Currently, the DOL enforcement actions against Intra-National and Agewell filed in the Western District of Pennsylvania have been stayed and administratively closed pending this Court's decision whether to exercise its jurisdiction over the present action. (Ord., *Chavez-Deremer v. Intra-National Home Care, LLC et al*, 2:21-cv-1391-DSC, (W.D. Pa., Dec. 3, 2024) Docket No. 166); (Ord., *Su v. Agewell Home Helpers, Inc. et al,* 2:21-cv-108-DSC, (W.D. Pa. Dec. 3, 2024) Docket No. 166) (collectively, the "WDPA enforcement actions"). However, the court in the Southern District of Ohio did not issue a stay in the enforcement action against Americare. That court granted Summary Judgement against Americare and ordered it to pay back pay wages and liquidated damages. (Ord. and Op., *DOL v. Americare Healthcare Servs. LLC, et al*, 2:21-cv-5076 (S.D. Ohio Jan. 9, 2025) Docket Nos. 121); (Ord., *Americare Healthcare Servs. LLC,* 2:21-cv-5076 (S.D. Ohio March 3, 2025) Docket No. 126) (the "SD Ohio enforcement action"). That decision is currently on appeal in the Sixth Circuit. (Notice of Appeal, *Americare Healthcare Services LLC, et al*, 2:21-cv-5076 (S.D. Ohio Mar 3, 2025) Docket No. 128); (25-318, *DOL v. American Healthcare Servs., et al*, 25-318 (6th Cir)).

---

[2]   The DOL also filed a Notice of Supplemental Authority (Docket No. 84) attaching a copy of a decision in *Department of Labor v. Americare Healthcare Services, LLC, et al.*, Case No. 2:21-cv-5076 (S.D. Ohio, Jan. 19, 2025) (ECF No. 121). Plaintiffs filed a Response thereto. (Docket No. 85).

Upon considering the parties' positions and the record as a whole, and for the reasons set forth herein, this Court will exercise its jurisdiction over Intra-National and Agewell's declaratory judgment action seeking to challenge to the validity of the DOL's 2015 Regulation. The Court will decline to exercise jurisdiction over Americare's declaratory judgment action and dismiss it from this action.

> II. This Court Has Discretion to Exercise Jurisdiction Over Plaintiffs' Declaratory Judgment Action.

Although federal courts have a "virtually unflagging obligation" to exercise jurisdiction over actions seeking legal relief, *Colo. River Water Conversation Dist. v. United States*, 424 U.S. 800, 817 (1976), such obligation "does not undermine the discretion inherent" in the DJA. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995); *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 225 (3d Cir. 2017). The DJA provides that courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Indeed, the Supreme Court has long held that the DJA confers discretionary, rather than compulsory, jurisdiction upon federal courts. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), *cited by Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134-35 (3d Cir. 2014). As the Third Circuit pointed out when remanding this case, this Court "*need not necessarily* hear" Plaintiffs' declaratory judgment action because DOL enforcement proceedings are pending in another court." *Intra-National Home Care, LLC,* 2024 WL 4100245, at *3 (emphasis added). However, while this Court has substantial discretion to decide whether to exercise DJA jurisdiction, such discretion must be reasoned and is bounded and reviewable. *Reifer*, 751 F.3d at 140.

When determining whether to exercise DJA jurisdiction, this Court is instructed to consider whether there is a parallel state proceeding[3] because the absence of such state proceedings "militates significantly in favor of exercising jurisdiction . . . [and that] district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Reifer*, 751 F.3d at 144; *see also Kelly*, 868 F.3d at 282-83.  Here, while three separate cases are pending at different stages in two separate federal district courts, there is no parallel state court proceeding, which "militates significantly in favor of exercising jurisdiction." *Reifer*, 751 F.3d at 144. Accordingly, to decline jurisdiction, this Court must be "rigorous" in ensuring that the lack of pending parallel state court proceedings is outweighed by opposing factors.  *Id.*  In doing so, this Court must also meaningfully consider the following non-exhaustive factors to the extent they are relevant:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in state court[4];

(6) avoidance of duplicative litigation;

---

[3]     A parallel state court proceeding is a "pending matter 'involving the same parties and presenting [the] opportunity for ventilation of the same state law issues.'" *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282-83 (3d Cir. 2017), citing *Wilton*, 515 U.S. at 283.

