**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| INTRA-NATIONAL HOME CARE, LLC, | |
| *Plaintiff*, | |
| v. | No. 2:20-cv-01545-WSH |
| DEPARTMENT OF LABOR, et al., | |
| *Defendants*. | |
| AGEWELL HOME HELPERS, INC., | |
| *Plaintiff*, | |
| v. | No. 2:20-cv-01773-WSH |
| DEPARTMENT OF LABOR, et al., | |
| *Defendants*. | |

**PLAINTIFFS' APPENDIX OF DOCUMENTS REFERENCED IN ITS CONCISE
STATEMENT OF UNDISPUTED MATERIAL FACTS**

## CONTENTS

Declaration of Dilli Adhikari (Dec. 31, 2025) ........................................................ 1a

    Ex. A, Declaration of Dilli Adhikari, *Su v. Intra-National Home Care, LLC*,
        No. 2:21-cv-1391 ( Jan. 30, 2024), Dkt. 138-3 .............................................. 3a

    Ex. B, Complaint, *Chavez-DeRemer v. Intra-National Home Care, LLC*,
        No. 2:21-cv-1391 (Oct. 15, 2021), Dkt. 1 ...................................................... 7a

Declaration of Ravi Gurung (Dec. 31, 2025) ........................................................ 15a

    Ex. A, Complaint, *Su v. Agewell Home Helpers, Inc.*,
        No. 2:21-cv-108 ( Jan. 26, 2021), Dkt. 1 ...................................................... 17a

## DECLARATION OF DILLI ADHIKARI

I, under penalty of perjury under the laws of the United States of America, do hereby declare, certify and state the following:

1.  I am over the age of 18 and am currently employed as the President and Chief Executive Officer of Intra-National Home Care, LLC ("Intra-National").

2.  I am duly authorized to make this Unsworn Declaration on behalf of Intra-National.

3.  I make this Unsworn Declaration on the basis of my personal knowledge.

4.  Intra-National is a limited liability company and has a registered address at Apartment 18 at 1620 Skyline Drive Pittsburgh, PA 15227.

5.  Intra-National is a licensed provider of in-home care services to customers within Pennsylvania pursuant to Pennsylvania's Medicaid Waiver Program, which is called Community Health Choices ("CHC").

6.  Intra-National's customers require assistance with personal care and tasks of everyday living because of age or disability.

7.  Customers in CHC receive services according to a plan of care created by a managed care organization that ultimately reports to the Commonwealth of Pennsylvania.

8.  The customer (or their representative) chooses a provider—such as Intra-National—through which the services will be provided.

9.  Home-care aides serve the customers by providing fellowship, protection, and care, such as assistance with essential personal care tasks such as bathing, dressing, eating, toileting, transferring, and continence, as well as activities that support independent living such as managing medications, handling finances, supervising outdoor walks, and engaging in social activities, among other things.

10. The home-care aides primarily provide personal care and spend less than 20% of their time on household activities usually performed by household maids such as cooking and cleaning.

11. Home-care aides are low-wage workers that don't require advanced degrees. There is no requirement to have a license to practice medicine or to be a registered nurse to provide the basic personal care and help with activities of daily living provided by Intra-National's home-care aides.

12. CHC reimburses Intra-National's services in units of care, with a unit accounting for 15 minutes of care. Until about January 2020, the reimbursement for four "units" (i.e., one hour) of services was about $17.52. After January 2020, the rate was increased to $4.83 per unit, or $19.32 per hour.

13. The reimbursement rate is not adjusted to account for overtime.

14.  Home-care aides typically work in excess of 40 hours per week because customers need around-the-clock care from a person of trust.

15.  For Intra-National's Nepali-speaking clientele, the customer usually picks a family member or close associate within the Nepali-speaking community as a home-care aide. Indeed, in many (if not most) cases, Intra-National's customers choose as their caregiver an individual residing within their household, such as their son or daughter.

16.  For purposes of defending the Secretary of Labor's enforcement lawsuit, Intra-National performed a record review to determine what percentage of the employees at issue reside in the household where they perform the services.

