**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| INTRA-NATIONAL HOME CARE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR, *et al.*,<br><br>Defendants. | No. 2:20-cv-01545-WSH |
| AGEWELL HOME HELPERS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR, *et al.*,<br><br>Defendants. | No. 2:20-cv-01773-WSH |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

BACKGROUND ........ 2

I. Legal Background ........ 2

a. The FLSA and Relevant Amendments to the FLSA ........ 2

b. The Department's 1975 Regulations Implementing the 1974 Domestic Service Amendments ........ 4

c. The Supreme Court's 2007 Decision Regarding the Statutory Delegations of Authority and the 1975 Third Party Regulation ........ 4

d. The Department's 2013 Rule Updating and Revising the Regulations Implementing the 1974 Domestic Service Amendments ........ 5

II. Factual and Procedural Background ........ 9

LEGAL STANDARD ........ 11

ARGUMENT ........ 12

I. THIS COURT SHOULD GRANT SUMMARY JUDGMENT TO THE DEPARTMENT BECAUSE THE 2013 THIRD PARTY REGULATION IS PRESUMPTIVELY VALID. ........ 12

a. Sections 213(a)(15) and 29(b) Expressly Delegate the Department Discretion to Implement the 1974 Amendments, Including the Exemptions ........ 13

b. The Boundaries of Congress's Grant of Authority Encompass the Department's Discretion to Implement the Domestic Service Amendments, including by Defining and Limiting the Exemptions ........ 16

c. The 2013 Third Party Regulation is Neither Contrary to Law Nor Arbitrary or Capricious. ........ 19

II. PLAINTIFFS' REQUESTED REMEDIES ARE IMPROPER. ........ 24

CONCLUSION ........ 26

# TABLE OF AUTHORITIES

## CASES

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967)....................25

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*,
462 U.S. 87 (1983)....................12

*Barnes v. Res. for Hum. Dev., Inc.*,
Civ. A. No. 24-757, 2024 WL 4566113 (E.D. Pa. Oct. 24, 2024)....................15

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971)....................11

*Corner Post, Inc. v. Board of Governors of Federal Reserve System*,
603 U.S. 799 (2024)....................10, 11, 25

*Dep't of Lab. v. Americare Healthcare Servs., LLC,*
762 F. Supp. 3d 666 (S.D. Ohio 2025), *appeal filed*,
No. 25-3128 (6th Cir. Mar. 4, 2025)....................15, 24

*Encino Motorcars, LLC v.* Navarro,
579 U.S. 211 (2016)....................10, 20

*Encino Motorcars, LLC v.* Navarro,
584 U.S. 79 (2018)....................10, 20

*Env't Def. Fund v. U.S. Env't Prot. Agency*,
124 F.4th 1 (D.C. Cir. 2024)....................19

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)....................20, 22

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021)....................19, 23

*Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*,
604 U.S. 542 (2025)....................22

*Gentile v. SEC*,
974 F.3d 311 (3d Cir. 2020)....................25

*Gill v. Whitford*,
585 U.S. 48 (2018)....................24

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)....................14

*Home Care Ass'n of Am. v. Weil*,
799 F.3d 1084 (D.C. Cir. 2015), *cert. denied*, 579 U.S. 927 (2016) ...................... 9, 18, 23, 24

*In re Yellow Corp.*,
152 F.4th 491 (3d. Cir. 2025)........................................................................................ *passim*

*Intra-Nat'l Home Care, LLC v. U.S. Dep't of Lab.*,
No. 22-2628, 2024 WL 4100245 (3d. Cir. Sep. 6, 2024), *remanded*,
2025 WL 3484650 (W.D. Pa. Dec. 4, 2025) ................................................................. 10, 11

*Long Island Care at Home, Ltd. v. Coke*,
551 U.S. 158 (2007)........................................................................................................ *passim*

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)........................................................................................................ *passim*

*Mayfield v. U.S. Dep't of Lab.*,
117 F.4th 611 (5th Cir. 2024)........................................................................................... 16

*Moctezuma-Reyes v. Garland*,
124 F.4th 416 (6th Cir. 2024)........................................................................................... 16

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)...................................................................................................... 11, 19

*Newspaper Ass'n of Am. v. Postal Regul. Comm'n*,
734 F.3d 1208 (D.C. Cir. 2013) ........................................................................................ 23

*Olmstead v. L.C. ex rel. Zimring,*
527 U.S. 581 (1999)............................................................................................................ 6

*Pickens v. Hamilton-Ryker IT Sols., LLC*,
133 F.4th 575 (6th Cir. 2025), *denying reh'g en banc*,
2025 WL 1403756 (6th Cir. May 1, 2025)................................................................... 12, 18

*Schaffner v. Monsanto Corp.*,
113 F.4th 364 (3d Cir. 2024)............................................................................................ 15

*Sec'y U.S. Dep't of Lab. v. Am. Future Sys., Inc.*,
873 F.3d 420 (3d Cir. 2017).............................................................................................. 25

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168 (2025)........................................................................................................... 19

*Su v. WiCare Home Care Agency, LLC*,
No. 1:22-cv-00224, 2024 WL 3598826 (M.D. Pa. July 31, 2024),
*appeal filed sub nom. Walsh v. WiCare Home Care Agency LLC*,
No. 24-2565 (3d Cir. Aug. 22, 2024)................................................................................ 15

*United States v. Sacanell*,
Crim. A. No. 24-389, 2025 WL 1921647 (E.D. Pa. July 10, 2025) ..... 14

*United States v. Texas*,
599 U.S. 670 (2023) ..... 24, 25

**STATUTES**

5 U.S.C. §§ 701, *et seq.* ..... 10

5 U.S.C. § 706 ..... 11, 24

29 U.S.C. §§ 201, *et seq* ..... 1

29 U.S.C. § 202 ..... 3

29 U.S.C. § 203 (1966) ..... 2

29 U.S.C. § 206 ..... 2, 3

29 U.S.C. § 206 (1961) ..... 2

29 U.S.C. § 207 ..... 2, 3

29 U.S.C. § 207 (1961) ..... 2

29 U.S.C. § 213 ..... *passim*

29 U.S.C. § 215 ..... 19

29 U.S.C. § 216 ..... 25

29 U.S.C. § 1432 ..... 18

Fair Labor Standards Amendments of 1961,
Pub. L. No. 87-30, 75 Stat. 65 ..... 2

Fair Labor Standards Amendments of 1966,
Pub. L. No. 89-601, 80 Stat. 830 ..... 2

Fair Labor Standards Amendments of 1974,
Pub. L. No. 93-259, 88 Stat. 55 ..... *passim*

