# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INTRA-NATIONAL HOME CARE, LLC,

    *Plaintiff*,

    v.

DEPARTMENT OF LABOR, et al.,

    *Defendants*.

No. 2:20-cv-01545-WSH

**Oral Hearing Requested**

AGEWELL HOME HELPERS, INC.,

    *Plaintiff*,

    v.

DEPARTMENT OF LABOR, et al.,

    *Defendants*.

No. 2:20-cv-01773-WSH

## MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

LEGAL BACKGROUND .................................................................................................... 2

I.    The Fair Labor Standards Act ..................................................................................... 2

    A.    The 1975 Rule ......................................................................................... 3

    B.    *Long Island Care v. Coke* ..................................................................... 4

    C.    The 2013 Rule ......................................................................................... 6

    D.    The 2025 Proposed Rule ......................................................................... 8

FACTUAL AND PROCEDURAL BACKGROUND............................................................. 9

STANDING ...................................................................................................................... 10

STANDARD OF REVIEW ............................................................................................... 10

ARGUMENT .................................................................................................................... 11

I.    29 C.F.R § 552.109 Conflicts with the Best Reading of the Live-In Exemption ............... 11

    A.    The Live-In Exemption Exempts Employees of Third-Party Employers............. 11

    B.    Section 29(b) Doesn't Justify Departing from the Single Best Reading ............... 16

    C.    *Stare Decisis* Doesn't Justify Departing from the Single Best Reading ................ 22

II.   29 C.F.R § 552.109 Exceeds the Department of Labor's Delegation to Define or Delimit the Terms of the Companionship-Services Exemption ................................................... 26

III.  29 C.F.R § 552.109 Must Be Vacated in Full................................................................. 31

IV.   Excluding "Care" from "Companionship Services" Is Unlawful .................................... 31

CONCLUSION................................................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Def. Project v. FERC,*
   964 F.3d 1 (D.C. Cir. 2020) ................................................. 30

*Am. Farm Bureau Fed'n v. EPA,*
   984 F. Supp. 2d 289 (M.D. Pa. 2013) ................................... 10

*Am. Farm Bureau Fed'n v. EPA,*
   792 F.3d 281 (3d Cir. 2015) ................................................ 10

*Am. Petroleum Inst. v. EPA,*
   862 F.3d 50 (D.C. Cir. 2017) .............................................. 31

*Bartenwerfer v. Buckley,*
   598 U.S. 69 (2023) ............................................................. 12

*Biden v. Nebraska,*
   600 U.S. 477 (2023) ........................................................... 19

*Chamber of Com. of the U.S. of Am. v. DOL,*
   885 F.3d 360 (5th Cir. 2018) .............................................. 30

*Chevron USA Inc. v. NRDC,*
   467 U.S. 837 (1984) ........................................................... 25

*City of Arlington v. FCC,*
   569 U.S. 290 (2013) ...................................................... 22, 27

*Comité De Apoyo A Los Trabajadores Agrícolas v. Perez,*
   774 F.3d 173 (3d Cir. 2014) ............................................... 31

*Corley v. United States,*
   556 U.S. 303 (2009) ........................................................... 19

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
   603 U.S. 799 (2024) ........................................................... 31

*DOL v. Americare Healthcare Servs., LLC,*
   762 F. Supp. 3d 666 (S.D. Ohio 2025) ........................... 17, 20

*E.M.D. Sales, Inc. v. Carrera,*
   604 U.S. 45 (2025) ............................................................... 2

*Eaves v. County of Cape May,*
　239 F.3d 527 (3d Cir. 2001) ...................................................................................15

*Encino Motorcars, LLC v. Navarro,*
　584 U.S. 79 (2018) ........................................................................ 7, 11, 16, 27

*Entergy Corp. v. Riverkeeper, Inc.,*
　556 U.S. 208 (2009) ............................................................................... 14

*Epic Sys. Corp. v. Lewis,*
　584 U.S. 497 (2018) .............................................................................. 14

*FCC v. Consumers' Rsch.,*
　606 U.S. 656 (2025) ............................................................................. 20

*Food Mktg. Inst. v. Argus Leader Media,*
　588 U.S. 427 (2019) ........................................................................ 11, 14

*Freedom From Religion Found., Inc. v. County of Lehigh,*
　933 F.3d 275 (3d Cir. 2019) ............................................................... 26

*Gen. Elec. Co. v. Gilbert,*
　429 U.S. 125 (1976) ............................................................................. 20

*Gun Owners of Am., Inc. v. Garland,*
　19 F.4th 890 (6th Cir. 2021) ............................................................... 21

*Henson v. Santander Consumer USA Inc.,*
　582 U.S. 79 (2017) ......................................................................... 14, 16

*Herr v. U.S. Forest Serv.,*
　803 F.3d 809 (6th Cir. 2015) ............................................................... 26

*Home Care Ass'n of Am. v. Weil,*
　76 F. Supp. 3d 138 (D.D.C. 2014) .......................................... 4, 7, 8, 13, 29

*Home Care Ass'n of Am. v. Weil,*
　78 F. Supp. 3d 123 (D.D.C. 2015) ....................................................... 34

*Home Care Ass'n of Am. v. Weil,*
　799 F.3d 1084 (D.C. Cir. 2015) .................................... 4, 8, 15, 25, 32, 34

*Intra-National Home Care, LLC v. DOL,*
　No. CV 20-1545, 2025 WL 3484650 (W.D. Pa. Dec. 4, 2025) ................................. 9

*Kennedy v. Bremerton Sch. Dist.,*
　597 U.S. 507 (2022) ............................................................................. 23

iii

*Long Island Care at Home, Ltd. v. Coke,*
   551 U.S. 158 (2007) ...........................................................1, 4, 5, 6, 7, 15, 24, 25, 26, 29

*Loper Bright Enters. v. Raimondo,*
   603 U.S. 369 (2024) ...........................................1, 10, 12, 13, 16, 17, 21, 23, 24, 25, 26, 27, 29, 34

*Maryland v. Wirtz,*
   392 U.S. 183 (1968) ........................................................................................................ 2

*Mayfield v. DOL,*
   117 F.4th 611 (5th Cir. 2024) ........................................................... 27, 28, 30, 33

*In re MCP No. 185,*
   124 F.4th 993 (6th Cir. 2025) ................................................................................ 24

*In re MCP No. 185,*
   No. 24-7000, 2024 WL 3650468 (6th Cir. Aug. 1, 2024) ..................................... 22

*Me. Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.,*
   70 F.4th 582 (D.C. Cir. 2023) ................................................................................ 14

*Moctezuma-Reyes v. Garland,*
   124 F.4th 416 (6th Cir. 2024) ........................................................................... 19, 21

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
   551 U.S. 644 (2007) ................................................................................................ 18

*Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.,*
   522 U.S. 479 (1998) ................................................................................................ 12

*NVE, Inc. v. HHS,*
   436 F.3d 182 (3d Cir. 2006) ................................................................................... 10

*Oxford House, Inc. v. Township of North Bergen,*
   158 F.4th 486 (3d Cir. 2025) ................................................................................. 33

*Panama Refin. Co. v. Ryan,*
   293 U.S. 388 (1935) ................................................................................................ 20

*Penobscot Nation v. Frey,*
   3 F.4th 484 (1st Cir. 2021) ..................................................................................... 12

*Pickens v. Hamilton-Ryker IT Sols., LLC,*
   133 F.4th 575 (6th Cir. 2025) ................................................................. 16, 18, 27, 28

*Queen and Crescent Case,*
   167 U.S. 479 (1897) ................................................................................................ 19

iv

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) ................................................................. 19

*Rangel-Fuentes v. Bondi*,
    155 F.4th 1138 (10th Cir. 2025) ............................................. 21

*Rest. L. Ctr. v. DOL*,
    120 F.4th 163 (5th Cir. 2024) ............................................. 10, 18, 30

*Rowan Cos. v. United States*,
    452 U.S. 247 (1981) ................................................................. 18

*Sanofi Aventis U.S. LLC v. HHS*,
    58 F.4th 696 (3d Cir. 2023) ............................................... 13, 21

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ................................................................. 22

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................. 10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ................................................................. 10

*Tennessee v. Becerra*,
    131 F.4th 350 (6th Cir. 2025) .............................................. 25

*Thorpe v. Hous. Auth. of City of Durham*,
    393 U.S. 268 (1969) ................................................................... 9

*Tyger v. Precision Drilling Corp.*,
    78 F.4th 587 (3d Cir. 2023) ................................................... 22

*United States v. Darby*,
    312 U.S. 100 (1941) ................................................................... 2

*United States v. Eaton*,
    144 U.S. 677 (1892) ................................................................. 19

*United States v. Granderson*,
    511 U.S. 39 (1994) ................................................................... 13

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ................................................................. 21

*United States v. Sabhnani*,
    599 F.3d 215 (2d Cir. 2010) ................................................... 12

v

*United States v. Trumbull,*
    114 F.4th 1114 (9th Cir. 2024) ............................................................. 24