[4]     *Reifer* also directs courts to consult the *Brillhart* factors, 751 F.3d at 146 and n. 21, which instructs that a court "should ascertain whether the questions in controversy between the parties to a federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amendable to process in that proceeding, etc." *Brillhart*, 316 U.S. at 495.  These factors are not relevant here because there is no parallel state proceeding.

    (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

    (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suite in federal court as falling with the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146.

Because Intra-National and Agewell come before this Court with a different procedural posture than Americare, as the WDPA enforcement actions against the former are stayed and the SD Ohio enforcement action against the later already has been decided on summary judgment and is now on appeal in the Sixth Circuit, this Court will consider Americare separately.

    III.    The *Reifer* Factors Strongly Support Exercising Jurisdiction over Intra-National and Agewell.

The first *Reifer* factor this Court considers is the likelihood that a declaration from this Court will resolve the uncertainty of obligations which gave rise to the controversy. As stated above, the central issue *sub judice* is whether the 2015 Regulation is legally valid. If it is, then third party agencies such as Plaintiffs may not rely upon the FLSA's Companionship and Live-In Exemptions for their direct care workers. If it is not valid, then those exemptions presumably would apply as they had since 1975. The DOL's subsequently filed enforcement actions appear to be predicated upon the validity of the 2015 Regulation.  This Court's declaration concerning the legality of the 2015 Regulation would resolve the uncertainty in the WDPA enforcement actions of whether those Plaintiffs and their direct care workers are covered by those statutory exemptions, thus resolving the uncertainty of obligations which give rise to this controversy. Accordingly, this factor weighs in favor of exercising jurisdiction.

Another factor this Court must consider is the public interest in resolving the uncertainty of Plaintiffs' compensation obligations and exemptions under the FLSA. The DOL's 2015

Regulation served as a major disruption to the entire home health and companionship industry because it ostensibly removed otherwise applicable, long-standing statutory exemptions, thus threatening the economic viability of Plaintiffs and other third party agencies as well as the continuity of care delivered through Plaintiffs to elderly or disabled members of low-income families. (Docket No. 25, at ¶¶ 9, 12, 71, 73). Under these circumstances, this action is not merely a dispute between private litigants involving private rights, but it necessitates determining whether a federal regulation is valid and consistent with a federal statute and the import of that decision potentially impacts the economic and structural mechanisms for the delivery of in-home companionship services to vulnerable members of society as provided for under the auspices of a federal-state public welfare program. Indeed, this case unquestionably implicates the public interest in resolving the uncertainty of those obligations as presented here. Accordingly, this factor also weighs in favor of exercising jurisdiction.

The next factors this Court considers is the avoidance of duplicative litigation, along with the convenience of the parties and the availability and relative convenience of other remedies. Plaintiffs are challenging the validity of the 2015 Regulation being applied to them in the DOL's enforcement actions, so ruling upon this threshold legal issue in this case, which was filed before the enforcement actions, would likely avoid duplicative litigation as to the core threshold legal issue common to the enforcement actions.[5] Doing so would be a sensible and efficient use of judicial resources and would potentially obviate the need for further litigation in the WDPA enforcement actions on downstream factual and legal issues. While the same potential remedies could be achieved piecemeal in the two WDPA enforcement actions, adjudicating this threshold legal issue here, in one place and at one time, is more efficient and more convenient to the parties

---

[5] The cadence of this action was slowed by the Supreme Court's decision in *Corner Post.*

(even if the DOL does not concede the point). Accordingly, these factors likewise weigh in favor of exercising jurisdiction.