17.  A true and correct copy of that declaration is attached as Exhibit A to this Declaration.

18.  The conclusion was that 1,716 home-care aides out of a total of 3,618, or 47.4%, shared a home address with the customer for whom they provided the services. Ex. A, at ¶ 14.

19.  Subsequently, we have been engaged in a deeper analysis and believe as a result that the number of home care aides who live in the home with the customer is, in fact, much higher – perhaps twice as high. We are continuing our analysis.

20.  The Secretary of Labor has filed a complaint under the FLSA against Intra-National and me personally for alleged violations of overtime and associated record-keeping requirements. *See* Complaint, *Chavez-DeRemer v. Intra-National Home Care, LLC et al.*, 2:21-cv-01391, Doc. 1.

21.  A true and correct copy of the Secretary of Labor's Complaint is attached as Exhibit B to this declaration.

22.  The Secretary of Labor contends that Intra-National and I are employers of persons "in domestic service for profit" covered by the 1974 FLSA Amendments. *Id.* ¶ 7.

23.  The Secretary of Labor alleges that Intra-National's willful violations of the FLSA and back wages, in addition to liquidated damages, and injunctive relief. *See Chavez-DeRemer v. Intra-National Home Care, LLC et al.*, 2:21-cv-01391, Doc. 121, at ¶ 206.

24.  The Secretary of Labor has also filed an administrative action seeking civil penalties against Intra-National based on the same alleged violations.

Dated: 12/31/2025 _____

*Dilli Adhikari*
Dilli Adhikari (Dec 31, 2025 16:28:56 EST)

Dilli Adhikari
President and CEO of Intra-National
Home Care, LLC

2

**2a**

# Ex. A

to the Declaration of Dilli Adhikari

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIE A. SU,
Acting Secretary of Labor,
United States Department of Labor,

      Plaintiff,

v.

INTRA-NATIONAL HOME CARE, LLC
and DILLI ADHIKARI,

      Defendants.

Civil Action No. 2:21-cv-01391-DSC

Hon. Judge David S. Cercone

## DECLARATION OF DILLI ADHIKARI

I, Dilli Adhikari, hereby declare the following:

1.      I have personal knowledge of the facts set forth below. If called as a witness, I could competently testify to them.

2.      I am the founder, sole owner, president and chief executive officer of Intra-National Home Care, LLC.

3.      In that capacity, I oversee Intra-National's day-to-day operations.

4.      Intra-National maintains six "area offices" across the state of Pennsylvania, with an office in each of the following cities: Harrisburg, Lancaster, Pittsburgh, Philadelphia, Scranton, and Erie.

5.      I am also familiar with the electronic record-keeping system, called HHAeXchange, that Intra-National uses to keep and maintain data on its care givers and consumers.

6.      In its HHAeXchange database, Intra-National maintains records of the mailing addresses for each of its care givers and consumers.

7.      Although a care giver and a consumer sharing an address in Intra-National's HHAeXchange database does not guarantee that they do reside (or, for the relevant period, always have resided) in the same home, it is nevertheless more likely than not that individuals who share an address live together.

8.      In its Motion for Summary Judgment, the Department of Labor claims that Defendants could not produce evidence to show that Intra-National's care givers (or some proportion of them) reside with the individual for whom they provide services.

9.      To corroborate my testimony that a large number of Intra-National's care givers do, in fact, live with their care recipients, my staff and I conducted a survey of Intra-National's HHAeXchange database for each of the care givers at issue in this litigation.

10.      The address data for the care givers and corresponding clients was complied into a series of spreadsheets.

11.      Rows with care givers whose address matches the corresponding care recipient are color-coded orange or light orange; where the addresses do not match, the row is color-coded green.

12.      The spreadsheets attached to this declaration are the result of that survey and compilation, area office by area office, the care givers who reside with their client and those who do not. *See* Exs. 1 – 6.