**RULES**

Fed. R. Civ. P. 25 ..... 1

**REGULATIONS**

29 C.F.R. § 552.6 ..... 4

29 C.F.R. § 552.109 ..... *passim*

Extension to Domestic Service Employees,
40 Fed. Reg. 7404 (Feb. 20, 1975) ..... 4

Application of the Fair Labor Standards Act to Domestic Service,
78 Fed. Reg. 60,454 (Oct. 1, 2013) ..... *passim*

**OTHER AUTHORITIES**

119 Cong. Rec. 24,801 (1973) ..... 6

H.R. Rep. No. 93-913 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811 ..... 6

*Oxford English Dictionary* 89 (1st ed. 1933) ..... 18

S. Rep. No. 93-690 (1974) ..... 6, 7

*Webster's Dictionary* 688 (2d ed. 1934) ..... 18

**INTRODUCTION**

Plaintiffs Intra-National Home Care LLC ("Intra-National") and Agewell Home Helpers, Inc. d/b/a Agewell Caregiver Service ("Agewell") filed this suit against Defendants the U.S. Department of Labor, the Secretary of Labor, and the Administrator of the Wage and Hour Division ("WHD") within the Department of Labor[1] (collectively, "Department" or "Defendants") seeking to avoid enforcement actions against them under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA" or "Act"), to recover overtime compensation not paid to home care workers they employed. Pertinently, a Department of Labor regulation promulgated in 2013 prohibits home-care agencies—like Plaintiffs—from claiming exemptions from the FLSA's minimum wage and overtime requirements for certain domestic service employees. 29 C.F.R. § 552.109 ("2013 Third Party Regulation"). Plaintiffs ask this Court to hold that the 2013 Third Party Regulation is invalid in an effort to avoid liability for unpaid wages.

Summary judgment should be granted for Defendants. First, as courts have already held, the 2013 Third Party Regulation is an exercise of the express delegations of discretionary rulemaking authority that Congress conferred on the Department in the 1974 amendments to the FLSA. Indeed, in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), the Supreme Court recognized that the Department possessed a broad grant of authority to engage in rulemaking regarding the exact FSLA's exemptions at issue here. Moreover, the D.C. Circuit specifically upheld the 2013 Third Party Regulation, concluding that it was a proper and reasoned exercise of the Department's delegated authority. Nothing in the Supreme Court's

[1] At the time this lawsuit was filed, Eugene Scalia was the Secretary of Labor and Cheryl Stanton was the WHD Administrator. Currently, Lori Chavez-DeRemer is the Secretary of Labor and Andrew Rogers is the WHD Administrator; they are substituted as named parties. Fed. R. Civ. P. 25(d).

recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) necessitates revisiting *Coke*. Second, for all the same reasons, under the deferential APA standards, the 2013 Third Party Regulation is not arbitrary or capricious.

## BACKGROUND

### I. Legal Background

#### a. The FLSA and Relevant Amendments to the FLSA

The FLSA generally requires covered employers to pay a minimum hourly wage and, for hours of work exceeding 40 in a workweek, overtime compensation at a rate of one and one-half times the employee's regular rate of pay. 29 U.S.C. §§ 206(a), 207(a)(1). Before 1974, to be covered by these wage provisions, domestic service employees generally had to be "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1) (1961); *see also* Fair Labor Standards Amendments of 1961, Pub. L. No. 87-30, §§ 5, 6, 75 Stat. 65, 67-69 (adding enterprise-wide coverage to the FLSA's wage provisions). In 1974, an employer qualified as an "enterprise" if, among other things, it had more than $250,000 in gross annual sales. 29 U.S.C. § 203(s)(1) (1966); *see also* Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, § 102(c), 80 Stat. 830, 831.

In 1974, Congress amended the FLSA. Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55. The amendments included a section titled "Domestic Service Workers," *id.* § 7, 88 Stat. at 62 ("1974 domestic service amendments"),[2] which extended the Act's minimum wage and overtime pay requirements to more domestic service employees than

[2] The 1974 amendments to the FLSA, including the section that comprises the 1974 domestic service amendments, are attached in full in public law format as Addendum A. The Department has added boxes to pages 7 and 20 for ease of reference.

before by adding minimum wage and overtime provisions specific to such employees. *Id.* § 7(b)(1), (2), 88 Stat. at 62 (codified at 29 U.S.C. § 206(f), 207(*l*)). This coverage applies regardless of whether the relevant employer is an "enterprise."[3]

At the same time Congress extended the FLSA's wage requirements to more domestic service employees, Congress also added exemptions describing the circumstances in which the expansion of wage rights would apply. First, Congress exempted from both the minimum wage and overtime pay requirements "any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." *Id.* § 7(b)(3), 88 Stat. at 62 (codified at 29 U.S.C. § 213(a)(15)) ("companionship services exemption"). Second, Congress exempted from the overtime pay requirement "any employee who is employed in domestic service in a household and who resides in such [a] household." *Id*. § 7(b)(4), 88 Stat. at 62 (codified at 29 U.S.C. § 213(b)(21)) ("live-in exemption").

Congress granted the Department authority to implement the 1974 amendments through legislative rules. Specifically, Congress authorized the Department "to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act." *Id.* § 29(b), 88 Stat. at 76. Furthermore, as to the 1974 domestic service amendments specifically, Congress authorized the Department to "define[] and delimit[]" the terms "companionship services," "babysitting services," and "domestic service." 29 U.S.C. § 213(a)(15).

---

[3] In support of this significant expansion of FLSA coverage, Congress explicitly found that "the employment of persons in domestic service in households affects commerce." Pub. L. No. 93-259, § 7(a), 88 Stat. at 62 (codified at 29 U.S.C. § 202(a)).