*United States v. Vogel Fertilizer Co.,*
    455 U.S. 16 (1982) ............................................................................... 18

*Util. Air Regul. Grp. v. EPA,*
    573 U.S. 302 (2014) ............................................................................. 13

*In re Walmart Inc. Sec. Litig.,*
    151 F.4th 103 (3d Cir. 2025) ................................................................ 33

*Welding v. Bios Corp.,*
    353 F.3d 1214 (10th Cir. 2004) ............................................................ 32

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ......................................................................... 6, 20

*Wille v. Lutnick,*
    158 F.4th 539 (4th Cir. 2025) ................................................................. 9

**Statutes**

5 U.S.C. § 551(13) ...................................................................................... 24

5 U.S.C. § 702 ............................................................................................. 24

5 U.S.C. § 703 ............................................................................................. 31

5 U.S.C. § 704 ............................................................................................. 24

5 U.S.C. § 706 ............................................................................................. 10

5 U.S.C. § 706(2) ........................................................................................ 31

29 U.S.C. § 202 (note) ................................................................................ 17

29 U.S.C. § 206(a)(1) .................................................................................... 2

29 U.S.C. § 206(f) ................................................................................. 2, 5, 29

29 U.S.C. § 207(a)(1) .................................................................................... 2

29 U.S.C. § 207(*l*) ................................................................... 2, 5, 11, 29

29 U.S.C. § 213(a)(15) ......................................... 1, 3, 26, 27, 28, 29, 31, 34

29 U.S.C. § 213(b)(3) .................................................................................. 13

vi

29 U.S.C. § 213(b)(21) ............................................................. 1, 3, 11, 15, 18, 29

29 U.S.C. § 216(a) ............................................................................................... 2

29 U.S.C. § 216(c) ............................................................................................... 2

29 U.S.C. § 216(e)(2) ........................................................................................... 2

42 U.S.C. § 7601(a)(1) ....................................................................................... 21

Pub. L. No. 75-718, 52 Stat. 1060 (1938) ............................................................ 2

Pub. L. No. 87-30, 75 Stat. 65 (1961) .................................................................. 2

Pub. L. No. 93-259, 88 Stat. 55 (1974) ................................................................ 2

## Regulations

29 C.F.R. § 552.3 ......................................................................................... 11, 28

29 C.F.R. § 552.6(b) ..................................................................................... 8, 32

29 C.F.R. § 552.109 ............................................................................................ 28

29 C.F.R. § 552.109(a) ....................................................................................... 29

29 C.F.R. § 552.109(c) ............................................................................. 11, 12, 29

42 C.F.R. § 440.180(b) ......................................................................................... 4

42 C.F.R. § 440.181(b) ......................................................................................... 4

42 C.F.R. § 440.182(c) ......................................................................................... 4

40 Fed. Reg. 7,404 (Feb. 20, 1975) ................................................................ 3, 28

78 Fed. Reg. 60,454 (Oct. 1, 2023) ..................................... 7, 8, 14, 16, 25, 32, 33

90 Fed. Reg. 28,976 (July 2, 2025) .............................................................. 8, 9, 10

## Other Authorities

Admin. Conf. of the U.S., Recommendation, *Severability in Agency
    Rulemaking* (2018), https://perma.cc/EK43-A7JV ............................................31

*The American Heritage Dictionary* (1969) ......................................................... 33

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ................................................................. 12, 13, 14, 18

Black's Law Dictionary (12th ed. 2024) ......................................... 34

Bryan Garner et al., *The Law of Judicial Precedent* (2016) ............ 23

Bryan Garner, *Modern English Usage* (4th ed. 2016) ................... 12

H.R. Rep. No. 93-913 (1974) ..................................................... 14, 15

Matt Compton, *Ensuring Fair Pay for Homecare Workers*, The White House (Dec. 15, 2011), https://perma.cc/F9F6-2P7U ................................. 6

Obama White House, *President Obama on Ensuring Fair Pay for In-Home Care Workers* (YouTube, Dec. 15, 2011), https://www.youtube.com/watch?v=96mmOuNeWj4 ............................................................ 6

Question Presented, No. 06-593, https://www.supremecourt.gov/qp/06-00593qp.pdf ........................................................................ 4, 24

*Random House Dictionary of the English Language* (2d ed. 1987) ............ 18

Richard J. Pierce, Jr., *Administrative Law Treatise* (5th ed. 2010) .............. 25

S. Rep. No. 93-300 (1973) ............................................................ 2

Thomas W. Merrill & Kathryn Tongue Watts, *Agency Rules with the Force of Law: The Original Convention*, 116 Harv. L. Rev. 467 (2002) ................. 19

Wage and Hour Advisory Mem. No. 2005-1 (Dec. 1, 2005), https://perma.cc/6CPC-GTQE ................................................ 3, 27

The White House, Press Release, *We Can't Wait* (Dec. 15, 2011), https://perma.cc/H8EM-H3QS ................................................. 6

**INTRODUCTION**

The Fair Labor Standards Act ("FLSA") generally requires paying overtime to employees in domestic service working over 40 hours a week. This appeal is about two exemptions from that requirement: the exemption for "companionship services," 29 U.S.C. § 213(a)(15), and the exemption for live-in domestic service, *id.* § 213(b)(21). When the exemptions were enacted in 1974, and for nearly forty years thereafter, the U.S. Department of Labor ("DOL") maintained that the best reading of these exemptions is that they apply to employees of so-called "third-party employers": employers who do not reside in the home of the individual receiving services. DOL's rule embodying that best reading of the exemptions was upheld as "valid and binding" in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007), a case implicating the exemption for "companionship services."

In 2013, however, DOL abruptly changed course. After failing to secure legislation revoking these exemptions for the home-care industry, the President candidly explained that "we can't wait for Congress to act." DOL then published a rule to carve out third-party employers from the exemptions, relying upon "*Chevron* deference." That was aggressive, even during the days of *Chevron*.

Those days are over. "*Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). DOL's rule must be set aside as unlawful both because it is not the best reading of the live-in exemption, and because it exceeds the boundaries of DOL's delegation to define or delimit the terms of the exemption for companionship services.

1

**LEGAL BACKGROUND**

I.     **The Fair Labor Standards Act**

The FLSA requires employers to pay their covered employees a minimum wage and "not less than one and one-half times the regular rate" for hours worked in excess of 40 hours per week, a requirement known as overtime pay. 29 U.S.C. §§ 206(a)(1), (f), 207(a)(1), (*l*). A failure to pay overtime makes an employer potentially liable for backpay, an equal amount in liquidated damages, civil penalties, criminal fines, and imprisonment. *Id.* § 216(a), (c), (e)(2).

The FLSA's coverage has significantly expanded over the years.[1]  In the 1974 amendments, Congress vastly expanded the number of employers covered by the FLSA by covering "any employee in domestic service," regardless of any connection to interstate commerce. 29 U.S.C. §§ 206(f), 207(*l*). This regulated approximately "836,000 households" as "employers." S. Rep. No. 93-300, at 115 (1973). As is typical, the 1974 amendments included a generic grant of rulemaking authority allowing DOL to "prescribe necessary rules, regulations, and orders with regard to the" 1974 amendments. Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76 (codified at 29 U.S.C. § 202 (note)).

"But" as usual under the FLSA, "Congress recognized that a minimum wage and overtime pay would be impractical or inappropriate for some" domestic service workers. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 48 (2025). First, Congress exempted "companionship services" for the elderly or infirm. The FLSA "shall not apply" to

---

[1]  *See* Pub. L. No. 75-718, §§ 3, 7, 52 Stat. 1060, 1060-61, 1063 (1938); *see United States v. Darby*, 312 U.S. 100 (1941); *Maryland v. Wirtz*, 392 U.S. 183, 186–87 (1968); Pub. L. No. 87-30, §§ 2, 7, 75 Stat. 65, 65–66, 70 (1961).

> any employee employed in domestic service employment to provide companion-
> ship services for individuals who (because of age or infirmity) are unable to care for
> themselves (as such terms are defined and delimited by regulations of the Secre-
> tary)[.]

29 U.S.C. § 213(a)(15). This is the "companionship-services exemption."

> Second, overtime "shall not apply" to

> any employee who is employed in domestic service in a household and who resides
> in such household[.]

*Id.* § 213(b)(21). This is the "live-in" exemption. Notably, unlike the companionship-services ex-

emption, the live-in exemption does not expressly delegate to DOL authority to "define[] and de-

limit[]" the "terms" of the exemption through regulations.

## A.  The 1975 Rule

In 1975, DOL promulgated a rule interpreting the 1974 exemptions. 40 Fed. Reg. 7,404

(Feb. 20, 1975). DOL considered whether the exemptions should apply to employees who "are

employed by an employer or agency other than the family or household using their services," or

so-called "third party employers." *Id.* at 7,405. After "consideration," DOL "concluded that

these exemptions can be available to such third party employers since they apply to 'any employee'

engaged 'in' the enumerated services. This interpretation is more consistent with the statutory

language and prior practices concerning other similarly worded exemptions." *Id.* DOL's final rule

therefore provided that employees "who are employed by an employer or agency other than the

family or household using the services" could be subject to the exemption. *Id.* at 7,407.