Finally, this Court considers whether this declaratory judgment action is being used as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*. As stated above, this action was filed before any of the three DOL enforcement actions and is a proper procedure for challenging a federal regulation pre-enforcement under the Administrative Procedure Act. 5 U.S.C. §551 *et seq*. The fact that this declaratory judgment action was initiated after the DOL notified all three Plaintiffs of their investigations, though before those enforcement actions were filed, does not demonstrate procedural fencing or a race for *res judicata*. Plaintiffs' declaratory judgment action, by express design, seeks to negate the legal basis for the subsequently filed enforcement actions which are all predicated upon the 2015 Regulation being challenged here. Nor is this an instance where the parties raced to separate courthouses as two of the three enforcement actions were also filed here in Western District of Pennsylvania. This factor therefore weighs in favor of exercising jurisdiction.

Based upon the foregoing considerations, it is this Court's measured determination that there are no opposing factors[6] that outweigh the lack of pending parallel state proceedings to cause this Court to decline exercising jurisdiction. This Court shall retain its jurisdiction and proceed accordingly as to Intra-Home and Agewell.

IV.     The *Reifer* Factors Support Declining Jurisdiction over Americare.

---

[6] The Court notes that the parties raised additional arguments, such as the first-filed rule, waiver, and the possible barrier to appellate review caused by the necessity of posting a bond. (Docket Nos. 82 at 1-2; 83 at 2-3). However, this Court deems those arguments unsubstantiated, inapplicable, or otherwise unpersuasive, and nonetheless does not consider any of these additional factors, alone or in the aggregate, to outweigh the fact that there is not a parallel state proceeding, nor otherwise overcome those *Reifer* factors analyzed above that also support exercising jurisdiction here.

Unlike Intra-National and Agewell, whose enforcement actions are in the Western District of Pennsylvania and currently stayed, the enforcement action against Americare in the Southern District of Ohio has been adjudicated at summary judgment and is currently on appeal at the Sixth Circuit. Therefore, the resulting analysis of certain *Reifer* factors differs substantially for Americare and accordingly weighs against exercising jurisdiction over its declaratory judgment action here.

In contrast to the Court's analysis of the first *Reifer* factor for Intra-National and Agewell, a declaration from this Court regarding the legality of the 2015 Regulation will not resolve the uncertainty of obligations which gave rise to the controversy for Americare. Instead, it may create more uncertainty if it were to conflict with either the summary judgment decision in the Southern District of Ohio or the Sixth's Circuit's forthcoming opinion. Furthermore, consideration of the availability and relative convenience of other remedies also favors of declining jurisdiction over Americare. The DOL and Americare have already adjudicated their enforcement action and have been provided a remedy in the Southern District of Ohio. Exercising jurisdiction over Americare's declaratory judgment action here would exacerbate, not reduce, duplicative litigation and would impose unnecessary inconvenience to the parties. Finally, consideration of the public interest addressed above in relation to Agewell and Intra-National does not outweigh the countervailing considerations posed by the inconvenience and risk of inconsistent determinations given the fact that the SD Ohio enforcement action against Americare has already been adjudicated through summary judgment and presently is on appeal. Finally, distinguishing Americare from Agewell and Intra-Home allows this Court to determine the core legal issues underlying the WDPA enforcement actions efficiently and without interfering with the further advanced proceedings in the SD enforcement action now on appeal.

IV. Conclusion

For the reasons stated, Plaintiffs Agewell and Intra-Home established cause for this Court to exercise jurisdiction over the instant declaratory judgment action involving them, while Plaintiff Americare has not established such cause. Therefore, the Court shall GRANT the DOL's request that Americare's declaratory judgment action at Civil Action No. 20-1545 be dismissed and DENY the DOL's request that Intra-Home and Agewell's declaratory judgment actions at Civil Action Nos. 20-1545 and 20-1773, respectively, be dismissed.

An appropriate Order follows.

/s/ *W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: December 4, 2025

cc/ecf: All counsel of record