13.      For each area office, the results of our survey were as follows:

a.      Harrisburg: 738 out of 1,275 care givers shared an address with their client;

b.      Lancaster: 85 out of 128 care givers shared an address with their client;

Case 2:20-cv-01345-WSR    Document 113-3    Filed 12/30/23    Page 8 of 25

    c.      Pittsburgh: 515 out of 1,089 care givers shared an address with their client;

    d.      Philadelphia: 87 out of 191 care givers shared an address with their client;

    e.      Scranton: 51 out of 109 care givers shared an address with their client; and

    f.      Erie: 240 out of 826 care givers shared an address with their client.

14.     Overall, 1,716 care givers out of a total of 3,618, or 47.4%, shared an address with the individual for whom they provide(d) services.

15.     Of course, that a care giver's mailing address does not match that of the care recipient does not necessarily mean that the care giver and care recipient do not live together.

16.     That said, overall, the survey, which tends to show that many of the care givers live with their care recipients, generally aligns with my personal experience with Intra-National and the communities it serves.

17.     Finally, in conducting our survey, we identified a number of names of alleged care givers who do not appear in Intra-National's HHAeXchange database and so do not appear to have ever provided direct care services to any of Intra-National's consumers.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct, and this declaration was executed in Blacklick, Ohio.

Dated: January 30, 2024

_____

Dilli Ram Adhikiar

President and CEO of Intra-National Home Care, LLC

# Ex. B

## to the Declaration of Dilli Adhikari

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTIN J. WALSH, <br> SECRETARY OF LABOR, <br> UNITED STATES DEPARTMENT OF LABOR, <br><br>     Plaintiff, <br><br>     v. <br><br> INTRA-NATIONAL HOME CARE, LLC, AND <br> DILLI ADHIKARI <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 2:21-cv-1391 <br> ) <br> ) <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) |

## COMPLAINT

Plaintiff, Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Plaintiff"), brings this action to enjoin Intra-National Home Care, LLC, a limited liability company, and Dilli Adhikari, individually and as owner, officer, and manager of the aforementioned company (collectively, "Defendants"), from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended ("FLSA" or "the Act"), 29 U.S.C. §§ 207, 211(c), 215(a)(2) and 215(a)(5), and for a judgment against Defendants in the total amount of back wage compensation found by the Court to be due to any of the employees of Defendants who worked in Pennsylvania pursuant to the Act and an equal amount due to the employees of Defendants who worked in Pennsylvania in liquidated damages.

1.     Jurisdiction of this action is conferred upon the Court by Section 17 of the Act, 29 U.S.C. § 217, and by 28 U.S.C. §§ 1331 and 1345.

2.     This Court is the proper venue because all or a substantial part of the events or omissions giving rise to these allegations occurred in this judicial district.

3.      Defendant Intra-National Home Care, LLC ("Intra-National") is a limited liability company with a registered address at 1620 Skyline Drive, Pittsburgh, PA 15227.  Intra-National is engaged in a domestic homecare business operating within the jurisdiction of this Court.

4.      Defendant Dilli Adhikari is the Chief Executive Office and owner of Intra-National. Mr. Adhikari directed employment practices within Pennsylvania and has directly or indirectly acted in the interest of Intra-National in relation to its employees within Pennsylvania at all relevant times herein, including supervising employees, hiring and firing employees, setting their work schedules, and setting their pay rates.

5.      At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the Act, in that Defendants have been, through unified operation or common control, engaged in the performance of related activities for a common business purpose. These activities constituted (and/or were related to) the providing home health care services in furtherance of the business purposes of Defendants' unified business entity.

6.      At all times relevant herein, Defendants have employed, and are employing, employees in and about their place of business in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. Further, at all times relevant herein, Defendants have had annual gross volume sales made or business done of not less than $500,000, thereby affording coverage over all their employees pursuant to Section 3(s)(1)(A) of the Act.

7.      Defendants employ persons in Pennsylvania in domestic service for profit, which affects commerce per Section 2(a)(5) of the Act, 29 U.S.C. § 202(a)(5). Intra-National's

employees employed as direct care workers ("DCWs") or caregivers (collectively, "employees") provide in-home care services to Intra-National's clients within Pennsylvania.