**b. The Department's 1975 Regulations Implementing the 1974 Domestic Service Amendments**

The Department issued regulations regarding the 1974 domestic service amendments in 1975. As relevant here, those regulations set out the types of activities and duties that constituted companionship services, Extension to Domestic Service Employees, 40 Fed. Reg. 7404, 7405 (Feb. 20, 1975) (codified at 29 C.F.R. § 552.6), and provided that the exemptions for companionship services and live-in domestic service employees could be claimed not only by an individual (or family member) who hired a worker directly, but also by third party employers, such as agencies whose workforce works in private homes. *Id.* at 7407 (codified at 29 C.F.R. § 552.109). At the time the 1975 "third party regulation" was promulgated, the "vast majority" of "private household workers were employed directly by a member of [the] household," rather than by a third party. Emp't Standards Admin., U.S. Dep't of Labor, *Minimum Wage and Maximum Hours Standards Under the Fair Labor Standards Act* at 28 (Jan. 19, 1973) (reporting that "no more than two percent of the workers within the scope of the [household workers] survey were in the employ of a household service business").[4]

**c. The Supreme Court's 2007 Decision Regarding the Statutory Delegations of Authority and the 1975 Third Party Regulation**

In 2007, the Supreme Court in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), upheld the 1975 regulation governing third party employment as a reasonable exercise of the rulemaking authority that Congress had delegated to the Department. An employee of a home care agency argued that the Act precluded the regulation permitting third party employers from claiming the companionship services exemption. *Id.* at 166. In rejecting this argument, the Supreme Court concluded that "the text of the FLSA does not expressly answer the third party-

[4] This report is attached as Addendum B.

employment question." *Id*. at 168. Invoking both Pub. L. No. 93-259, § 29(b), 88 Stat. at 76, and 29 U.S.C. § 213(a)(15) at the outset of its analysis, the Court concluded, "[t]he statutory language refers broadly to 'domestic service employment' and to 'companionship services'" and "expressly instructs the agency to work out the details of those broad definitions." *Coke*, 551 U.S. at 167. The Court explained that "whether to include workers paid by third parties within the scope of the definitions is one of those details." *Id*. It reasoned that "whether, or how, the definition should apply to workers paid by third parties raises a set of complex questions," and that "[s]atisfactory answers to such questions may well turn upon the kind of thorough knowledge of the subject matter and ability to consult at length with affected parties that an agency, such as the [Department], possesses." *Id*. at 167-68. The Court also concluded that it is "consequently reasonable to infer (and we do infer) that Congress intended its broad grant of definitional authority to the Department to include the authority to answer these kinds of questions." *Id*. at 168. The Court thus concluded the regulation was valid. *Id.* at 162.

**d. The Department's 2013 Rule Updating and Revising the Regulations Implementing the 1974 Domestic Service Amendments**

In 2013, through notice-and-comment rulemaking, the Department amended its 1975 regulations to exclude third party employers from claiming the companionship services and live-in exemptions. Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 (Oct. 1, 2013) (codified at 29 C.F.R. § 552.109(a), (c)). The Department concluded that because of "changes to the home care services industry, the home care services workforce, and the scope of home care services provided," the 1975 regulations "no longer align[ed] with Congress's intent when it extended FLSA protections to domestic service employees." *Id.* at 60,455.

The Department explained in the 2013 rulemaking that when Congress enacted the 1974 amendments, the accompanying House and Senate committee reports stated that the domestic service exemptions were not intended to apply to workers whose vocation is domestic service or who earn their livelihood from such work. *Id.* at 60,454-456 (citing S. Rep. No. 93-690, at 20 (1974); H.R. Rep. No. 93-913, at 36 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2845). The Department further emphasized that in the ensuing decades, the home care industry transformed into a multi-billion-dollar business with a professional workforce, far from the "neighbor" who casually "sits with" an older person. 78 Fed. Reg. at 60,457 (citing 119 Cong. Rec. 24,801 (1973) (Sen. Burdick)). Specifically, "[i]n the 1970s, individuals who had significant care needs went into institutional settings." *Id.* at 60,458. "Over time, however, our nation has come to recognize the importance of providing services in private homes and other community-based settings and of supporting individuals in remaining in their homes and communities." *Id.*; *see also id.* (noting the impact of the Supreme Court's decision in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), which held it is a violation of the Americans with Disabilities Act for public entities to fail to provide services to persons with disabilities in the most integrated setting appropriate).

The 2013 rulemaking record also asserted a nexus between third party employment and professionalization, explaining that employees of third party agencies often split time between multiple clients, work long hours, and provide comprehensive services that in earlier decades would have been performed by attendants in facilities such as nursing homes. *E.g.*, 78 Fed. Reg. at 60,458 (explaining that the shift from workers providing care in institutionalized settings to homes "has been made possible in significant part by the availability of government funding assistance for home care under Medicare and Medicaid"); *id.* at 60,480 (discussing comments reflecting that home care agencies' employees provide such care as their vocation, often pursuant

to "training requirements and competency evaluations"); *id.* at 60,544 (noting that "[m]any who work overtime accrue long hours in the service of at least a few consumers [i.e., recipients of home care services], traveling between consumer homes during the workweek").

The Department also examined the purpose of the 1974 domestic service amendments and emphasized repeatedly that the changes to the law, when viewed holistically, were meant to expand the applicability of the Act's wage provisions to more domestic workers. The Department concluded that the amendments were not meant to deny those wage standards to workers who—as employees of larger companies—previously would have been covered under the FLSA's existing enterprise coverage provisions and therefore, absent the application of the 1974 amendments' exemptions, would have been entitled to the Act's wage provisions. For example, the Department explained that "the 1974 amendments were intended only to expand coverage to include more workers, and were not intended to roll back coverage for employees of third parties who already had FLSA protections" as employees of covered enterprises. *Id.* at 60,481-82 (citing S. Rep. No. 93-690, at 20).

Because of the vast expansion of the home care industry and growth in the number of third party employers, the Department revised its Third Party Regulation, 29 C.F.R. § 552.109, to provide that third party employers may not avail themselves of the exemptions for companionship services or live-in domestic service employees. Specifically, the 2013 regulations limited these exemptions by providing that only an individual receiving companionship services (i.e., the consumer) or members of the consumer's family or household may claim those exemptions. *Id.* § 552.109(a), (c). The Department explained that it was making this change "[t]o better ensure that the domestic service employees to whom Congress intended to extend FLSA protections in fact enjoy those protections." 78 Fed. Reg. at 60,455.

The Department recognized that it was "changing its position as to the proper treatment of third party employers," but explained that the change was warranted in light of "the purpose and objectives of the [1974 domestic service amendments] as a whole," the "legislative history," and "the state of the home care industry" as it had developed over the previous decades. *Id.* at 60,482. The Department observed that home care workers employed by third parties in the industry today are "engaged in a formal, professional occupation" and that they "may well be the primary 'bread-winner[s]' for [their] famil[ies]." *Id*. The Department accordingly concluded that "employees providing home care services who are employed by third parties should have the same minimum wage and overtime protections that other domestic service and other workers enjoy." *Id*. The Department provided support for its decision to change the regulation, including data from the 15 states that already provided minimum wage and overtime protections to all or most home care workers employed by third parties, as well as comments from consumer representatives such as the AARP. *Id.* at 60,480 ("AARP noted that it 'strongly agrees' with denying the exemptions to third party agencies and asserted that 'requiring all home care and home health care agencies to pay minimum wage and overtime to their employees is a centrally important component of the [proposed regulatory changes].'").