For nearly four decades, DOL adhered to this reading. *See* Wage and Hour Advisory Mem.

No. 2005-1 (Dec. 1, 2005), https://perma.cc/6CPC-GTQE ("The text of the FLSA makes the

applicability of the companionship exemption dependent upon the nature of an employee's activities and the place of their performance, without regard to the identity of the employer."). Congress amended section 213 several times, but never disturbed DOL's 1975 reading of the exemptions. *See Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138, 147 (D.D.C. 2014) ("*Home Care I*"), *rev'd*, 799 F.3d 1084 (D.C. Cir. 2015) ("*Home Care III*").

Employers and families relied upon this reading to provide affordable, continuous care to the elderly and infirm in their homes. Much of this care is paid for through state Medicaid waiver programs. 42 C.F.R. §§ 440.180(b), 440.181(b), 440.182(c) (listing included services). These programs rely upon third-party intermediaries such as Plaintiffs to deliver the services. By 2011, "approximately 90% of home health aides and personal care aides, which include those providing companionship services," provided services through third parties. *Home Care I*, 76 F. Supp. 3d at 147.

**B.  *Long Island Care v. Coke***

In *Long Island Care at Home, Ltd. v. Coke*, the Supreme Court addressed a challenge to the 1975 regulation in a private dispute about the exemption for companionship services. 551 U.S. 158. The question presented in *Coke* was "[w]hether the Second Circuit erred in refusing to give deference under *Chevron*" to the 1975 rule. Question Presented, No. 06-593, https://www.supremecourt.gov/qp/06-00593qp.pdf. The United States, participating as an *amicus*, defended DOL's 1975 reading of the exemption as the "most consistent with the statutory text," and argued that "there is no legal or policy justification for treating employees providing companionship services differently under the FLSA based on the identity of the employer." U.S. *Amicus* Br. at 18, 23, No. 06-593, https://perma.cc/5MTQ-P355.

4

On the other side, Ms. Coke, a home-care aide seeking backpay, argued that the 1975 rule was contrary to law. *Coke*, 551 U.S. at 166. Ms. Coke argued "that the words 'domestic service employment' limit the provision's scope to those workers employed by persons who themselves receive the services (or are part of that person's household) and exclude those who are employed by 'third parties.'" *Id.* The phrase "domestic service employment," Ms. Coke insisted, was borrowed from the Social Security Act, which covers workers working in "a private home *of the employer.*" *Id.* at 167 (quoting 26 U.S.C. § 3510(c)(1)). But as the Supreme Court noted, applying Ms. Coke's reading of "domestic service" consistently "across the FLSA" would have absurd results. *Id.* at 169. For example, applying Ms. Coke's reading of "domestic service" to the coverage provisions, 29 U.S.C. §§ 206(f), 207(*l*), "would place outside the scope of FLSA's wage and hour rules any butlers, chauffeurs, and so forth who are employed by *any* third party" not covered before 1974, which "seems clearly contrary to Congress' intent in enacting the 1974 Amendment." *Coke*, 551 U.S. at 169.

Regrettably, the Supreme Court never settled the best reading of the companionship-services exemption. Instead, the Court applied *Chevron* deference and deferred to the 1975 rule. The Supreme Court's holding was narrow: "The question before us is whether, in light of the statute's text and history … the Department's regulation is valid and binding. We conclude that it is." *Id.* at 162 (citing *Chevron USA Inc. v. NRDC*, 467 U.S. 837 (1984)). Applying the deference framework of *Chevron* at the outset, *id.* at 165, 172–74, the Court "d[id] not find [Ms. Coke's] arguments convincing," *id.* at 167. The Court rejected Ms. Coke's reading of "domestic service employment" as a term of art. The Court explained that unlike in the Social Security Act, the term "domestic service employment" in "the text of the FLSA does not expressly answer the third-party-

employment question." *Id.* at 168. The Court then asserted without much analysis that the FLSA "explicitly leaves gaps, for example, as to the scope and definition of statutory terms such as 'domestic service employment,'" and noted that the companionship-services exemption "expressly instructs the agency to work out the details." *Id.* at 165, 167. From this, the Court inferred "that Congress intended its broad grant of definitional authority to the Department to include the authority to answer" questions about third-party employers under the exemption. *Id.* at 168.

### C.  The 2013 Rule

After campaigning on the issue but failing to obtain legislation extending overtime to home-care aides in Congress, President Obama concluded that "we can't wait for Congress to act." The White House, Press Release, *We Can't Wait* (Dec. 15, 2011), https://perma.cc/H8EM-H3QS. During a "We Can't Wait" event, President Obama lamented the Supreme Court's decision in *Coke* and noted: "I'm sure many of you won't be surprised to know that Congress hasn't acted on this issue so far. Today, I will."[2]  The President then endorsed DOL's new "law." Matt Compton, *Ensuring Fair Pay for Homecare Workers*, The White House (Dec. 15, 2011), https://perma.cc/F9F6-2P7U.

Except the new "law" was, of course, no law at all. It was a "pen-and-phone" rule used as a "substitute[] for laws passed by the people's representatives." *West Virginia v. EPA*, 597 U.S. 697, 753 (2022) (Gorsuch, J., concurring). DOL's rule, among other things, repealed the 1975 rule and replaced it with the opposite rule: DOL now asserted that third parties "may not avail themselves" of the companionship-services or live-in exemptions, unless they are members of the same

---

[2]  The Obama White House, *President Obama on Ensuring Fair Pay for In-Home Care Workers*, at 4:40, 6:08 (YouTube, Dec. 15, 2011), https://www.youtube.com/watch?v=96mmOuNeWj4.

"family" as the recipient. 78 Fed. Reg. 60,454, 60,557 (Oct. 1, 2023) (codified at 29 C.F.R. § 552.109). This subjected 90% of home health and personal care aides—about two million workers, and more than 10,000 businesses, agencies, states, and countless individuals—to the FLSA. *See* 78 Fed. Reg. at 60,519–20; *Home Care I*, 76 F. Supp. 3d at 147.

To justify this abrupt change, DOL resorted to *Chevron* deference. 78 Fed. Reg. at 60,481. DOL also recycled the same arguments about statutory purpose and legislative history that the Court rejected in *Coke*. Compare *Coke*, 551 U.S. at 166–67, *with* 78 Fed. Reg. at 60,481–82. "In the past," DOL explained, it had "erroneously focused on the [statutory] phrase 'any employee,' instead of focusing on the purpose and objective behind the 1974 amendments, which was to expand minimum wage and overtime protections to workers employed in private households that did not otherwise meet the FLSA coverage requirements." 78 Fed. Reg. at 60,482. Based upon a snippet of legislative history in a committee report, DOL now claimed that "[t]he legislative history" showed that Congress wanted to expand the FLSA's coverage to all employees "whose 'vocation' was domestic service." *Id.* at 60,481. DOL also relied upon the anti-employer "principle that coverage under the FLSA is broadly construed so as to give effect to its remedial purposes, and exemptions are narrowly interpreted and limited in application to those who clearly are within the terms and spirit of the exemption." *Id.* at 60,482; *but see Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88–89 (2018) (emphatically rejecting this supposed principle). The legislative history and the anti-employer canon, DOL argued, meant that "the exemptions excluding employees from coverage must … be defined narrowly in the regulations to achieve the law's purpose of extending coverage broadly." 78 Fed. Reg. at 60,482.

7

For good measure, DOL also gutted the exemption for companionship services by excluding all "care" except only incidental care—at most one-fifth of the hours worked—henceforth, the meaning of companionship services would be limited to "fellowship" or "protection." *Id.* at 60,557 (codified at 29 C.F.R. § 552.6). That includes things such as "watching television together" or "engaging in hobbies." *Id.* at 60,464. It does not include *caring* for the elderly or infirm by bathing them, dressing them, toileting them, or anything else these individuals desperately need, except incidental care if employees offset each hour of care with, say, four hours of television—and keep meticulous records. 29 C.F.R. § 552.6(b). As DOL admitted, most companions routinely help with tasks of daily living, and not just incidentally. 78 Fed. Reg. at 60,521. As a practical matter, DOL was therefore nullifying the exemption.

An association of home-care agencies challenged the 2013 rule in the D.C. Circuit. The district court held the rule was unlawful, observing that DOL's "conduct bespeaks an arrogance to not only disregard Congress's intent, but seize unprecedented authority to impose overtime and minimum wage obligations in defiance of the plain language of Section 213." *Home Care I*, 76 F. Supp. 3d at 147–48. But the court of appeals reversed, reviewing the rule "pursuant to the two-step *Chevron* framework." *Home Care III*, 799 F.3d at 1090. The Court rejected the "challenge to the regulations at *Chevron* step one" by relying upon *Coke*, and held that the regulation "passes muster at *Chevron* step two." *Id.* at 1090–94.