8.     Defendants willfully violated the provisions of Sections 7 and 15(a)(2) of the Act by employing their employees in an enterprise engaged in commerce or handling goods or materials that have been moved in or produced for commerce for workweeks longer that those prescribed in Section 7 of the Act without compensating said employees for employment in excess of the prescribed hours at rates not less than one and one-half times their regular rates. Therefore, Defendants are liable for the payment of unpaid overtime compensation and an equal amount of liquidated damages under Section 16(c) of the Act, 29 U.S.C. § 216(c).

9.     For example, during the time period from at least June 4, 2017, through at least May 31, 2020, Defendants failed to compensate certain of their employees who worked over 40 hours in a workweek at rates not less than one and one-half times their regular rates. During this time period, these employees worked at least one hour in excess of forty per workweek. During this time period, many employees worked in excess of fifty hours per workweek.

10.     Defendants paid many employees at established regular hourly rates ranging between approximately $12.50 and $13.00 per hour. In certain workweeks, Defendants paid these employees at this straight time regular rate for all hours up to forty per workweek. During these workweeks, Defendants paid certain employees their straight-time hourly rates for all hours worked on the face of Defendants' payroll records, and did not pay the required time and one-half premium rate for overtime hours worked in excess of forty per workweek.

11.     In other workweeks in which certain employees worked in excess of forty hours per workweek, Defendants reduced employees' regular hourly rates, which caused these employees' overtime premium rates to fall correspondingly.  During these workweeks,

Defendants manipulated these employees' regular rates such that they always received the equivalent $12.50 to $13.00 regular rate for all hours worked, including hours worked over forty. Defendants only lowered these employees' regular rates in overtime workweeks. When these certain employees resumed working non-overtime workweeks, Defendants resumed paying these employees their established regular rates, typically between $12.50 to $13.00 per hour.

12. Furthermore, in other workweeks in which certain employees worked in excess of forty hours per workweek, Defendants made deductions to the employees' paychecks that cancelled out these employees' overtime premium pay and caused them to only receive their regular rate for all hours worked including overtime hours. Therefore, in workweeks where Defendants made these deductions, Defendants did not pay these employees the required time and one-half premium rate for overtime hours worked in excess of forty per workweek.

13. Defendants knew or recklessly disregarded their obligation to pay their employees one and one-half their regular rates for hours worked in excess of forty per workweek. For example, Defendants intentionally manipulated certain employees' regular rates to create the appearance of paying an overtime premium but in reality paying the same rate for all hours. They did so by reducing certain employees' regular rates, but only in workweeks in which those certain employees worked in excess of forty hours per workweek. They also did so by making deductions from their paychecks that cancelled out these employees' overtime premium pay. Defendants also simply paid certain other employees straight time for all overtime hours worked, and not the required time and one-half premium rates, despite being aware of the overtime requirement.

14. Defendants violated the provisions of Sections 11(c) and 15(a)(5) of the Act, 29 U.S.C. §§ 211(c) and 215(a)(5), in that Defendants failed to make, keep, and preserve adequate

and accurate records of their employees, which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

15. For example, due to their practice of lowering employees' regular rates in overtime workweeks and paying employees straight time for overtime, Defendants failed to keep and preserve payroll records for employees for at least three years, including accurate records of employees' regular hourly rates of pay, total weekly straight-time earnings, total weekly overtime premium pay, and total deductions. 29 C.F.R. §§ 516.2(a)(6), (8), (9), (10).

WHEREFORE, cause having been shown, the Secretary prays for judgment against Defendants providing the following relief:

(1) For an injunction issued pursuant to Section 17 of the Act permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with Defendants who receive actual notice of any such judgment, from violating the provisions of Sections 7, 11(c), 15(a)(2) and 15(a)(5) of the Act; and

(2) For judgment pursuant to Section 16(c) of the Act finding Defendants liable for unpaid minimum wage and overtime compensation due to certain of Defendants' current and former employees listed in the attached Schedule A for the period from at least June 4, 2017, through at least May 31, 2020, and for an equal amount due to certain of Defendants' current and former employees in liquidated damages. Additional amounts of back wages and liquidated damages may also be owed to certain current and former employees of Defendants listed in the attached Schedule A for violations continuing after May 31, 2020, and may be owed to certain current and former employees presently unknown to the Secretary for the period covered by this Complaint, who may be identified during this litigation and added to Schedule A; or

(3)     In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with defendants, from withholding the amount of unpaid minimum wages and overtime compensation found due defendants' employees and prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621.