The Department considered the economic impact of the regulatory changes on a wide array of constituencies, including consumers, workers, employers, and the public programs (such as Medicare and Medicaid) that pay for most home care services. *See id.* at 60,454. Based on that analysis, the Department rejected claims in comments from representatives of the home care industry that the amended regulations would harm consumers by denying them access to home care services or the reducing the quality of their care; the Department concluded that FLSA coverage would benefit not only the affected workers "but also consumers because supporting

and stabilizing the direct care workforce will result in better qualified employees, lower turnover, and a higher quality of care." *Id.* at 60,459-60; *see also id.* at 60,481-83.

Before the 2013 Third Party Regulation went into effect, a group of trade associations representing third party home care agencies challenged the regulation on the grounds that it was not a reasonable interpretation of the statute, and was arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"). The D.C. Circuit upheld the 2013 Third Party Regulation, concluding that it was a proper exercise of the Department's delegated authority. *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1087 (D.C. Cir. 2015), *cert. denied*, 579 U.S. 927 (2016). Specifically, the D.C. Circuit concluded that "[t]he Department has the authority to 'work out the details' of the companionship-services and live-in worker exemptions, and the treatment of third-party-employed workers is one such detail," *id.* at 1093 (quoting *Coke*, 551 U.S. at 165-68), and then held that the 2013 Third Party Regulation was an "entirely reasonable" effectuation of Congressional intent, *id.* at 1094.

## II. Factual and Procedural Background

Intra-National and Agewell are home care agencies that manage the work of "Direct Care Workers," i.e., home care employees who provide assistance to elderly people and individuals with disabilities through state Medicaid programs. Am. Compl. (Mar. 10, 2021) ¶¶ 1, 2, 26, 35, ECF 25. In 2020, while under active Department investigation for FLSA compliance, Intra-National filed this suit out of fear of a potential enforcement action. Compl. (Oct. 9, 2020), ECF 1. About a month later, Agewell—which was also under investigation by the Department—filed a nearly identical suit. *Agewell Home Helpers, Inc. v. DOL*, No. 20-1773 (W.D. Pa.), Compl. (Nov. 13, 2020), ECF 1. This Court consolidated the cases. ECF 12. After the Department moved to dismiss, ECF 17, in March 2021, Plaintiffs filed a consolidated amended complaint. ECF 25.

Their amended complaint includes two claims for relief under the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.*[5] First, the complaint seeks a declaration that the 2013 Third Party Regulation is "invalid and unenforceable" as contrary to law because it conflicts with the statute, is beyond the Department's authority, and is inconsistent with the Supreme Court's decisions in *Encino Motorcars, LLC v. Navarro* ("*Encino Motorcars I*"), 579 U.S. 211 (2016), and *Encino Motorcars, LLC v. Navarro* ("*Encino Motorcars II*"), 584 U.S. 79 (2018). ECF 25 ¶¶ 156-60. Second, the complaint seeks a declaration that the 2013 Third Party Regulation is "invalid and unenforceable" as arbitrary and capricious because the Department provided an inadequate explanation for the regulatory change when it promulgated the provision. *Id.* ¶¶ 161-67.[6]

The Department moved to dismiss the amended complaint as untimely (among other things) in April 2021, ECF 30, which this Court granted on statute of limitations grounds. ECF 71. Plaintiffs appealed. ECF 73. On September 6, 2024, the U.S. Court of Appeals for the Third Circuit reversed, citing the intervening Supreme Court decision in *Corner Post, Inc. v. Board of Governors of Federal Reserve System*, 603 U.S. 799 (2024). *See Intra-Nat'l Home Care, LLC v. U.S. Dep't of Lab.*, No. 22-2628, 2024 WL 4100245 (3d. Cir. Sep. 6, 2024), *remanded*, 2025 WL 3484650 (W.D. Pa. Dec. 4, 2025). The Third Circuit observed, "[a]s concerns a challenge to the rulemaking process, 'a claim accrues when the plaintiff has a right to assert it in court—and in the case of the APA, that is when the plaintiff is injured by final agency action.'" *See id.* at *2

[5] Plaintiffs' complaints included other claims (the third and fourth claims in the amended complaint) that Plaintiffs voluntarily dismissed by stipulation filed in May 2021. ECF 34.

[6] Meanwhile, the Department completed its investigations and formally brought enforcement actions against Agewell and Intra-National. *See Su v. Agewell Home Helpers, Inc.*, No. 2:21-cv-00108-DSC (W.D. Pa., complaint filed Jan. 26, 2021); *Su v. Intra-Nat'l Home Care LLC*, No. 2:21-cv-01391-AJS (W.D. Pa., complaint filed Oct. 15, 2021). Plaintiffs sought to consolidate this case and the enforcement action against Intra-National, ECF 59, which this Court denied, ECF 68.

(citing *Corner Post*, 603 U.S. at 804). "Looking at the attack leveled here," the Third Circuit determined, "the amended complaint was filed after the agency initiated an enforcement proceeding against the Plaintiffs—we conclude that Plaintiffs' suit was timely." *Id*. at *1. The Third Circuit remanded the case to this Court for further proceedings whether to hear the case considering the pending enforcement action. *Id*. at *3. On remand, this Court ordered and the parties submitted briefing regarding "why this Court should not exercise its discretion to dismiss the case before it, based on the core issue in the matter being 'pending in litigation elsewhere,'" Order of Court at 2, ECF 81 (citation omitted); *see also* ECF 82, 83, 86. On December 4, 2025, after considering various factors, this Court issued an order electing to exercise its jurisdiction over Plaintiffs Intra-National and Agewell (and dismissing a third plaintiff, Americare). ECF 97. This Court then set a summary judgment briefing schedule. ECF 102. Defendants now move for summary judgment.

## LEGAL STANDARD

Under the APA, an agency's decision must be upheld unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see also id.* § 706(2)(B). The agency's decision is presumed valid, and the Court asks only whether it "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). A decision may be held to be arbitrary and capricious only when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency," or the decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.*

*Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court may not "substitute its judgment for that of the agency." *Id.* Such deference is particularly warranted for an agency's technical or scientific judgments. *See Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983).

## ARGUMENT

### I. THIS COURT SHOULD GRANT SUMMARY JUDGMENT TO THE DEPARTMENT BECAUSE THE 2013 THIRD PARTY REGULATION IS PRESUMPTIVELY VALID.