### D.  The 2025 Proposed Rule

DOL has recently proposed to repeal the 2013 rule and restore the 1975 rule. 90 Fed. Reg. 28,976 (July 2, 2025). DOL now proposes to conclude that "the 1975 regulations better comport with the statute and Congress's intent to exempt home care employees from FLSA coverage," and

DOL is taking a "fresh look" at arguments that the 2013 rule is invalid following *Loper Bright*. *Id.* at 28,978.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Intra-National Home Care and Agewell Home Helpers are third-party agencies contracting with home-care aides to deliver fellowship, protection, and care to elderly and disabled customers under federal and state programs meant to encourage home care. SOF ¶¶ 2–7. Plaintiffs are responsible for paying home-care aides, but are reimbursed on a flat basis not adjusted for over-time. SOF ¶ 8. Home-care aides, however, often work in excess of forty hours per week. SOF ¶ 9. Plaintiffs' home-care aides are also family members of Plaintiffs' elderly or disabled customers, and some of Plaintiffs' home-care aides reside in the same household as the customers. SOF ¶ 10.

This Court is already familiar with the procedural background. *Intra-National Home Care, LLC v. DOL*, No. CV 20-1545, 2025 WL 3484650, at *1–3 (W.D. Pa. Dec. 4, 2025). In its recent order, this Court exercised jurisdiction over Plaintiffs' complaint but dismissed one plaintiff (Americare) which is subject to enforcement action in the Sixth Circuit. *Id.* at *6. The remaining plaintiffs now move for summary judgment.

---

[3] Plaintiffs believe the new rule will apply to pending cases. *See Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 281–82 (1969). In litigation, however, DOL has taken the position that applying a new rule to pending cases would be "retroactive," so that the 2013 rule must continue govern. *See, e.g.*, DOL Reply Br. at 5–6, *DOL v. Americare Healthcare Servs., LLC*, No. 25-3128 (6th Cir. Oct. 10, 2025), Dkt. 32, at 6; *but see Wille v. Lutnick*, 158 F.4th 539, 553 (4th Cir. 2025) ("Disfavored retroactivity turns conduct that was considered lawful at the time into unlawful conduct; for example, it reaches back in time to regulate conduct that was not formerly regulated. Not so here."). Given DOL's position, this case should move forward.

## STANDING

Article III limits standing to plaintiffs who have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). To establish injury in a pre-enforcement case, a plaintiff must show a credible threat of enforcement. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162–63 (2014). Here, DOL has *already* sued Plaintiffs under the FLSA, so the threat is credible and ongoing. A declaratory judgment or vacatur of the challenged regulations would ameliorate the threatened harm by allowing home-care agencies such as Plaintiffs to raise affirmative defenses against DOL's pending enforcement actions. *Cf.* 90 Fed. Reg. at 28,981 ("Under this proposal, some or all of the 3.7 million home care workers employed by third-party agencies could become newly exempt under the FLSA."). Plaintiffs therefore have standing.

## STANDARD OF REVIEW

Under the Administrative Procedure Act ("APA"), courts "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright*, 603 U.S. at 412; *see also Rest. L. Ctr. v. DOL*, 120 F.4th 163, 171 (5th Cir. 2024) (applying *Loper Bright* to FLSA). APA cases are decided on an administrative record. *NVE, Inc. v. HHS*, 436 F.3d 182, 189 (3d Cir. 2006). Because the district court sits as an appellate court, there are no triable issues of fact, and summary judgment is proper. *Am. Farm Bureau Fed'n v. EPA*, 984 F. Supp. 2d 289, 308 (M.D. Pa. 2013), *aff'd*, 792 F.3d 281 (3d Cir. 2015).

## ARGUMENT

### I.    29 C.F.R § 552.109 Conflicts with the Best Reading of the Live-In Exemption

DOL's rule prevents third-party employers from availing themselves of the live-in exemption. 29 C.F.R. § 552.109(c). That rule contradicts the best reading, and no binding precedent supports it, so section 552.109 must be set aside.

#### A.  The Live-In Exemption Exempts Employees of Third-Party Employers

"In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). Under the FLSA, overtime requirements "shall not apply" to "any employee who is employed in domestic service in a household and who resides in such household." 29 U.S.C. § 213(b)(21). The word "any" has an expansive meaning, so "the entire exemption bespeaks breadth." *Encino Motorcars*, 584 U.S. at 88. The live-in exemption thus covers *every* employee who is (1) "employed in domestic service," (2) "in a household," and (3) "resides in such household." Home-care aides satisfy these terms so long as they dwell with the customer, as many of Plaintiffs' aides do. *See* SOF ¶ 10.

First, home-care aides are employed in "domestic service." DOL defines "domestic service employment" to mean "services of a household nature performed by an employee in or about a private home," including "personal care aides." 29 C.F.R. § 552.3. Indeed, DOL's complaint in the enforcement action alleges that the home-care aides at issue here are employed "in domestic service." *See, e.g.*, App'x 9a, 19a ("Defendants employ persons in Pennsylvania in domestic service for profit[.]"). DOL thus agrees that at least for purposes of the coverage provision, 29 U.S.C. § 207(*l*), "domestic service" includes home-care aides employed by third-party agencies, and

identical terms are usually "accorded a consistent meaning," *Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 501 (1998); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout [the] text.").

 Second, home-care aides work "*in* a household"—that is, they work in or about a private home. *Penobscot Nation v. Frey*, 3 F.4th 484, 492 (1st Cir. 2021) ("in" supplies a location).

Last, home-care aides employed by third parties may "reside" in the household where they work, meaning they "dwell permanently or for a considerable time" there. *United States v. Sabhnani*, 599 F.3d 215, 256 (2d Cir. 2010) (quoting *Oxford English Dictionary* (2d ed. 1989)) (construing exemption). The live-in exemption therefore does not depend upon the type of employer, but upon the activities and residence of the employee.

Underscoring this reading, the live-in exemption is written in the passive voice—"employed in"—which "pulls the [employer] off the stage," emphasizing the irrelevance of the employer and the exemption's "natural breadth." *Bartenwerfer v. Buckley*, 598 U.S. 69, 75–77 (2023); *see also* Bryan Garner, *Modern English Usage* 676 (4th ed. 2016) (passive voice shows that "the actor is unimportant").

Limiting the exemption to employers who live in the household or are family is not "the best reading," since the exemption is focused on the activities and residence of the employee, not the type of employer. *Loper Bright*, 603 U.S. at 400. DOL's rule re-writes the exemption to say, in effect: "any employee who is employed in domestic service ~~in~~ **by** a household **or family member** and who resides in such household." *See* 29 C.F.R. § 552.109(c). This re-write is impermissible under any standard. It is a "core administrative-law principle that an agency may not rewrite clear

statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014). Nor may judges or agencies add "to what the text states or reasonably implies." Scalia & Garner, *supra*, at 93.

Statutory context further undermines DOL's re-write. When Congress wanted an FLSA exemption to turn on the type of employer, it said so, using the prepositions "by" or "of" to refer to an agent, instead of "in," to refer to a service or a location, such as a household.[4] This "confirm[s]" ordinary meaning. *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 704 (3d Cir. 2023). "What is more," this structural clue is strong, because neighboring exemptions "include[] language along the lines of what the government [seeks] to insert into" the live-in exemption. *Id.* Courts should presume that the mention of employers in one place and their omission in another is intentional, and this presumption is stronger when, as here, the differences appear in "the same section." *United States v. Granderson*, 511 U.S. 39, 63 (1994) (Kennedy, J., concurring in the judgment).

History supports this reading. Soon after the 1974 amendments, DOL followed "the natural reading of the statute." *Home Care I*, 76 F. Supp. 3d at 145 & n.10. DOL's longstanding and consistent reading of the statute is entitled to "respect," and may "inform" this Court's judgment. *Loper Bright*, 603 U.S. at 386. That DOL took the opposite view "for over 30 years" there-

---

[4] *See, e.g.*, 29 U.S.C. § 213(b)(3) ("employee of a carrier by air"), (b)(9) ("employee employed … by a radio or television"), (10)(A)–(B) (employee "employed by a nonmanufacturing establishment"), (13) (employee employed "by a farmer"), (17) ("any driver employed by an employer engaged in the business of operating taxicabs"), (20) ("any employee of a public agency"), (24) (employee employed "by a nonprofit educational institution"); (27) ("any employee employed by an establishment which is a motion picture theater").

fore cuts against DOL's reversal. *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 224 (2009). Ordinary meaning, context, and history therefore resolve any doubt about the meaning of the live-in exemption against DOL.

DOL doesn't even argue that its new rule is the best reading of the *text*. Instead, DOL invokes an atextual "purpose" derived from legislative history. "In the past," the agency claims, it "erroneously focused" on statutory text "instead of focusing on the purpose and objective behind the 1974 amendments." 78 Fed. Reg. at 60,482. In particular, DOL relies upon a fleeting sentence from committee reports noting that the "committee[s]" wanted to "include within the coverage of the Act all employees whose vocation is domestic service." *Id.* at 60,457 (quoting S. Rep. No. 93-690, at 20 (1974); H.R. Rep. No. 93-913, at 36 (1974)); *see, e.g.*, H.R. Rep. No. 93-913, at 36 ("It is the intent of *the committee* to include within the coverage of the Act all employees whose vocation is domestic service." (emphasis added)).