FURTHER, Plaintiff prays that this Honorable Court award costs in his favor, and an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

Mailing Address:

U.S. Department of Labor
Office of the Regional Solicitor
1835 Market Street
Mailstop SOL/22
Philadelphia, PA 19103

(215) 861-5142 (voice)
(215) 861-5162 (fax)

dennis.ethan.m@dol.gov

Date: October 15, 2021

**UNITED STATES DEPARTMENT OF LABOR**

Seema Nanda
Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

*/s/ Ethan M. Dennis*
By: Ethan M. Dennis
PA ID # 308871

Attorneys for Plaintiff

## DECLARATION OF RAVI GURUNG

I, under penalty of perjury under the laws of the United States of America, do hereby declare, certify and state the following:

1. I am over the age of 18 and am currently employed as the Secretary of Agewell Home Helpers, Inc. ("Agewell").

2. I am also an owner of Agewell, along with my wife, Meena Gurung.

3. I am duly authorized to make this Unsworn Declaration on behalf of Agewell.

4. I make this Unsworn Declaration on the basis of my personal knowledge.

5. Agewell is an S-Corporation headquartered in Pennsylvania and has a registered address at 110 Munsey Avenue, Pittsburgh PA 15227.

6. Agewell is a licensed provider of in-home care services to customers within Pennsylvania pursuant to Pennsylvania's Medicaid Waiver Program, which is called Community Health Choices ("CHC").

7. Agewell's customers require assistance with personal care and tasks of everyday living because of age or disability.

8. Customers in CHC receive services according to a plan of care created by a managed care organization that ultimately reports to the Commonwealth of Pennsylvania.

9. The customer (or their representative) chooses a provider—such as Agewell—through which the services will be provided.

10. Home-care aides serve the customers by providing fellowship, protection, and care, such as assistance with essential personal care tasks such as bathing, dressing, eating, toileting, transferring, and continence, as well as activities of daily living and instrumental activities of daily living such as managing medications, handling finances, managing groceries, supervising outdoor walks, and engaging in social activities, among other things.

11. The home-care aides primarily provide personal care and spend less than 20% of their time on household activities usually performed by household maids such as cooking and cleaning.

12. Home-care aides are low-wage workers that don't require advanced degrees. There is no requirement to have a license to practice medicine or to be a registered nurse to provide the basic personal care and help with activities of daily living provided by Agewell's home-care aides.

13. CHC reimburses Agewell's services in units of care, with a unit accounting for 15 minutes of care. Until about January 2020, the reimbursement for four "units" (i.e., one hour) of services was about $17.52. After January 2020, the rate was increased to $4.83 per unit, or $19.32 per hour.

1

14.   The reimbursement rate is not adjusted to account for overtime.

15.   Home-care aides typically work in excess of 40 hours per week because customers need around-the-clock care from a person of trust.

16.   For Agewell's clientele, who typically speak Nepali or Hindi, the customer usually picks a family member or close associate within the Bhutanese community as a home-care aide. Indeed, in many (if not most) cases, Agewell's customers choose as their caregiver an individual residing within their household, such as their son or daughter.

17.   Slightly more than 90% of home-care aides providing services to Agewell clients shared a home address with the customer for whom they provided the services.

18.   The Secretary of Labor has filed a complaint under the FLSA against Agewell and me personally for alleged violations of overtime and associated record-keeping requirements. *See* Complaint, *Stewart v. Agewell Home Helpers, Inc. et al.*, 2:21-cv-00108, Doc. 1.

19.   A true and correct copy of the Secretary of Labor's Complaint is attached as Exhibit A to this declaration.

20.   The Secretary of Labor contends that Agewell, my wife, and I are employers of persons "in domestic service for profit" covered by the 1974 FLSA Amendments. *Id.* ¶ 5.