As other courts presented with this question have already held, the 2013 Third Party Regulation prohibiting home care agencies from claiming the companionship services or live-in domestic service employee exemptions, 29 C.F.R. § 552.109, is based on a permissible exercise of express statutory rulemaking authority.[7] After *Loper Bright*, "[c]ourts must 'independently interpret' statutes granting authority to an agency to ensure the agency's actions are within 'the boundaries of [its] delegated authority.'" *In re Yellow Corp.*, 152 F.4th 491, 501 (3d. Cir. 2025) (quoting *Loper Bright*, 603 U.S. at 395). Although *Loper Bright* "rejected the 'fiction' that statutory ambiguity is always a grant of authority to an agency," it made clear that a "statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Id.* (quoting *Loper Bright*, 603 U.S. at 394); *see also Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587 (6th Cir. 2025) ("In doing away with deference, however, *Loper Bright* did not do away with discretion."), *denying reh'g en banc*, 2025 WL 1403756 (6th Cir. May 1, 2025). The Supreme Court explained that Congress "often" enacts such statutory authorizations, such as by "expressly delegat[ing] to an agency the authority to give meaning to a particular statutory term," "empower[ing] an agency to prescribe rules to fill up the details of a statutory scheme," or

[7] The amended complaint was filed close to five years ago, and its contents do not reflect the current state of the relevant law. Because it is the operative complaint in this case, the Department's motion for summary judgment addresses the arguments it raises in light of the Supreme Court's instructions in *Loper Bright*.

authorizing the agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Loper Bright*, 603 U.S. at 394-95 & nn.5-6 (citations omitted).

In cases where, as here, such express delegations are present, courts must (1) "independently identify and respect such delegations of authority," (2) "police the outer statutory boundaries of those delegations," and (3) "ensure that agencies exercise their discretion appropriately." *In re Yellow Corp.*, 152 F.4th at 501 (quoting *Loper Bright*, 603 U.S. at 404). Here, the Third Party Regulation is permissible. First, Congress unambiguously delegated authority to the Department to prescribe the rules and regulations regarding exemptions under the FLSA. Second, as the Supreme Court unanimously held in *Coke*, those delegations encompass rulemaking concerning whether to include workers employed by third parties within the scope of the FLSA's domestic service exemptions. And, third, the Department appropriately exercised that authority in promulgating the Third Party Regulation, explaining its departure from the previous regulation and taking into account the potential impacts of the change. Accordingly, Defendants are entitled to judgment as a matter of law.

**a. Sections 213(a)(15) and 29(b) Expressly Delegate the Department Discretion to Implement the 1974 Amendments, Including the Exemptions.**

The 1974 amendments convey clear, intelligible, and express delegations of discretionary authority to promulgate regulations implementing the domestic service exemptions. First, in the 1974 amendments to the FLSA, Congress expressly authorized the Department "to prescribe necessary rules, regulations, and orders with regard to" the 1974 amendments. Pub. L. No. 93-259, § 29(b), 88 Stat. at 76. Second, in the section of the 1974 amendments concerning the companionship services exemption, Congress instructed the Department to "define[] and delimit[]" the terms in the exemption, which include "domestic service employment" and "companionship services." 29 U.S.C. § 213(a)(15).

These two inter-related statutory delegations are exactly the sort of express language consistently recognized as conveying discretionary rulemaking authority; in *Loper Bright*, the Supreme Court specifically cited to section 213(a)(15) as an example of when "the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *See Loper Bright*, 603 U.S. at 394-95 n.5 (citing to section 213(a)(15) as an example of a statute that expressly delegates authority to an agency to give meaning to particular statutory terms). Indeed, the Supreme Court's decision in *Coke* made clear that Congress expressly delegated authority to the Department to implement the 1974 domestic service amendments through legislative rules. *Coke*, 551 U.S. at 167 (concluding that the FLSA "expressly instructs the agency to work out the details" of the 1974 amendments). In reaching that conclusion, the Supreme Court recognized that the power "to prescribe necessary rules, regulations, and orders with regard to" the 1974 amendments "provides the Department with the power to fill [statutory] gaps through rules and regulations," including the "scope and definition of statutory terms such as 'domestic service employment' and 'companionship services'" *Id.* at 165 (citing Pub. L. No. 93-259, § 29(b), 88 Stat. at 76 and 29 U.S.C. § 213(a)(15)).[8]

[8] References to *Chevron* in *Coke* do not lessen the significance of *Coke*. *See Loper Bright*, 603 U.S. at 412 ("[W]e do not call into question prior cases that relied on the *Chevron* framework . . . Mere reliance on *Chevron* cannot constitute a 'special justification' for overruling such a holding." (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014))); *see also United States v. Sacanell*, Crim. A. No. 24-389, 2025 WL 1921647, at *7 (E.D. Pa. July 10, 2025) (rejecting argument that *Loper Bright* overruled a prior precedent "simply by virtue of [the case] having applied *Chevron* deference"). Moreover, the Court's analysis in *Coke*, which does not even mention "ambiguity," did not rely on the statutory ambiguity framework rejected by *Loper Bright*. Rather, *Coke* located the source of agency authority in the two express delegations in the 1974 amendments and grounded its holding in an analysis of the scope and nature of those delegations. In essence, to reach its conclusion that the relevant statutory language confers broad, express delegations of authority, *Coke* asked and answered the questions about the scope and nature of delegated authority *Loper Bright* poses.

Several district courts have recently addressed these delegations, and all concluded that Congress unambiguously conveyed broad discretionary authority. *See Dep't of Lab. v. Americare Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 684 (S.D. Ohio 2025) ("[B]oth the 1974 Amendments and § 213(a)(15) of the FLSA unambiguously delegate authority to DOL to prescribe the rules and regulations to shape the parameters of the exemptions to the FLSA"), *appeal filed*, No. 25-3128 (6th Cir. Mar. 4, 2025); *Barnes v. Res. for Hum. Dev., Inc.*, Civ. A. No. 24-757, 2024 WL 4566113, at *2 n.2 (E.D. Pa. Oct. 24, 2024) ("[B]oth the 1974 Amendments and [§] 213(a)(15) of the FLSA unambiguously delegate authority to [the Department] to prescribe necessary rules and regulations regarding the terms 'domestic service,' 'domestic service employment,' and 'companionship services.'" (citation omitted)); *Su v. WiCare Home Care Agency, LLC*, No. 1:22-cv-00224, 2024 WL 3598826, at *15 n.12 (M.D. Pa. July 31, 2024) (in rejecting a challenge to 29 C.F.R. § 552.109, finding that "[i]n this case, the delegation of statutory authority to the Secretary of Labor is clear."), *appeal filed sub nom. Walsh v. WiCare Home Care Agency LLC*, No. 24-2565 (3d Cir. Aug. 22, 2024).[9]