DOL's elevation of purpose derived from legislative history over statutory text "is a relic from a bygone era of statutory construction." *Food Mktg. Inst.*, 588 U.S. at 437 (quotation marks omitted). "Indeed, it is quite mistaken to assume … that whatever might appear to further the statute's primary objective must be the law." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (cleaned up). And "legislative history "is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018); *see also* Scalia & Garner, *supra*, at 369–90 (rejecting "[t]he false notion that committee reports and floor speeches are worthwhile aids in statutory construction"). "The reason is obvious; as any high school Civics student should know, legislators vote on and the president signs bills, not their legislative history." *Me. Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 598 (D.C. Cir. 2023). DOL's contention that it may "ignore a textual analysis … and,

instead, base their result on policies they find to underlie" the statute is therefore not "persuasive." *Eaves v. County of Cape May*, 239 F.3d 527, 532 (3d Cir. 2001).

DOL's arguments about legislative history are also unpersuasive on their own terms. DOL "points to no legislative materials concerning the live-in exemption in particular." *Home Care III*, 799 F.3d at 1094. And DOL's quoted snippet of legislative history is about the "coverage" provisions, sections 206(f) and 207(*l*), not the exemptions. H.R. Rep. No. 93-913, at 36 ("It is the intent of the committee to include *within the coverage* of the Act all employees whose vocation is domestic service" (emphasis added)). Indeed, live-in employees would be covered by the FLSA regardless of how the live-in exemption is read: the live-in exemption is limited to overtime—"section 207" of the FLSA, and doesn't exempt workers from section 206, the minimum wage. 29 U.S.C. § 213(b)(21). So exempt employees are still generally covered by the FLSA and must be paid at or above the minimum wage.

DOL is also simply wrong to claim that the live-in exemption doesn't apply to employees whose vocation is domestic service. The live-in exemption covers "any employee who is employed in domestic service"—from maids, to butlers, and yes, home-care aides—even if their job is a full-time gig. *Id.* Carol Brady, for example, wouldn't go to jail if she failed to pay her live-in maid, Alice, overtime—even though being a maid was Alice's "vocation." *See The Brady Bunch* (ABC television broadcast, aired 1969–1974). Nor would Bruce Wayne be liable if Alfred, his live-in butler, wasn't paid overtime for night shifts. *See Batman* (ABC television broadcast, aired 1966–68). It is little wonder that the Supreme Court did not "find these arguments convincing" in *Coke*. 551 U.S. at 167. They are less convincing as to the live-in exemption, which manifestly exempts employees whose vocation is domestic service. Congress, as the Supreme Court has repeatedly emphasized,

does not pursue a purpose at all costs. Lawmaking is an exercise in *balancing* costs and benefits. *Henson*, 582 U.S. at 89.[5]

Last, DOL relied upon the anti-employer notion that FLSA exemptions must be narrowly construed. 78 Fed. Reg. at 60,482. The Supreme Court has "reject[ed] this principle as a useful guidepost for interpreting the FLSA." *Encino Motorcars*, 584 U.S. at 88. DOL has "no license to give the exemption anything but a fair reading." *Id.* at 89. This Court must follow the single best reading and set aside 29 C.F.R. § 552.109.

### B.  Section 29(b) Doesn't Justify Departing from the Single Best Reading

DOL cannot win on the best reading of the live-in exemption. So DOL may ask this Court to depart from the APA's rule incorporating the "traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright*, 603 U.S. at 394. As *Loper Bright* makes clear, exceptions to the APA's rule should be rarely countenanced and explicit. *Id.* at 394–95. To depart from the APA's default rule of *de novo* review on questions of legal interpretation, Congress must "unambiguously convey discretion" to resolve those questions. *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587 (6th Cir. 2025).

The live-in exemption doesn't include any grant of discretion over questions of legal interpretation. So, for the live-in exemption, DOL has previously pointed to section 29(b) of the 1974

---

[5] If DOL wanted to cover "vocations," the rule is in any event vastly overinclusive. Many home-care aides, including the aides here, are family members who quit their actual vocations to help take care of an elderly or disabled relative.

FLSA Amendments, which allows the Secretary of Labor to "prescribe necessary rules, regulations, and orders with regard to the" 1974 FLSA amendments. 29 U.S.C. § 202 (note). DOL argues that this general rulemaking authority unambiguously conveys to discretion to "shape the parameters" of the live-in exemption to exclude third-party employers. *See, e.g.*, *DOL v. Americare Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 685–86 (S.D. Ohio 2025), *appeal pending*, No. 25-3128 (6th Cir.).

This argument defies *Loper Bright*. *Loper Bright* itself explains when a delegation conveys discretion. In *Loper Bright*, the Supreme Court recognized that the "best reading" may sometimes be "that the agency is authorized to exercise a degree of discretion." 603 U.S. at 394–95. But the specific examples the Court gives are nothing like section 29(b). "For example, some statutes 'expressly delegate[]' to an agency the authority to give meaning *to a particular statutory term*." *Id.* at 394 (emphasis added). An example is the delegation authorizing the Secretary of Labor to define and delimit terms in the companionship-services exemption, which the live-in exemption lacks. *Id.* at 395 n.5. "Others empower an agency to prescribe rules to fill up the details of a statutory scheme, or to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id.* at 395 (citations and quotations marks omitted). An example given by the Court is a non-self-executing delegation from Congress allowing EPA to regulate air pollutants from coal plants if the agency finds it "appropriate" to do so. *Id.* at 395 & n.6 (citing 42 U.S.C. § 7412(n)(1)(A)). Section 29(b), by contrast, doesn't unambiguously delegate power to regulate third-party employers if "appropriate," and the live-in exemption is straightforward and self-executing, meaning no agency rule is necessary to "fill up the details." Thus, as the Fifth Circuit has held, after *Loper Bright*, even though "[DOL] is authorized to promulgate rules interpreting and clarifying the FLSA," courts

must still follow the single best reading of the law, as the APA requires. *Rest. L. Ctr.*, 120 F.4th at 166, 170–71.

Under *Loper Bright*, DOL must show that section 29(b) unambiguously gives DOL's interpretations the force of law in independent courts, *Pickens*, 133 F.4th at 587, but DOL comes nowhere close to satisfying that standard. Text, structure, context, and precedent all cut against DOL's reading of section 29(b). First, section 29(b) does not expressly authorize carveouts of any kind. The word "necessary" authorizes only rules that are "essential, indispensable, or requisite." *The Random House Dictionary of the English Language* 1283–84 (2d ed. 1987). The live-in exemption, however, is self-executing, so no rule is necessary: courts may interpret and apply the exemption without a rule, so a rule is not "essential, indispensable, or requisite" to carry out the exemption. As the Supreme Court has twice held, when, as here, a court may measure the agency's "interpretation against a specific provision," general rulemaking grants do not provide discretion to depart from the single best reading. *Rowan Cos. v. United States*, 452 U.S. 247, 253 (1981); *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24 (1982). *Rowan* and *Vogel Fertilizer* are controlling here.

The live-in exemption is also mandatory, not discretionary: Overtime pay "shall not apply" to certain employees, full stop. 29 U.S.C. § 213(b)(21); *see* Scalia & Garner, *supra*, at 112 ("The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive."). This mandatory text "indicates a command that admits of no discretion on the part of the person instructed to carry out the directive." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 661 (2007). That command takes precedence over the more general grant of rulemaking authority. Indeed, "[t]he general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate

18

the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Nothing in the FLSA, therefore, gives DOL discretion to carve out disfavored employers from the live-in exemption. Quite the opposite: Congress was clear that the exemption is mandatory, not discretionary.

Canons of construction further undercut DOL's misreading. The definitional and delimiting delegation in the exemption for companionship services (as well as in other FLSA exemptions) shows that Congress knew how to delegate discretion over questions of law and did not do so for the live-in exemption. *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 421 (6th Cir. 2024). Further, DOL's reading of section 29(b) would make the delegation to "define[] and delimit[]" terms in the exemption for companionship services insignificant, "at odds with one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up).

"Background legal conventions … are part of the statute's context," and those conventions also cut against DOL. *Biden v. Nebraska*, 600 U.S. 477, 511–12 (2023) (Barrett, J., concurring). The governing background legal convention before *Chevron*, when section 29(b) was enacted, was that Congress must delegate binding *legislative* rulemaking authority "distinctly." *See United States v. Eaton*, 144 U.S. 677, 688 (1892); *Queen and Crescent Case*, 167 U.S. 479, 505–06 (1897). In keeping with that convention, general grants of rulemaking authority were generally understood to authorize housekeeping rules of internal executive branch administration, such as directives to executive employees, not "substantive" rules with controlling weight in independent courts. *See* Thomas W. Merrill & Kathryn Tongue Watts, *Agency Rules with the Force of Law: The Original*

19

*Convention*, 116 Harv. L. Rev. 467, 549–70 (2002). As the Supreme Court explained in *General Electric Co. v. Gilbert* in 1976—just two years after the 1974 FLSA amendments—courts assume that Congress only confers legislative delegations binding on the courts in the clearest terms, for example, by expressly stating that the agency's rules "shall have the force of law" or by providing "under the enabling statute" that violating the rules of the agency alone will "supply the basis for imposition of liability." 429 U.S. 125, 141 (1976). Otherwise, at most, only *Skidmore* respect applies. *Id.* Section 29(b), however, contains no clear delegation of legislative power to bind the public.