21.   The Secretary of Labor alleges that Agewell, my wife, and I willfully violated the FLSA and seeks back wages, liquidated damages, and injunctive relief. *See Id.* at ¶ 6, Prayer for Relief ¶¶ 1-3.

22.   The Secretary of Labor has also filed an administrative action seeking civil penalties against Agewell, my wife, and I based on the same alleged violations.

Dated:   12/31/2025

DocuSigned by:

*Ravi Gurung*

6FE36E14745148E...

Ravi Gurung
Secretary of Agewell Home Helpers, Inc.

2

# Ex. A

to the Declaration of Ravi Gurung

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MILTON AL STEWART, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 2:21-cv-108 _____ ) |
| AGEWELL HOME HELPERS, INC., D/B/A AGEWELL CAREGIVER SERVICE, RAVI GURUNG, AND MEENA GURUNG | ) ) ) ) JURY TRIAL DEMANDED |
| Defendants. | ) ) |

**COMPLAINT**

Plaintiff, Milton Al Stewart, Acting Secretary of Labor, United States Department of Labor ("Plaintiff"), brings this action to enjoin Agewell Home Helpers, Inc., a Pennsylvania corporation, d/b/a Agewell Caregiver Service, Ravi Gurung, individually and as owner, officer, and manager of the aforementioned company, and Meena Gurung, individually and as owner, officer, and manager of the aforementioned company (collectively, "Defendants"), from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("the Act"), and for a judgment against Defendants in the total amount of back wage compensation found by the Court to be due to any of the employees of Defendants pursuant to the Act and an equal amount due to the employees of Defendants in liquidated damages.

1. Jurisdiction of this action is conferred upon the Court by Section 17 of the Act, 29 U.S.C. § 217, and by 28 U.S.C. §§ 1331 and 1345.

**18a**

2.      Defendant Agewell Home Helpers, Inc. ("Agewell") is a corporation duly organized under the laws of the Commonwealth of Pennsylvania. Agewell's registered address and principal place of business is 110 Munsey Avenue, Pittsburgh, PA, within the jurisdiction of this Court. Agewell is engaged in a domestic homecare business operating out of this same location, within the jurisdiction of this Court.

3.      Defendant Ravi Gurung is the corporate secretary, treasurer, and co-owner of Agewell. Mr. Gurung directed employment practices and has directly or indirectly acted in the interest of Agewell in relation to its employees at all relevant times herein, including interviewing, hiring, and setting pay rates for employees, and setting the conditions of employment for employees. Mr. Gurung resides at 110 Munsey Avenue, Pittsburgh, PA, within the jurisdiction of this Court.

4.      Defendant Meena Gurung is the corporate president, chief executive officer, and co-owner of Agewell. Ms. Gurung directed employment practices and has directly or indirectly acted in the interest of Agewell in relation to its employees at all relevant times herein, including interviewing, hiring, and setting pay rates for employees, and setting the conditions of employment for employees. Ms. Gurung resides at 110 Munsey Avenue, Pittsburgh, PA, within the jurisdiction of this Court.

5.      Defendants employ persons in domestic service for profit, which affects commerce per Section 2(a)(5) of the Act. Agewell's employees employed as direct care workers ("DCWs") or caregivers provide in-home care services to Agewell's clients.

6.      Defendants willfully violated the provisions of Sections 7 and 15(a)(2) of the Act by employing their employees in an enterprise engaged in commerce or handling goods or materials that have been moved in or produced for commerce for workweeks longer that those

**19a**

prescribed in Section 7 of the Act without compensating said employees for employment in excess of the prescribed hours at rates not less than one and one-half times their regular rates. Therefore, Defendants are liable for the payment of unpaid overtime compensation and an equal amount of liquidated damages under Section 16(c) of the Act.