Moreover, this conclusion is consistent with decisions of other courts addressing similar delegations in light of *Loper Bright*. *See, e.g.*, *In re Yellow Corp.*, 152 F.4th at 497, 501 (concluding that statutory language providing an agency authority to issue "regulations as may be necessary to carry out the purposes" of the relevant statute and "the power to set conditions on the 'allocation of plan assets'" explicitly granted the agency "the type of gap-filling authority that *Loper Bright* described" (citations omitted)); *Schaffner v. Monsanto Corp.*, 113 F.4th 364, 381 n.9 (3d Cir. 2024) (concluding that a statute authorizing an agency "to prescribe regulations

[9] To reiterate, two of these cases—*WiCare* and *Americare*—are currently pending on appeal before the Third Circuit (Case No. 24-2565) and Sixth Circuit (Case No. 25-3128), respectively.

to carry out the provisions" of the statute is precisely the type of "express" delegation that "empower[s] an agency to prescribe rules to 'fill up the details' of a statutory scheme" (quoting *Loper Bright*, 603 U.S. at 395)); *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024) (discussing *Loper Bright*'s discussion of "appropriate and necessary" language as a canonical example of when Congress has given delegations of authority that "expressly empower the agency to exercise judgment" (citation omitted)); *Mayfield v. U.S. Dep't of Lab.*, 117 F.4th 611, 617-18 (5th Cir. 2024) (referring to "define and delimit" language in another FLSA exemption, 29 U.S.C. § 213(a)(1), as an "uncontroverted, explicit delegation of authority"); *see also Loper Bright*, 603 U.S. at 395 n.6 (citing as an example of a delegation of discretionary rulemaking authority where Congress authorized an agency to regulate power plants "if the Administrator finds such regulation is appropriate and necessary").

Because the 1974 amendments contain broad delegations of discretionary rulemaking authority that apply to the exemptions at issue, this Court should uphold the Third Party Regulation if within the bounds of those delegations.

**b. The Boundaries of Congress's Grant of Authority Encompass the Department's Discretion to Implement the Domestic Service Amendments, including by Defining and Limiting the Exemptions.**

The Third Party Regulation is within the bounds of the Department's delegated authority. Given the express delegations of authority to the Department here, this Court must "ensure the agency's actions are within 'the boundaries of [its] delegated authority.'" *In re Yellow Corp.*, 152 F.4th at 501 (quoting *Loper Bright*, 603 U.S. at 395). Notably, the Supreme Court has already opined on the boundaries of the Congressional delegations to the Department in the 1974 amendments. In *Coke*, the Supreme Court recognized the discretionary nature of Congress's delegation of authority to the Department and, presaging *Loper Bright*, examined the boundaries

of those delegations. *Coke*, 551 U.S. at 165-66 ("examin[ing]" the challenger's "claim[] that the regulation falls outside the scope of Congress's delegation").

The Supreme Court explained that when the 1974 domestic service amendments were enacted, the FLSA's minimum wage and overtime requirements already applied to some, but not all, domestic service workers paid by third parties, and as a result, "whether, or how" the companionship services exemption "should apply to workers paid by third parties raises a set of complex questions." *Id.* at 167. Next, the Supreme Court considered:

> Should the FLSA cover *all* companionship workers paid by third parties? Or should the FLSA cover *some* such companionship workers, perhaps those working for some (say, large but not small) private agencies, or those hired by a son or daughter to help an aged or infirm mother living in a distant city? Should it cover *none*? How should one weigh the need for a simple, uniform application of the exemption against the fact that some (but not all) third-party employees were previously covered?

*Id.* (Court's emphases).

Having asked these questions, the Supreme Court then concluded that it is "consequently reasonable to infer (and we do infer) that Congress intended its broad grant of definitional authority to the Department to include the authority to answer these kinds of questions." *Id.* at 168; *see also id.* ("[T]he text of the FLSA does not expressly answer the third-party-employment question."). *Coke* found that Congress had instructed the Department to "work out" the definitions of "domestic service employment" and "companionship services," and concluded that "whether to include workers paid by third parties within the scope of the definitions is one of those details." *Id*. at 167. Crucially, "in finding it within the Department's 'broad grant' of authority to decide 'whether to include workers paid by third parties within the scope' of the companionship-services exemption, the Court explicitly contemplated that the full range of

potential outcomes lay within the agency's discretion." *Weil*, 799 F. 3d at 1092 (quoting *Coke*, 551 U.S. at 167-68).

Other courts that have examined similar delegation language since *Loper Bright* have deemed those express delegations to be broad grants of discretion, which, among other things, provide the agency authority to set limits on the scope of statutory terms. For example, *In re Yellow Corp.* concerned a challenge to regulations an agency had issued based on a delegation to "'impose, by regulation[,] … reasonable conditions'" regarding employer payments related to benefit plans. 152 F.4th at 505 (quoting 29 U.S.C. § 1432(m)(1)). The Third Circuit rejected the argument that the agency's regulations were beyond the scope of the delegation because they had "change[d] the [relevant] *statutory* formula," holding that Congress "left it to the [agency] to fill [a] gap and effect the statute's goals" and the agency was therefore permitted to direct how certain funds would be treated in calculating the payments at issue. *Id.* at 501-02.

In addition, the Sixth Circuit's recent decision in *Pickens*, analyzed delegation language in the FLSA minimum wage and overtime pay exemption at 29 U.S.C. § 213(a)(1) for "'any employee employed in a bona fide executive, administrative, or professional capacity' as those 'terms are defined and delimited from time to time by regulations of the Secretary.'" 133 F.4th at 579 (quoting 29 U.S.C. § 213(a)(1)). The Court found this delegated authority "gave the Secretary two powers, not one." *Id.* at 588. Elaborating, the court quoted dictionary definitions, noting that "'[d]efine' means to state precisely what something means," *id*. (citing 2 *Oxford English Dictionary* 89 (1st ed. 1933) (def. 6b); *Webster's Dictionary* 688 (2d ed. 1934) (def. 4)), and "'delimit' means something else—to fix or mark boundaries or limits," *id*. (citing 2 *Oxford English Dictionary* at 163; *Webster's Dictionary*, at 692). Based on these definitions of "define" and "delimit," the Sixth Circuit concluded that "Congress thus gave the Secretary the power not

only to say what [key terms in the exemption mean], but also to establish a workable method for applying [the] exemption in practice." *Id.*

All of this authority compels a conclusion that the boundaries of the Department's discretion, granted by both § 29(b) and 29 U.S.C. § 215(a)(13), include determining whether third party employers may claim the companionship services or live-in exemptions.