DOL's expansive reading of section 29(b) also defies common-sense and constitutional principles. Courts should not lightly infer that Congress, in an "ancillary provision of the Act," without substantive content, gave DOL discretion to reshape a statute affecting significant slices of the U.S. economy. *West Virginia*, 597 U.S. at 724 (cleaned up). Section 29(b) applies to the entire 1974 Amendments, so DOL's expansive reading would give DOL discretion not just to rewrite or "shape the parameters" of the 1974 exemptions, *see Americare*, 762 F. Supp. 3d at 684–85, but to reshape the coverage provisions of the 1974 Amendments. Given the lack of any intelligible principle in DOL's reading of section 29(b), interpreting the provision to authorize DOL to narrow or expand the FLSA's coverage whenever the agency deems an update "necessary" because it just "can't wait for Congress" would violate the non-delegation doctrine, triggering the canon of constitutional avoidance. *See FCC v. Consumers' Rsch.*, 606 U.S. 656, 691 (2025); *Panama Refin. Co. v. Ryan*, 293 U.S. 388, 430 (1935). Further, if section 29(b) truly compels judges to follow a worse reading of the law that reshapes the scope of the law, that unconstitutionally "compels judges to abdicate their Article III" duties to the executive, in violation of the separation of powers.

*Loper Bright*, 603 U.S. at 414 (Thomas, J., concurring). The Court should avoid raising such questions here, by reading section 29(b) narrowly, not expansively.

Last, but not least, DOL's argument "would render *Loper Bright* essentially toothless," *Rangel-Fuentes v. Bondi*, 155 F.4th 1138, 1143 (10th Cir. 2025), swallow all of the specific examples carefully mentioned in *Loper Bright*, and "quietly reinstitute" *Chevron*, *Moctezuma-Reyes*, 124 F.4th at 420. General grants of rulemaking authority are common to "most statutes." *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 918–19 (6th Cir. 2021) (en banc) (equally divided court) (Murphy, J., dissenting). An equally general provision was at issue in *Chevron*, decided under the Clean Air Act. *See* 42 U.S.C. § 7601(a)(1) ("The Administrator is authorized to prescribe such regulations as are necessary to carry out his functions under this chapter."). The same is true of the law in *Loper Bright*.[6]  And a general grant of rulemaking authority was a prerequisite for *Chevron* even to apply to a rule interpreting a statute. "*Chevron* applie[d] only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law.'" *Loper Bright*, 603 U.S. at 404; *see also United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001); *Sanofi Aventis*, 58 F.4th at 703 ("As the parties agree, HHS lacks rulemaking authority here, so its reading does not merit *Chevron* deference."). It was the "grant of general rulemaking authority" to an agency that courts relied upon to establish *Chevron*'s fiction of "Congress's implied delegation to an agency to resolve ambiguities." *Gun Owners*, 19 F.4th at 918–19 (Murphy, J., dissenting). Once

---

[6]  Br. for Resp'ts. at 2–3, *Loper Bright*, 603 U.S. 369 (Sept. 15, 2023) (No. 22-451) (citing 16 U.S.C. §§ 1854(a)(3), (b)(3); 1855(d) (authorizing "such regulations … as may be necessary" to carry out a plan or "any other provision" of the Act)), https://perma.cc/9PM5-U4PU.

an agency "locate[d] … a grant of general rulemaking authority over a statute," judges had to subordinate their independent legal judgment to an agency's views about gaps in the statutory text. *City of Arlington v. FCC*, 569 U.S. 290, 322 (2013) (Roberts, C.J., dissenting). *Loper Bright* ended precisely that regime of implied delegations from general rulemaking grants, so this Court may not resurrect it.

DOL's reading of the live-in exemption at most could get *Skidmore* "deference." "[U]nder [the FLSA]," *Skidmore* held, courts give "weight" to DOL's reading when the agency's interpretive "judgment" is consistent, well-reasoned, and thorough, and thus is persuasive. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944). *Skidmore* is a truism, a form of "respect" for a coordinate branch, not deference. *See Tyger v. Precision Drilling Corp.*, 78 F.4th 587, 593 (3d Cir. 2023). But DOL's view is not persuasive. In its 2013 reversal, DOL offered no interpretive judgment, let alone a well-reasoned one, and reversed a longstanding and contemporaneous interpretation DOL followed consistently for nearly forty years. Thus "the *Skidmore* factors … all favor the [DOL's] first interpretation, not its recent one." *In re MCP No. 185*, No. 24-7000, 2024 WL 3650468, at *6 (6th Cir. Aug. 1, 2024) (Sutton, C.J., concurring).

After *Loper Bright*, the live-in exemption has a single best reading. It's this Court's duty to follow that reading.

### C. *Stare Decisis* Doesn't Justify Departing from the Single Best Reading

DOL may also try to argue, as it has in the past, that *stare decisis* requires following some of the reasoning in *Coke* and even extending that reasoning to the live-in exemption. That is wrong on both counts. First, *Coke*'s reasoning is not binding after *Loper Bright*. Only *Coke*'s holding about the validity of the 1975 rule remains, and that holding doesn't help DOL. Second, at least, *Coke*

should not be extended to the live-in exemption, as *Coke* relied upon the flawed *Chevron* framework and the live-in exemption in any event lacks the definitional and delimiting authority the Supreme Court relied upon in *Coke* to infer a delegation.

### 1. *Coke* is no longer binding

The *Chevron* framework "undermined the very 'rule of law' values that *stare decisis* exists to secure." *Loper Bright*, 603 U.S. at 411. "By its sheer breadth, *Chevron* foster[ed] unwarranted instability in the law, leaving those attempting to plan around agency action in an eternal fog of uncertainty." *Id.* "Far from engendering reliance interests, the whole point of *Chevron* deference [was] to upset them." *Id.* at 438 (Gorsuch, J., concurring). DOL's reliance on *Chevron* to promulgate the pen-and-phone 2013 rule is a case in point, as it upset a longstanding reading DOL followed for nearly four decades.

*Chevron* is overruled, so after *Loper Bright*, reasoning based on *Chevron* is not controlling, and the Court must lift the fog. Once the Supreme Court "abandon[s]" a "test," lower courts "err[]" by following prior cases applying that test. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534–36 (2022). As a prominent book authored by several notable circuit judges (and two Supreme Court Justices) explains:

> What happens when the Supreme Court overturns the standard that it had previously used to resolve a particular class of cases? Are the results reached under the old standard still binding precedent? The answer is no. Instead, federal courts mut apply the new standard and reach the result dictated under that new standard.

*See* Bryan Garner et al., *The Law of Judicial Precedent* 31 (2016).

*Loper Bright* carves out only a small exception to this general rule. *Loper Bright* explains that "[t]he holdings of those cases that specific agency actions are lawful—including the Clean Air Act

holding of *Chevron* itself—are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Loper Bright*, 603 U.S. at 412. *Loper Bright* therefore ties continued *stare decisis* effect to "specific agency actions." *Id.* The term "agency action" refers to the particular agency rule or order subject to judicial review. *See* 5 U.S.C. § 551(13); *id.* §§ 702, 704. *Loper Bright* therefore instructs that it was preserving only *Chevron*-based "holdings" that "specific agency actions are lawful." *Loper Bright*, 603 U.S. at 412. In so doing, *Loper Bright* ensures that rules previously upheld by the Supreme Court are not exposed to *de novo* litigation. *United States v. Trumbull*, 114 F.4th 1114, 1125–26 (9th Cir. 2024) (Bea, J., concurring in the judgment). But for all other rules, courts must follow *Loper Bright*'s interpretive methodology, not abrogated reasoning. *Id.*

This means that after *Loper Bright*, only *Coke*'s core holding about the 1975 rule survives: "the Department's [1975] regulation [was] valid and binding." *Coke*, 551 U.S. at 162. But this case involves the 2013 rule, a different "specific agency action," so *Coke*'s surviving holding doesn't help DOL. *Coke*'s reasoning about "gaps," as opposed to its core holding, has been abrogated by *Loper Bright*. *See In re MCP No. 185*, 124 F.4th 993, 1002 (6th Cir. 2025). Therefore, "[i]n the wake of *Loper Bright*, the *Chevron* analysis in [*Coke*] is no longer valid." *Trumbull*, 114 F.4th at 1125 (Bea, J., concurring in the judgment).