7.    For example, during the time period from at least May 27, 2017, through at least May 23, 2020, Defendants failed to compensate certain of their employees employed as direct care workers ("DCWs") or caregivers (collectively, "employees") who worked over 40 hours in a workweek hours at rates not less than one and one-half times their regular rates. During this time period, these employees worked at least one hour in excess of forty per workweek. During this time period, employees worked an average of approximately 55 hours per workweek.

8.    Defendants paid employees at established regular hourly rates ranging between approximately $12.50 and $13.50 per hour. Defendants paid employees at this straight time regular rate for all hours up to forty per workweek. Defendants paid certain employees their straight-time hourly rates for all hours worked on the face of Defendants' payroll records, and did not pay the required time and one-half premium rate for overtime hours worked in excess of forty per workweek.

9.    In workweeks in which certain other employees worked in excess of forty per workweek, Defendants reduced employees' regular hourly rates, which caused these employees' overtime premium rates to fall correspondingly. Defendants manipulated these employees' regular rates such that they always received the equivalent $12.50 to $13.50 regular rate for all hours worked, including hours worked over forty. Defendants only lowered these employees' regular rates in overtime workweeks. When these certain employees resumed working non-

overtime workweeks, Defendants resumed paying these employees their established regular rates typically between $12.50 to $13.50 per hour.

10. Defendants knew or recklessly disregarded their obligation to pay their employees one and one-half their regular rates for hours worked in excess of forty per workweek. Defendants intentionally manipulated certain employees' regular rates to create the appearance of paying an overtime premium but in reality paying the same rate for all hours. They did so by reducing certain employee' regular rates, but only in workweeks in which those certain employees worked in excess of forty hours per workweek. Defendants also simply paid certain other employees straight time for all overtime hours worked, and not the required time and one-half premium rates, despite being aware of the overtime requirement.

11. Defendants violated the provisions of Sections 11(c) and 15(a)(5) of the Act in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees, which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

12. For example, due to their practice of lowering employees' regular rates in overtime workweeks and paying employees straight time for overtime, Defendants failed to keep and preserve payroll records for employees for at least three years, including accurate records of employees' regular hourly rates of pay, daily and weekly hours worked, total weekly straight-time earnings, and total weekly overtime premium pay. 29 C.F.R. §§ 516.2(a), 516.5(a).

WHEREFORE, cause having been shown, the Secretary prays for judgment against Defendants providing the following relief:

(1) For an injunction issued pursuant to Section 17 of the Act permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in

active concert or participation with Defendants who receive actual notice of any such judgment, from violating the provisions of Sections 7, 11(c), 15(a)(2) and 15(a)(5) of the Act; and

    (2)    For judgment pursuant to Section 16(c) of the Act finding Defendants liable for unpaid minimum wage and overtime compensation due to certain of Defendants' current and former employees listed in the attached Schedule A for the period from at least May 27, 2017, through at least May 23, 2020, and for an equal amount due to certain of Defendants' current and former employees in liquidated damages. Additional amounts of back wages and liquidated damages may also be owed to certain current and former employees of Defendants listed in the attached Schedule A for violations continuing after May 23, 2020, and may be owed to certain current and former employees presently unknown to the Secretary for the period covered by this Complaint, who may be identified during this litigation and added to Schedule A; or

    (3)    In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with defendants, from withholding the amount of unpaid minimum wages and overtime compensation found due defendants' employees and prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621.

    FURTHER, Plaintiff prays that this Honorable Court award costs in his favor, and an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

| | |
|---|---|
| Mailing Address: | **UNITED STATES DEPARTMENT OF LABOR** |
| | |
| U.S. Department of Labor | Stanley E. Keen |
| Office of the Regional Solicitor | Deputy Solicitor for National Operations |
| 1835 Market Street | |
| Mailstop SOL/22 | Oscar L. Hampton III |
| Philadelphia, PA 19103 | Regional Solicitor |
| | |
| (215) 861-5141 (voice) | */s/ Brian P. Krier* |
| (215) 861-5162 (fax) | By: Brian P. Krier |
| | PA ID # 313826 |
| krier.brian@dol.gov | |
| | Attorneys for Plaintiff |
| Date: January 26, 2021 | |