**c. The 2013 Third Party Regulation is Neither Contrary to Law Nor Arbitrary or Capricious.**

"In determining whether an agency's interpretation of its governing statute is contrary to law," the court exercises its "'independent judgment' and 'appl[ies] all relevant interpretive tools' to reach 'the best reading of the statute.'" *Env't Def. Fund v. U.S. Env't Prot. Agency*, 124 F.4th 1, 11 (D.C. Cir. 2024) (quoting *Loper Bright*, 603 U.S. at 394, 400).

Agency action that is "not contrary to law" must still "be 'reasonable and reasonably explained.'" *Id*. (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). The Supreme Court has consistently instructed that when, as here, "an agency exercises discretion granted by a statute, judicial review is typically conducted under the [APA's] deferential arbitrary-and-capricious standard. Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 179-80 (2025) (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Prometheus Radio Project*, 592 U.S. at 423); *see also In re Yellow Corp.*, 152 F.4th at 502-03. Based on such considerations, the Department is entitled to summary judgment on both of Plaintiffs' claims.

*1. The 2013 Third Party Regulation is not contrary to law.*

Plaintiffs claim that the 2013 Third Party Regulation "conflicts with the statutory text, the statutory purpose, and judicial interpretation of the FLSA and is beyond any authority granted to

the DOL, including by Congress and/or the FLSA or the APA." ECF 25 ¶ 157. On this point, Plaintiffs further contend that the challenged regulation is at odds with the "*Encino Motorcars I* and *Encino Motorcars II* decisions." *Id*. ¶ 158; *see id*. ¶¶ 16-17 (citing *Encino Motorcars I*, 579 U.S. 211 (2016) and *Encino Motorcars II*, 584 U.S. at 88). But, as discussed above, and as courts have already held, the regulation is consistent with the FLSA and is, therefore, not "contrary to law." Indeed, the 2013 Third Party Regulation expressly adopted one of the potential options identified by the Supreme Court in *Coke* a few years earlier. *Coke*, 551 U.S. at 167-68 (finding it within the Department's "broad grant" of authority to decide whether to include "some" or "all" "workers paid by third parties within the scope" of the companionship services exemption or whether to include "none"). And nothing in either of the *Encino Motorcars* decisions compels a different conclusion. *See Encino Motorcars II*, 584 U.S. at 88 (rejecting proposition "that exemptions to the FLSA should be construed narrowly. . . .[b]ecause the FLSA gives no 'textual indication' that its exemptions should be construed narrowly . . .").

*2. Nor is the Third Party Regulation arbitrary and capricious.*

Plaintiffs claim that the 2013 Third Party Regulation "was enacted arbitrarily and capriciously because it disregarded the decades of reliance upon the exemptions for the success of the Medicaid Waiver Program and the establishment of third party agency employers to facilitate these services." ECF 25 ¶ 165. But, as the Supreme Court has long instructed, agencies are free to change their minds, and there is "no basis in the Administrative Procedure Act or in our opinions for a requirement that all agency change be subjected to more searching review." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009). Rather, "the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display

awareness that it *is* changing position. An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *Id.* at 515.

Here, in 2013, "[t]he Department . . . carefully considered comments submitted regarding the proposed revisions to § 552.109(a) and (c) and . . . decided to adopt the regulation as proposed." 78 Fed. Reg. at 60,481. The Department recognized that it was "changing its position as to the proper treatment of third party employers," but explained its view at the time that the change was warranted in light of "the purpose and objectives of the [1974 domestic service amendments] as a whole," the "legislative history," and the "the state of the home care industry" as it had developed over the previous decades. *Id*. at 60,482. Specifically, as the Department chronicled in 2013, "[s]ince [it] published its regulations implementing the 1974 amendments to the FLSA, the home care industry has undergone dramatic transformation." *Id*. at 60,458. Because home care workers employed by third parties were "engaged in a formal, professional occupation"—and "may well be the primary 'bread-winner[s]' for [their] famil[ies]"—the Department believed in 2013 that those workers "should have the same minimum wage and overtime protections that other domestic service and other workers enjoy." *Id.* at 60,482. Observing that "[t]he earnings of employees in the home health aid and personal care aid categories remain among the lowest in the service industry" and that the "industry is currently marked by high turnover[,]" *id*. at 60,483, 60,458, the Department predicted that expanding FSLA protections to home care workers would benefit recipients of services "because supporting and stabilizing the direct care workforce will result in," among other things, "lower turnover." *Id.* at 60,459-60.

Moreover, the Department specifically discussed what Plaintiffs refer to as the "Medicaid Waiver Program." *See*, *e.g.*, ECF 25 ¶ 165. The Department acknowledged "concerns that

requiring the payment of minimum wage and overtime to direct care workers would increase the cost of home and community based services (HCBS) funded under Medicaid" and considered the various ways that the changes to the regulation could impact third-party employers of direct-care workers. 78 Fed. Reg. at 60,485. For example, in response to concerns regarding the Third Party Regulation's "detrimental effects on the home care industry," *id*. at 60,459, such as increased costs leading to higher rates of institutionalization or expansion of an "underground economy" between consumers and direct-care workers, *id*. at 60,481, 60,485-86, the Department noted that 15 states already provided minimum wage and overtime protections to all or most home care workers employed by third parties, and no evidence showed an increase in institutionalization or stagnant growth of the home care industry in those states. *Id*. at 60,482-83. The Department, therefore, determined that "[t]he existence of these state protections diminishes the force of objections regarding the feasibility and expense of prohibiting third parties from claiming the companionship services and live-in domestic service worker exemptions." *Id*. at 60,483. On balance, the Department believed in 2013 that FLSA coverage would benefit not only the affected workers, "but also consumers because supporting and stabilizing the direct care workforce will result in better qualified employees, lower turnover, and a higher quality of care." *Id*. at 60,459-60.

Thus, even though not all commenters agreed with its rationale, the Department provided a "reasoned explanation for its action," which considered how different groups would be impacted by the change. *Fox Television Stations*, 556 U.S. at 515; *see Food & Drug Admin. v. Wages & White Lion Invs.*, *L.L.C.*, 604 U.S. 542, 569 (2025) (agencies changing positions must "be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account" (citation omitted)). And against that substantial record from 2013,

Plaintiffs' contrary views amount to a disagreement over "'predictive judgments about the likely economic effects of a rule' that courts, including this one, are 'particularly loath to second-guess.'" *In re Yellow Corp*., 152 F.4th at 503 (quoting *Newspaper Ass'n of Am. v. Postal Regul. Comm'n*, 734 F.3d 1208, 1216 (D.C. Cir. 2013)). The Department's explanations satisfy the APA's "deferential" arbitrary-and-capricious standard. *Prometheus Radio Project*, 592 U.S. at 423.