DOL has no legal answer, so it has now pivoted to denying that *Coke* even applied *Chevron*. That denial is not credible. The very question presented in *Coke* was whether the 1975 rule was entitled to deference under *Chevron*. Question Presented, No. 06-593, *supra*. That is the question the Court resolved. *Coke* begins by citing *Chevron* and discussing DOL's rulemaking authorities as sufficient delegations at step zero of *Chevron*, citing *Mead*. *Coke*, 551 U.S. at 165. *Coke* then observes, without much textual analysis, that the companionship-services exemption has "gaps" and

that "the text of the FLSA does not expressly answer the third-party-employment question"—the classic determination of an implied delegation from ambiguity at step one of *Chevron. Id.* at 165, 168. In *Chevron*'s words, *Coke* concluded that "Congress has not directly addressed the precise question at issue." *Chevron*, 467 U.S. at 843, *overruled by Loper Bright*, 603 U.S. 369. The word "gap," *Chevron*-speak for an implied delegation to resolve ambiguity, is used eight times in *Coke*. 551 U.S. at 165–74. *Coke* ends by explaining that DOL's 1975 rule is binding courts under *Chevron* because DOL had gone through the necessary formalities, including "notice-and-comment procedures," citing *Mead* again. *Id.* at 173–74. From beginning to end, *Coke* applied the *Chevron* framework. Indeed, *Coke* cites *Chevron* and *Mead* seven times. The leading treatise describes the Supreme Court's decision in *Coke* as an application of *Chevron*. Richard J. Pierce, Jr., *Administrative Law Treatise* § 3.6 (5th ed. 2010) (noting that in *Coke*, "[t]he Court applied *Chevron* deference"). *Coke*, in short, "was a *Chevron* case down to its bones." *Tennessee v. Becerra*, 131 F.4th 350, 372 (6th Cir. 2025) (Kethledge, J., dissenting in part and concurring in the judgment in part). The Court should not follow abrogated reasoning that conflicts with *Loper Bright*, nor should the Court accept DOL's re-writing of history and precedent.[7]

### 2.  *Coke* should not be extended to the live-in exemption

Regardless, *Coke*'s reasoning wouldn't be binding as to the live-in exemption. *Coke* involved the exemption for companionship services, not the live-in exemption, and *stare decisis* "does not require courts to extend" reasoning to other statutory provisions, particularly so when that reasoning has been undermined or (as here) has been abrogated by later developments, as *Coke*'s

---

[7]  Until *Loper Bright*, DOL read *Coke* as a *Chevron* case. *See* 78 Fed. Reg. at 60,481. So did the D.C. Circuit, at DOL's urging. *See Home Care III*, 799 F.3d 1084.

reasoning has. *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 817 (6th Cir. 2015) (Sutton, J.); *see also Freedom From Religion Found., Inc. v. County of Lehigh*, 933 F.3d 275, 282 n.5 (3d Cir. 2019) (Hardiman, J.).

The live-in exemption is also different from the companionship-services in a key respect that matters quite a bit after *Loper Bright*. Most notably, unlike the exemption for companionship services, the live-in exemption does not "expressly delegate to an agency the authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 394–95 & n.5 (cleaned up) (citing companionship-services exemption as an example of an "express delegation"). That delegation matters after *Loper Bright. See id.* Throughout the opinion, and in its critical passage, *Coke* relied upon the "broad grant of definitional authority" in the exemption for companionship services to "infer" a delegation. *Coke*, 551 U.S. at 168. The live-in exemption lacks any such express delegation, so DOL's analogy fails.

## II. 29 C.F.R § 552.109 Exceeds the Department of Labor's Delegation to Define or Delimit the Terms of the Companionship-Services Exemption

One statutory violation is enough to vacate 29 C.F.R. § 552.109. If the Court agrees with Part I and vacates 29 C.F.R. § 552.109, then the Court need not decide whether the rule conflicts with the companionship-services exemption. *See infra* Part III. But regardless, DOL's rule is unlawful because it exceeds DOL's delegated authority under the companionship-services exemption and is untethered to the statute.

Unlike the live-in exemption, the exemption for companionship services vests DOL with authority to define and delimit the specific terms of the exemption by regulations. 29 U.S.C. § 213(a)(15). Therefore, the best reading of the companionship-services exemption is "that the

agency is authorized to exercise a degree of discretion." *Loper Bright*, 603 U.S. at 394; *see also May-field v. DOL*, 117 F.4th 611, 617–18 (5th Cir. 2024) (same type of FLSA express delegation); *Pickens*, 133 F.4th 588 (same type of FLSA delegation). But "a degree of discretion" does not authorize DOL to amend statutory text at will. The Court must still independently police the boundaries of DOL's delegated authority. *Loper Bright*, 603 U.S. at 395. When "there is an uncontroverted, explicit delegation of authority" to define and delimit terms, "the question is whether the Rule is within the outer boundaries of that delegation." *Mayfield*, 117 F.4th at 617. The court must set those boundaries "independently," without any deference. *Loper Bright*, 603 U.S. at 395. That is quite a different legal analysis than under *Chevron*, as courts under *Chevron* deferred to agency interpretations of the boundaries of their delegated authority, unlike under *Loper Bright*. *See, e.g.*, *City of Arlington*, 569 U.S. at 296–297.

Start with the text. "The text of the FLSA makes the applicability of the companionship exemption dependent upon the nature of an employee's activities and the place of their performance, without regard to the identity of the employer." *See* Wage and Hour Advisory Mem. No. 2005-1, *supra*. Thus, as the United States told the Supreme Court, "there is no legal or policy justification for treating employees providing companionship services differently under the FLSA based on the identity of the employer." U.S. *Amicus* Br., *Coke*, *supra*, at 23. The FLSA "shall not apply" to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15). Again, the word "any" has an expansive meaning, so "the entire exemption bespeaks breadth." *Encino Motorcars*, 584 U.S. at 88. An employee "shall" be exempt if the employee is (1) "employed in

domestic service employment"; (2) provides "companionship services"; and (3) serves elderly or infirm individuals who are unable to care for themselves. 29 U.S.C. § 213(a)(15). Nothing in the statute authorizes DOL to add additional conditions.

Construed independently in light of *Loper Bright*, the best reading of DOL's delegation to define or delimit terms doesn't delegate discretion to carve-out third-party employers at will. To define "means to state precisely what something means." *Pickens*, 133 F.4th at 588; *Mayfield*, 117 F.4th at 618. The power to delimit is the inverse of the power to define: it is the power to say what a term doesn't mean or include, so as "to fix or mark boundaries or limits" on a particular term. *Pickens*, 133 F.4th at 588. For example, in 1975, DOL marked the boundaries of the term "companionship services" by excluding employees who spend more than 20% of their time on household work typically performed by maids such as cooking and cleaning, rather than caring for the elderly or infirm. 40 Fed. Reg. at 7,405. That rule thus set forward a "workable method" of identifying who doesn't work in "domestic service employment," and therefore delimited the exemption. *Pickens*, 133 F.4th at 588–89. The rule at issue here, 29 C.F.R. § 552.109, doesn't do anything like that.

Even if DOL could in theory delimit an actual statutory term to exclude employees of third-party employers, DOL has never even explained what term it is delimiting. Ms. Coke argued that the term "domestic service employment" should be read by analogy to the Social Security Act as a term of art, to limit exempt employees to those who work solely for the household receiving the services. But to this day, DOL has not delimited the term that way. DOL agrees that the employees here are employed in domestic service. *See, e.g.*, App'x 9a; *see also* 29 C.F.R. § 552.3. As Judge Leon put it, once DOL defined "domestic service employment" this way, "the statutory loop was

closed." *Home Care I*, 76 F. Supp. 3d at 145. DOL is therefore not acting within the boundaries of its delegation but simply re-writing an exemption to carve out a disfavored class of employers by fiat.

DOL chose this atextual path for a reason. Reading "domestic service employment" to exclude employees of third parties would create two problems. First it would have made family members who did not live in the same household liable for overtime, so long as they qualified as joint employers under the FLSA's broad definition of "employer." That would be unpopular. Second, defining or delimiting "domestic service employment" to exclude third-party employers and extending that reading "across the FLSA" would have absurd results. *Coke*, 551 U.S. at 169. For example, applying that reading to the coverage provisions for employees in domestic service, 29 U.S.C. §§ 206(f), 207(*l*), "would place outside the scope of FLSA's wage and hour rules any butlers, chauffeurs, and so forth who are employed by *any* third party" not covered as an enterprise before 1974, which "seems clearly contrary to Congress' intent in enacting the 1974 Amendment." *Coke*, 551 U.S. at 169.