That conclusion is bolstered by the D.C. Circuit decision upholding the regulation as not arbitrary and capricious. Writing for the court, Judge Srinivasan addressed the Department's change in regulatory approach:

> When Congress enacted the 1974 Amendments, the vast majority of the private household workers were employed directly by a member of the household. By the time the Supreme Court decided *Coke* in 2007, the vast majority of home care workers were instead employed by third-party agencies. The duties of typical home care workers also changed. In the 1970s, many individuals with significant needs received care in institutional settings rather than in their homes. Since that time, there has been an increased emphasis on the value of providing care in the home and a corresponding shift away from institutional care. As the Department recognized even by 2001, [d]ue to significant changes in the home care industry over the last 25 years, workers who today provide in-home care to individuals needing assistance with activities of daily living are performing types of duties and working in situations that were not envisioned when the companionship-services regulations were promulgated.

*Weil*, 799 F.3d at 1095 (internal citations omitted).

The D.C. Circuit further determined that, given these changes, the Department's 2013 decision to limit the companionship services and live-in exemptions to recipients of home care and their family members was reasonably consistent with the statutory purpose, as evidenced by the structure and nature of the 1974 amendments. *Id*. at 1093. Specifically, the D.C. Circuit found it was reasonable for the Department to prohibit third party employers from claiming the exemptions because the 1974 amendments were intended to broadly expand minimum wage and

overtime protections to domestic service employees and Congress did not intend to "roll back" coverage for the types of employees who would have had such protections without the 1974 amendments because they (unlike domestic workers solely employed by households) worked for employers large enough to be covered by the FLSA's enterprise provisions. *Id*. at 1094. The D.C. Circuit also found "ample support" in the administrative record for the Secretary's determination that the recipients of home care "would be benefitted, not harmed, by the new regulations." *Id*. at 1095; *see also Americare*, 762 F. Supp. 3d. at 688-90 (recognizing that the Department had considered the potential costs and benefits of the rule when it was promulgated and satisfactorily explained how its change in policy was based on the expansion of the home health industry.).

The Third Party Regulation, therefore, represents a permissible exercise of the express delegations of discretionary rulemaking authority that Congress conferred on the Department in the 1974 amendments to the FLSA and likewise should be upheld by this Court.

## II. PLAINTIFFS' REQUESTED REMEDIES ARE IMPROPER.

If the Court disagrees with the Department regarding the validity of the 2013 Third Party Regulation, any relief should be no broader than necessary to remedy the demonstrated harms to these Plaintiffs. *Gill v. Whitford*, 585 U.S. 48, 73 (2018). The specific remedies that Plaintiffs seek, however, are unauthorized by law.

First, while the APA permits courts to "set aside agency action" that is "not in accordance with law," 5 U.S.C. § 706(2)(A), Plaintiffs request this Court "to declare 29 C.F.R. § 552.109 to be invalid and unenforceable." ECF 25 ¶¶ 160, 167. Plaintiffs appear to request vacatur of the challenged regulation. To the extent Plaintiffs request such "wholesale" vacatur, such relief would be improper. For starters, the APA does not authorize vacatur. *See United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the

judgment) (explaining that to "set aside" does not mean to "vacate" but instead refers to the Court's authority to disregard, or refuse to apply, an unlawful agency pronouncement when deciding the parties' dispute, as it would if it found a statute unconstitutional). In APA challenges, as in any other case involving non-monetary relief, federal courts are authorized to award traditional party-centered remedies such as declaratory judgments and, where necessary, appropriately tailored injunctions. But the APA does not authorize courts to radically depart from those traditional remedies, let alone to do so by default through remedies such as vacatur. *See id.* at 693-703; *but cf. Corner Post*, 603 U.S. at 826-43 (Kavanaugh, J., concurring) (expressing a contrary view).[10]

Second, Plaintiffs indicate that they seek "an order enjoining the DOL from further investigative and prosecutorial action." ECF 25 ¶ 78; *see id*. ¶¶ 6, 20. But Plaintiffs' request to halt the Department's enforcement action under the FLSA is similarly a nonstarter. The APA does not confer jurisdiction to this Court over those sorts of discretionary decisions by the agency. As the Third Circuit held in *Gentile v. SEC*, such a request goes well beyond the APA's waiver of sovereign immunity. 974 F.3d 311, 318-19 (3d Cir. 2020). That is so because "an agency decision to exercise its investigative power overcomes the 'basic presumption' in favor of judicial review of agency action," *id*. at 318 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967)), because such a decision is "a matter committed to agency discretion by law." *Id.* at 319. Pertinently, the FLSA expressly provides that "[t]he Secretary [of Labor] *may* bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages." *Sec'y U.S. Dep't of Lab. v. Am.*

[10] To the extent any vacatur relief as to the 2013 Third Party Regulation is appropriate, more narrowly tailored relief might be available because of severability of its provisions. *See* 29 C.F.R. §§ 552.109(a), (b), (c).

*Future Sys., Inc.*, 873 F.3d 420, 433 n.72 (3d Cir. 2017) (quoting 29 U.S.C. § 216(c)) (emphasis added).[11] This Court, therefore, lacks jurisdiction to provide the relief that Plaintiffs seek.

**CONCLUSION**

For the reasons explained above, this Court should grant summary judgment to Defendants on all pending claims in Plaintiffs' amended complaint, and the remaining issues regarding Plaintiffs' FLSA liability should be resolved in the enforcement suits pending against them.

Dated: December 31, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ALEXANDER K. HAAS
Director, Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Assistant Branch Director, Federal Programs Branch

*/s/ James J. Wen*
JAMES J. WEN (NY Bar No. 5422126)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
(202) 616-8185
James.J.Wen@usdoj.gov

*Counsel for Defendants*

---

[11] Notably, even were this Court to award some relief to Plaintiffs with respect to the 2013 Third Party Regulation, any prohibition on the Department's basing an enforcement action on Plaintiffs' inability to claim the companionship services and/or live-in exemptions does not foreclose the possibility of FLSA enforcement for unpaid wages. FLSA exemptions are affirmative defenses to such actions that the employer must prove apply, for example, by showing that their employees reside in particular households. *See Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 872 (3d Cir. 2015) ("[T]he employer bear[s] the burden to prove 'plainly and unmistakably' that its employees are exempt." (citing *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 250 (3d Cir. 2005))).