So, DOL chose an unlawful path and drew an arbitrary line divorced from the statutory text. *Loper Bright*, 603 U.S. at 395. Under DOL's rule, third parties who are joint employers "may not avail themselves" of the exemptions. 29 C.F.R. § 552.109(a), (c). But "the individual or member of the family or household, even if considered a joint employer, is still entitled to assert" the exemptions as to the same employee. *Id.*

This creates a paradox that proves it is not delimiting text. The statutory exemption applies to the "employee," not to the employer. 29 U.S.C. § 213(a)(15), (b)(21). Under DOL's rule, however, an employee can paradoxically be exempt and not exempt at the same time. Nothing in the

exemption, however, contemplates treating an employee as "akin to Schrödinger's cat: both [exempt] and [not exempt] at the same time," for some joint employers and not others. *Allegheny Def. Project v. FERC*, 964 F.3d 1, 10 (D.C. Cir. 2020) (en banc). As in *Restaurant Law Center*, the rule thus "creates a paradox that is not obviously capable of resolution." 120 F.4th at 173. The rule should be vacated for this reason alone.

Of course, DOL gerrymandered the exemption to avoid an unpopular consequence: subjecting relatives who are joint employers to joint liability or radically changing the coverage of the 1974 Amendments. That would be a fine choice for Congress to make. But DOL cannot avoid that result by fiat. It can only avoid that result by defining or delimiting specific terms. And a rule that creates a Schrödinger's cat paradox and rests upon administrative fiat divorced from text is, by definition, not within that delegation and a fundamentally arbitrary and unreasonable reading. *See Chamber of Com. of the U.S. of Am. v. DOL*, 885 F.3d 360, 382 (5th Cir. 2018) ("Illogic and internal inconsistency are characteristic of arbitrary and unreasonable agency action."). Therefore, 29 C.F.R. § 552.109 must be vacated.

Reasoning or dicta in *Coke* doesn't help DOL because its reasoning has been abrogated by *Loper Bright*. *See supra* Part I.C. This Court must now set the boundaries of the agency's delegated authority *de novo*, without deference. *Mayfield*, 117 F.4th at 617. But regardless, in *Coke*, even the Supreme Court's broadest dicta never greenlighted a paradoxical regime divorced from text where employees are exempt and not exempt at the same time. The Court should not greenlight this regime divorced from text here.

### III.    29 C.F.R § 552.109 Must Be Vacated in Full

"Finally we come to the remedy." *Comité De Apoyo A Los Trabajadores Agrícolas v. Perez*, 774 F.3d 173, 191 (3d Cir. 2014). Under binding precedent, the mandatory remedy for an unlawful rule under the APA is for the Court to "set aside" the agency action, 5 U.S.C. § 706(2)— in other words, to vacate the rule. *Perez*, 774 F.3d at 191; *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 827 (2024) (Kavanaugh, J., concurring) ("[T]he APA authorizes vacatur of agency rules."). The Court should vacate 29 C.F.R § 552.109. In addition or in the alternative, the Court should enter a "declaratory judgment" declaring 29 C.F.R § 552.109 void and unenforceable. 5 U.S.C. § 703.

No portions of 29 C.F.R. § 552.109 should be spared. DOL's rule doesn't include a severability clause, so the agency didn't express any intent that it should survive piecemeal. "If a court holds portions of a rule unlawful, and the agency has been silent about severability, then the default remedy is to vacate the entire rule, including those portions that the court did not hold unlawful." Admin. Conf. of the U.S., Recommendation, *Severability in Agency Rulemaking* (2018), https://perma.cc/EK43-A7JV; *see also Am. Petroleum Inst. v. EPA*, 862 F.3d 50, 71 (D.C. Cir. 2017) (court will "sever and affirm a portion of an administrative regulation only when [it] can say without any substantial doubt that the agency would have adopted the severed portion on its own" (cleaned up)). The Court should vacate 29 C.F.R. § 552.109 in full if Plaintiffs prevail on any of their arguments.

### IV.    Excluding "Care" from "Companionship Services" Is Unlawful

Congress enacted the exemption for companionship services to help "individuals who (because of age or infirmity) are unable to care for themselves." 29 U.S.C. § 213(a)(15). As courts

have recognized, "Congress created the 'companionship services' exemption to enable guardians of the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them." *Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir. 2004).

Under DOL's 2013 view, however, the exemption covers only "fellowship" and "protection," such as "watching television together; visiting with friends and neighbors; taking walks; playing cards, or engaging in hobbies." 78 Fed. Reg. at 60,464. It does not include "care" including help with activities of daily living, such "dressing, grooming, feeding, bathing, toileting, and transferring," unless these activities are incidental to fellowship and protection (no more than one-fifth of the working time), and the employers prove it by keeping meticulous records of all their activities. 29 C.F.R. § 552.6(b). Under the rule, a father who cares for an "adult, physically disabled son" full time "would not fall under the companionship services exemption." 78 Fed. Reg. at 60,488.

In the past, DOL has argued that Plaintiffs lack standing to challenge the purported definition of companionship services in 29 C.F.R. § 552.6 because they are categorically excluded from claiming the exemption under 29 C.F.R. § 552.109, and courts have agreed. *See Home Care III*, 799 F.3d at 1096 ("In light of our disposition with respect to the third-party-employer regulation, appellees cannot show that the revised definition of companionship services causes their member companies injury in fact."). If the Court holds 29 C.F.R. § 552.109 unlawful, however, this objection will evaporate.

Plaintiffs did not specifically challenge this regulation in the operative complaint. But leave to amend a complaint must be freely granted, so if the Court holds 29 C.F.R. § 552.109 unlawful

as Plaintiffs request, Plaintiffs will then have standing to challenge 29 C.F.R. § 552.6, and this Court should allow Plaintiffs leave to amend their complaint unless amendment is futile. *In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 112 (3d Cir. 2025); *Oxford House, Inc. v. Township of North Bergen*, 158 F.4th 486, 496 (3d Cir. 2025).[8] In order to allow a faster resolution and resolve this pure question of law, DOL could stipulate that Plaintiffs may challenge 29 C.F.R. § 552.6 now without a *pro forma* amendment specifically referencing this rule.

If the Court reaches the merits now, the Court should hold that 29 C.F.R. § 552.6 is unreasonable. To demote "care" in favor of "television" and "cards," DOL's 2013 rule relied upon a single dictionary definition of "companion," as a "person who associates with or accompanies another or others; associate; comrade." 78 Fed. Reg. at 60,464 (quoting *Webster's New World Dictionary* 288 (2d College ed. 1972)). At least here, DOL is claiming to define a term in the exemption. *Mayfield*, 117 F.4th at 617–18. But DOL's definition of "companionship services" is unreasonably narrow, as it effectively repeals the exemption by wiping "care" out of the term companionship services.

Start with text. DOL quoted a single dictionary definition defining a "companion" as an "associate," but that proves nothing about the meaning of "companionship services" in context. *See The American Heritage Dictionary* 146 (1969). The contextually relevant definition of "companion," omitted by DOL, describes the *job* of a "companion" as "[a] person employed to assist, live with, or travel with another." *Id.* Aides hired to help the elderly and infirm with activities of daily

---

[8] Plaintiffs are attaching a proposed amended consolidated complaint specifically challenging 29 C.F.R. § 552.6 as well.

living fit this definition to a T: they "assist" them. DOL therefore arbitrarily ignores that the statute does not use the word "companion," but the term "companionship services," which describes an occupation, not simply a form of camaraderie. A friend coming over to watch the game may be a companion, but it would be unidiomatic to say that he is providing "companionship services." The occupation of "companionship services" means now as in 1974 "[a]ssistance provided to someone who needs help with personal matters such as bathing and dressing." *Companionship Services*, Black's Law Dictionary (12th ed. 2024). In other words, home care. Eliminating "dressing, grooming, feeding, bathing, toileting, and transferring" from the exemption thus exceeds the bounds of the delegation and is inconsistent with "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395.

DOL's interpretation also collides with the textually derived purpose of the exemption: helping individuals "who (because of age or infirmity) are unable to care for themselves." 29 U.S.C. § 213(a)(15). DOL's novel notion that Congress merely wanted to exempt a non-existent labor market of individuals paid to play backgammon and watch TV, not those who help care for the old and infirm, does not make sense of text or purpose. Erasing "care" from "companionship services" therefore "defies logic, and Congressional intent." *Home Care Ass'n of Am. v. Weil*, 78 F. Supp. 3d 123, 128 (D.D.C. 2015) ("*Home Care II*"), *rev'd on other grounds*, *Home Care III*, 799 F.3d at 1097. Judge Leon adjudicated 29 C.F.R. § 552.6 on the merits, and he ordered the rule "VACATED." *Home Care II*, 78 F. Supp. 3d at 130. If the Court reaches the question now, then it should do the same.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Plaintiffs.

Respectfully submitted,


Dated: December 31, 2025

*/s/ Bruce C. Fox*
Bruce C. Fox (PA 42576)
McCardle Booker (PA 209470)
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
(412) 566-1500
bruce.fox@obermayer.com
mccardle.booker@obermayer.com


*Counsel for Plaintiffs Intra-National*
*Home Care, LLC, and*
*Agewell Home Helpers, Inc.*

*/s/ James R. Conde*
Michael B. Buschbacher (DC 1048432)
James R. Conde (DC 1031694)
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, DC 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com


*Counsel for Plaintiff Intra-National*
*Home Care, LLC*