**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

INTRA-NATIONAL HOME CARE, LLC,

*Plaintiff*,

v.

DEPARTMENT OF LABOR, et al.,

*Defendants*.

No. 2:20-cv-01545-WSH

AGEWELL HOME HELPERS, INC.,

*Plaintiff*,

v.

DEPARTMENT OF LABOR, et al.,

*Defendants*.

No. 2:20-cv-01773-WSH

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION.................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

I.    29 C.F.R § 552.109 Conflicts with the Best Reading of the Live-In Exemption ................. 3

    A.    Section 29(b) Doesn't Authorize DOL to Amend the Live-in Exemption as "Necessary" ..................................................................................................... 4

    B.    DOL Does Not Have Interpretive Authority To "Define" or "Delimit" Terms in the Live-In Exemption..................................................................................... 9

II.   29 C.F.R § 552.109 Exceeds the Department of Labor's Delegation to Define or Delimit the Terms of the Companionship-Services Exemption ................................................... 12

III.  *WiCare* Is Partially Irrelevant and Otherwise Unpersuasive............................................15

IV.   Vacatur and Declaratory Relief Are Proper ...................................................................17

CONCLUSION ................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Home Care Ass'n of Am. v. Weil*,
76 F. Supp. 3d 138 (D.D.C. 2014)....................................................... 4, 7, 8, 13, 29

*Home Care Ass'n of Am. v. Weil*,
78 F. Supp. 3d 123 (D.D.C. 2015)........................................................ 34

*Home Care Ass'n of Am. v. Weil*,
799 F.3d 1084 (D.C. Cir. 2015) ....................................................4, 8, 15, 25, 32, 34

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ................................................................................... 3

*City of Arlington v. FCC*,
569 U.S. 290 (2013)..................................................................................2, 15

*Comité De Apoyo A Los Trabajadores Agrícolas v. Perez*,
774 F.3d 173 (3d Cir. 2014)...................................................................... 18

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ................................................................................ 18

*Dia v. Ashcroft*,
353 F.3d 228 (3d Cir. 2003)....................................................................8, 13

*Gen. Elec. Co. v. Gilbert*,
429 U.S. 125 (1976) ................................................................................. 6

*In re Grand Jury Investigation*,
445 F.3d 266 (3d Cir. 2006) .....................................................................15

*Hallstrom v. Tillamook County*,
493 U.S. 20 (1989)..................................................................................... 5

*Home Care Ass'n of Am. v. Weil*,
799 F.3d 1084 (D.C. Cir. 2015) ................................................................ 9

*Long Island Care at Home, Ltd. v. Coke*,
551 U.S. 158 (2007) ............................................................................. 2, 7

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369..............................................................................2, 3, 4, 6, 7, 11, 17

ii

*Mayfield v. DOL*,
    117 F.4th 611 (5th Cir. 2024) ................................................................... 12

*In re MCP No. 185*,
    124 F.4th 993 (6th Cir. 2025) .................................................................... 9

*Michigan v. EPA*,
    576 U.S. 743 (2015) ................................................................................ 12

*Moctezuma-Reyes v. Garland*,
    124 F.4th 416 (6th Cir. 2024) ................................................................. 10

*Pickens v. Hamilton-Ryker IT Sols., LLC*,
    133 F.4th 575 (6th Cir. 2025) .............................. 1, 2, 5, 12, 13, 14, 15, 17

*Rangel-Fuentes v. Bondi*,
    155 F.4th 1138 (10th Cir. 2025) ................................................................ 6

*Rest. L. Ctr. v. DOL*,
    120 F.4th 163 (5th Cir. 2024) .................................................................... 8

*Ryan LLC v. FTC*,
    739 F. Supp. 3d 496 (N.D. Tex. 2024) ................................................... 5, 6

*Schaffner v. Monsanto Corp.*,
    113 F.4th 364 (3d Cir. 2024) ..................................................................... 8

*United States v. Dunkel*,
    927 F.2d 955 (7th Cir. 1991) ................................................................... 10

*United States v. Pelullo*,
    399 F.3d 197 (3d Cir. 2005) ....................................................................... 8

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ................................................................................ 12

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 635 (2002) ................................................................................ 18

*Walsh v. WiCare Home Care Agency*,
    No. 24-2565, 2026 WL 36153 (3rd Cir. Jan. 6, 2026) ...................... 3, 15, 16

*In re Yellow Corp.*,
    152 F.4th 491 (3d Cir. 2025) ..................................................................... 9

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 18 ...................................................................................................... 7

**Statutes**

5 U.S.C. § 703 ......................................................................................................................... 18

29 U.S.C. § 202 note............................................................................................................... 4

29 U.S.C. § 206(f)..................................................................................................................11

29 U.S.C. § 207(l)..................................................................................................................11

29 U.S.C § 213(a)(15)................................................................................................2, 9, 11, 16

29 U.S.C. § 213(b)(21) ..................................................................................................... 11, 16

**Regulations**

29 C.F.R. § 552.101..............................................................................................................13

29 C.F.R. § 552.106.............................................................................................................. 14

29 C.F.R. § 552.109(c) .....................................................................................................4, 7, 9

40 Fed. Reg. 7,404 (1975)..................................................................................................... 14

90 Fed. Reg. 28,976 (July 2, 2025) ....................................................................................... 3

**Other Authorities**

The White House, Press Release, *We Can't Wait* (Dec. The White House, Press
    Release, *We Can't Wait: President Obama Will Announce Administrative Action
    to Provide Minimum Wage and Overtime Protections for Nearly 2 Million In-Home
    Care Workers* (Dec. 15, 2011), https://perma.cc/H8EM-H3QS.............................................. 1

*Through the Looking Glass*, *in* The Complete Works of Lewis Carroll 196 (1939)..........................11

**INTRODUCTION**

The Department of Labor's ("DOL's") arguments in support of summary judgment are anticipated and rebutted in Plaintiffs' memorandum in support of summary judgment. Mem. of P. & A. in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mem."), Dkt. 113. Plaintiffs write briefly in opposition to underscore a few points in response.

**First**, DOL still has nothing to say about the text of the live-in exemption. Instead, DOL claims discretion to depart from the best reading of the text. But unlike the companionship-services exemption, the live-in exemption conspicuously lacks a specific delegation of interpretive discretion. It doesn't authorize the agency to "define" or "delimit" anything. To get around this, DOL argues that a general grant of rulemaking authority in the 1974 Fair Labor Standards Act ("FLSA") amendments is a lever that may be used to change the law whenever the Executive Branch "can't wait for Congress."[1]

This argument is nothing less than a request to restore the "ancien régime of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*" *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587 (6th Cir. 2025). The name of the game is now "discretion," but the upshot is the same: once an agency "locate[s] … a grant of general rulemaking authority over a statute," Article III judges must subordinate their legal judgment about the best reading of the law to an executive agency's views. *City of Arlington v. FCC*, 569 U.S. 290, 322 (2013) (Roberts, C.J., dissenting). That

---

[1]  The White House, Press Release, *We Can't Wait: President Obama Will Announce Administrative Action to Provide Minimum Wage and Overtime Protections for Nearly 2 Million In-Home Care Workers* (Dec. 15, 2011), https://perma.cc/ H8EM-H3QS.

contention whistles right past *Chevron*'s "tombstone," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 417 (Gorsuch, J., concurring), and should be roundly rejected.

*Second*, as to the companionship-services exemption, all parties agree on the major premise: Congress specifically delegated to DOL interpretive discretion only to "define[] and delimit[]" the terms of the exemption. 29 U.S.C § 213(a)(15). But DOL gets the minor premise wrong: discretion under *Loper Bright* is not a *City of Arlington*-style blank check to redefine the scope of the agency's authority. *See Pickens*, 133 F.4th at 587–88. Rather, this court must independently construe the delegation to "define[] and delimit[]" and ask whether DOL has acted within those boundaries, without deference. *Id.*

DOL doesn't satisfy this minor premise. Neither the rule nor DOL's brief argues that the rule defines or delimits any statutory terms, and DOL still hasn't explained what terms it is purporting to delimit by excluding third-party employers. That silence reflects the truth: DOL is defining and delimiting no terms at all. Rather, relying upon *Chevron*, DOL seized the legislative pen from Congress and excluded a disfavored class of employers by fiat. That's why the rule's preamble cites *Chevron* throughout, why it's pre-*Loper Bright* briefing trumpeted *Chevron* deference from beginning to end, and why the D.C. Circuit's holding expressly relied upon *Chevron*.

DOL now avoids the-case-that-must-not-be named, but its heavy reliance upon *Chevron*-based dicta in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) gives up the game: DOL wants this Court to ignore *Loper Bright*'s overruling of the *Chevron* framework (and the consequent abrogation of *Coke*'s reasoning) to amend the FLSA without Congress. After *Loper Bright*, this Court must reject such "bold pretensions." *Loper Bright*, 603 U.S. at 410.

2

In opposition, DOL will rely upon a Third Circuit panel's nonprecedential decision in *Walsh v. WiCare Home Care Agency*, No. 24-2565, 2026 WL 36153 (3rd Cir. Jan. 6, 2026). As explained below, this nonprecedential decision didn't even involve the live-in exemption, the principal exemption at issue here, was poorly briefed by the home-care defendants, and is wholly conclusory, and thus unpersuasive.

The Court should deny DOL's motion, grant Plaintiffs' motion, and vacate the third-party employer rule.

## ARGUMENT

**I.    29 C.F.R § 552.109 Conflicts with the Best Reading of the Live-In Exemption**

Plaintiffs' reading of the live-in exemption is the best reading of the law: the identity of the employer is irrelevant. Pls.' Mem. at 11–14. DOL never disputes that ordinary meaning, canons of construction, statutory structure, and DOL's contemporaneous and longstanding reading of the live-in exemption support that conclusion. After all, for forty years, DOL agreed with Plaintiffs, and DOL now proposes to restore that contemporaneous reading of the exemption in light of *Loper Bright*, 90 Fed. Reg. 28,976 (July 2, 2025). If this Court settles the single best reading of the live-in exemption without a DOL rule to "fall back on," as it must, then it's not a close call. *Loper Bright*, 603 U.S. at 403–04. Plaintiffs win.

DOL nevertheless asks this Court to allow it "one last drink" of deference and ignore the best reading. *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001). To avoid the text of the live-in exemption and *Loper Bright*, DOL claims that a general rulemaking authority gives it "discretion" to depart from best reading of the live-in exemption and to exclude disfavored third-party employers from mandatory exemptions at will, 29 C.F.R. § 552.109(c), arguing that *Loper Bright* changed

3

nothing. DOL is wrong. DOL's argument for "discretion" to say what the law is based upon a general rulemaking grant had a name—*Chevron* deference—and it is overruled. DOL's argument for continued deference as to the live-in exemption therefore conflicts with the Supreme Court's decision in *Loper Bright*.

### A. Section 29(b) Doesn't Authorize DOL to Amend the Live-in Exemption as "Necessary"

First, to support continued deference, DOL points to the general rulemaking authority in section 29(b) of the FLSA amendments of 1974. Mem. of L. in Supp. of Defs.' Mot. for Summ. J. at 13 ("DOL's Mem."), Dkt. 111. Section 29(b), again, allows the Secretary of Labor only to generally "prescribe necessary rules, regulations, and orders with regard to the" 1974 FLSA amendments. 29 U.S.C. § 202 note. The live-in exemption, however, specifically and clearly provides that overtime "*shall not apply* with respect to … any employee who is employed in domestic service in a household and who resides in such household." *Id.* § 213(b)(21) (emphasis added). This text is mandatory and has no exceptions: overtime "shall not apply" to live-in domestic service employees, full stop. Pls.' Mem. at 18. DOL nevertheless asserts that section 29(b) allows to expand and contract the 1974 amendments, including the mandatory live-in exemption, whenever the agency thinks it "necessary" to update the law to address industry changes "with an eye to policy preferences that had not made it into the statute." *Loper Bright*, 603 U.S. at 403–04.

DOL has no such authority. Plaintiffs have already explained, at length, why "[t]ext, structure, context, and precedent all cut against DOL's reading of section 29(b)." Pls.' Mem. at 16–18. To summarize, under the Administrative Procedure Act ("APA") and *Loper Bright*, judges must settle the single best reading unless a statute "unambiguously" provides otherwise by vesting an agency with binding interpretive authority. *Pickens*, 133 F.4th at 587. A facially ambiguous grant of

4

general rulemaking authority that merely authorizes "necessary" rules is not an unambiguous delegation of interpretative authority requiring courts to depart from the APA's command of independent judgment. No rule is "necessary"—i.e., indispensable—to carry out the self-executing and *mandatory* text of the live-in exemption. Nor is such a rule even appropriate. Whatever the general rule might be, Congress specifically said that overtime "shall not apply" to live-in employees in domestic service, full stop, not that overtime "shall not apply *unless*" DOL thinks it "necessary." Agencies, just like courts, "are not at liberty to create an exception where Congress has declined to do so." *Hallstrom v. Tillamook County*, 493 U.S. 20, 27 (1989).

The best reading of section 29(b) is that it grants the Secretary of Labor power to prescribe rules of internal administration binding *upon the executive branch*, not extraordinary power to depart from the APA's command of independent judicial review on questions of law and prescribe rules that bind Article III judges to disregard the best reading of the statutory text. Pls.' Mem. at 19–20; *see also Ryan LLC v. FTC*, 739 F. Supp. 3d 496, 511–13 (N.D. Tex. 2024) (holding that similar delegation to the FTC is a "housekeeping" statute and thus that FTC lacks power to issue substantive rules prohibiting non-compete agreements). Before *Chevron*, the Supreme Court interpreted an identical general rulemaking authority in the Internal Revenue Code, and rejected the same kind of controlling "discretion" that DOL argues for, applying instead at most a form of *Skidmore* respect. Pls.' Mem. at 18 (citing *Rowan Cos. v. United States*, 452 U.S. 247, 253 (1981)). That follows from the background convention of the time, which required that Congress expressly state that the agency's rules "shall have the force of law," or otherwise expressly attach sanctions to violations of the agency's rules. *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 (1976); Pls.' Mem. at 19–20; *Ryan LLC*, 739 F. Supp. 3d at 511–12 ("When authorizing legislative rulemaking, Congress

5

also historically prescribes sanctions for violations of the agency's rules—confirming that those rules create substantive obligations for regulated parties.").

DOL's contrary reading of section 29(b) as repealing the APA by implication and granting the Secretary authority to prescribe "legislative rules" reshaping the scope of federal statutes is not only a worse reading—it is a request for continued *Chevron* deference. DOL's Mem. at 14. As Plaintiffs have explained, nearly every federal statute contains a similar general rulemaking authority, so DOL's reading of section 29(b) "'would render *Loper Bright* essentially toothless,' *Rangel-Fuentes v. Bondi*, 155 F.4th 1138, 1143 (10th Cir. 2025), swallow all of the specific examples of delegations carefully mentioned in *Loper Bright*, and 'quietly reinstitute' *Chevron*." Pls.' Mem. at 21. That is untenable. *Loper Bright* is a "jolt to the legal system," not a change in labels. *Loper Bright*, 603 U.S. at 476 (Kagan, J., dissenting).

DOL's expansive reading of section 29(b) also has stunning implications for the 1974 FLSA amendments. If DOL's view of section 29(b) is upheld, then it would follow that DOL could rely upon section 29(b) not just to amend the live-in exemption, but also to amend coverage under the 1974 FLSA amendments, by, for example, excluding all domestic workers employed by any third party from the domestic service coverage provisions of the amendments. Pls.' Mem. at 20. There is no indication that, in an ancillary general rulemaking provision, Congress gave DOL extraordinary power to amend the FLSA whenever DOL deems it "necessary" to act without Congress, and inferring that discretion would violate not only the APA but also the non-delegation doctrine, the major-questions doctrine, and the separation of powers, as DOL identifies no intelligible principle constraining its claimed delegation to amend the statute and compel independent Article III judges to follow executive decrees about the FLSA's scope. Pls.' Mem. at 20–21. In our system,

Congress, not executive agencies, decides what amendments are "necessary." U.S. Const. art. I, § 8, cl. 18. And judges "exercise judgment free from the influence of the political branches." *Loper Bright*, 603 U.S. at 403.

DOL seeks judicial cover for its extraordinary reading of section 29(b) by citing *Coke*'s passing reference to section 29(b). But *Coke* didn't even involve the live-in exemption, and the Court's passing reference to section 29(b) is irrelevant after *Loper Bright*. *Coke* cited section 29(b) only once, as a secondary citation, at the beginning of the analysis section, as additional support for the Court's conclusion that DOL's 1975 rule—a rule that DOL said was the best reading—was eligible for deference at "step zero" of the *Chevron* framework, disagreeing with the Second Circuit on that point. *Coke*, 551 U.S. at 165. That is irrelevant after *Loper Bright*, which overrules the *Chevron* framework, including "step zero" and its "many refinements," which were at best a "distraction from the question that matters: Does the statute authorize the challenged agency action?" *Loper Bright*, 603 U.S. at 404, 406; *see also* Pls.' Mem. at 23–24. The answer to the question that matters here is simple: no. The live-in exemption is mandatory, and applies to all employers: DOL cannot declare that disfavored employers "may not avail themselves of" a mandatory exemption and force judges to defer. 29 C.F.R. § 552.109(c).

In a footnote, DOL claims that *Coke* "did not rely upon" the *Chevron* framework and instead anticipated the independent judgment that *Loper Bright* requires, two decades ahead of its time, despite repeatedly citing *Chevron* precedent. DOL's Mem. at 14 n.8. This footnote "is not credible." Pls.' Mem. at 24. The Supreme Court *expressly* granted *Coke* to decide whether *Chevron* deference applied to DOL's 1975 rule, and the Supreme Court decided that issue, repeatedly citing *Chevron* and *Mead* to conclude that there was a "gap," and that DOL had authority to fill that gap

by promulgating the 1975 rule. Pls.' Mem. at 24–25. DOL seeks to re-write not only the statute, but also *Coke*. That is ironic, given that DOL has spent the past two decades arguing that *Coke* applied *Chevron*, and successfully so in the D.C. Circuit. *Id.* at 25 n.7. Both the *Chenery* doctrine and principles of estoppel prohibit DOL from changing its tune at this stage. *See Dia v. Ashcroft*, 353 F.3d 228, 241 (3d Cir. 2003) (en banc) ("In *Chenery*, the Court emphasized a 'simple but fundamental rule of administrative law … that a reviewing court … must judge the propriety of such action solely by the grounds invoked by the agency.'"); *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) (Judicial estoppel applies when "a party's later position [is] clearly inconsistent with its earlier position" and "the party has succeeded in persuading a court to accept that party's earlier position.").

In short, even when "[DOL] is authorized to promulgate rules interpreting and clarifying the FLSA," courts must still follow the single best reading, as the APA requires, not agency interpretations, let alone ukases based on unenacted snippets of legislative history. *Rest. L. Ctr. v. DOL*, 120 F.4th 163, 166, 170–71 (5th Cir. 2024).

No circuit precedent remotely supports DOL's reading of section 29(b). In *Schaffner v. Monsanto Corp.*, the Third Circuit noted that *Loper Bright* did not deprive the EPA of its general ability to issue misbranding regulations implementing the statutory scheme. 113 F.4th 364, 381 n.9 (3d Cir. 2024). The Court, however, noted that "*Loper Bright* requires courts, not agencies, to determine the meaning of statutory terms such as 'misbranding.'" *Id.* If anything, that cuts against DOL, not in its favor. *In re Yellow Corp.*, a complex bankruptcy dispute, involved a statutory provision specifically authorizing the agency to "set conditions 'on the allocation of plan assets,'" which the agency "did." 152 F.4th 491, 501 (3d Cir. 2025). Here, by contrast, there is no specific statutory

8

provision authorizing DOL to "set conditions" on employers claiming the live-in exemption, let alone to unilaterally decide that employers disfavored by DOL "may not avail themselves" of the laws Congress enacted. 29 C.F.R. § 552.109(c). Quite the opposite. Congress made clear that the live-in exemption to overtime is mandatory, giving DOL no discretion at all to decide who may claim an exemption under this provision. There is no asterisk after "shall not apply."

DOL also cites the D.C. Circuit's decision in *Weil*, upholding the rule "pursuant to the two-step *Chevron* framework." *See Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1090 (D.C. Cir. 2015). But "unlike past challenges that the D.C. Circuit considered under *Chevron*," this Court must "no longer afford deference to the [agency's] reading of the statute." *In re MCP No. 185*, 124 F.4th 993, 997 (6th Cir. 2025). Again, DOL attempts to smuggle *Chevron* deference in through *Chevron* precedent, without the name.

### B. DOL Does Not Have Interpretive Authority To "Define" or "Delimit" Terms in the Live-In Exemption

Second, DOL references the delegation of defining and delimiting authority *in the companionship-services exemption*. That separate exemption provides that the FLSA "shall not apply with respect to … any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (*as such terms are defined and delimited by regulations of the Secretary*)." 29 U.S.C. § 213(a)(15) (emphasis added). DOL's brief conflates and confuses the statutory exemptions, and doesn't specifically address the live-in exemption with particularity, but could be read to imply that this delegation may apply to the *live-in exemption* as well. A buried and skeletal argument is forfeited. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Out of an abundance of caution, however, Plaintiffs will address this argument.

The problem with this argument is so obvious, it almost goes without saying: A delegation tucked into a parenthetical of a different exemption in a different paragraph of the statute dealing with a different set of exemptions (exemptions to overtime *and the minimum wage*, not just overtime) comes nowhere close to the unambiguous delegation of interpretive authority needed to overcome the APA's clear command as to the live-in exemption. On the contrary, Congress's choice to specifically delegate interpretive discretion to DOL in the exemption for companionship services, and *not* in the live-in exemption, underscores that Congress knows how to vest DOL with interpretive authority and chose not to grant DOL interpretive discretion as to the terms of the live-in exemption. *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 421 (6th Cir. 2024).

That deliberate difference in treatment makes full sense in context. The exemption for companionship services raises a number of difficult line-drawing implementation questions agencies are good at resolving. Companionship services usually include some household work ordinarily performed by a maid. But how much household work is too much? Congress said that DOL can decide by defining and delimiting the term, within reason. Similarly, what individuals qualify as sufficiently "unable to care for themselves" "because of age or infirmity"? Again, Congress authorized DOL to draw the line. By contrast, the live-in exemption is straightforward and self-executing. A domestic worker is exempt if the worker resides where he or she works. Implementing the term of the statute requires no administrative skill, just legal interpretation and adjudicative fact. That has been the "field" of Article III courts "for at least 221 years." *Loper Bright*, 603 U.S. at 412.

In any event, DOL doesn't even begin to explain how the delegation to define or delimit "such terms"—the terms of the companionship-services exemption—move the needle for the

live-in exemption. The live-in exemption has different statutory terms. The only terms that overlap are the terms "employed in domestic service": The companionship-services exemption uses the redundant phrase "employed in domestic service employment," 29 U.S.C. § 213(a)(15), whereas the live-in exemption, *id.* § 213(b)(21), like the domestic service coverage provisions, *id.* §§ 206(f), 207(*l*), uses the terms "employed in domestic service," without the redundant noun, "employment."

But that overlap is irrelevant: DOL agrees that the employees here are employed in domestic service. *See, e.g.*, Pls.' App'x 9a, 19a, Dkt. 110-4 ("Defendants employ persons in Pennsylvania in domestic service for profit[.]"). That makes sense. Reading "employed in domestic service" to exclude employees of third-party employers "would have absurd results," as it would exclude any domestic employee working for a third party not covered before 1974 from the coverage of the amendments. Pls.' Mem. at 29. Nor has DOL argued that "employed in domestic service" somehow carries a different meaning in the live-in exemption and the domestic service coverage provisions. To the extent DOL belatedly wishes to argue for a Humpty-Dumpy reading of the text,[2] however, it has waived the argument in this litigation by failing to raise it in its brief. Not only that, but DOL *never* made this argument in the 2013 rule either. Again, it is a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015). The Court should stick to that foundational principle.

***

---

[2] *Cf. Through the Looking Glass*, *in* The Complete Works of Lewis Carroll 196 (1939) ("When I use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean— neither more nor less.").

DOL's plea for continued discretion—really, deference—is in any event, academic. It remains a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014). Rewrite is what DOL's rule does: Under the DOL's rewrite, the live-in exemption would read, in effect: "any employee who is employed in domestic service ~~in~~ **by** a household **or family member** and who resides in such household." Pls.' Mem. at 12–13. Therefore, even if DOL has a degree of discretion, it exceeded the boundaries of its discretion by blue-penciling terms and adding some of its own making entirely.

## II.    29 C.F.R § 552.109 Exceeds the Department of Labor's Delegation to Define or Delimit the Terms of the Companionship-Services Exemption

"All agree that [the companionship-services exemption] expressly delegates discretionary authority to the Secretary of the Department of Labor": namely, to define or delimit the specific terms of the exemption. *Pickens*, 133 F.4th at 588; *Mayfield v. DOL*, 117 F.4th 611, 617–18 (5th Cir. 2024). As both *Pickens* and *Mayfield* explain, under *Loper Bright*, courts must independently construe the scope of the delegation and settle the best reading of the delegation, without any deference. *Pickens*, 133 F.4th at 587. The power to define "means to state precisely what something means." *Id.* at 588. The power to delimit is the negative corollary of the power to define: it means "to fix or mark boundaries or limits," by explaining what the terms *do not include*. *Id.* In other words, DOL has a degree of interpretive discretion to say not just what the terms in the exemption for companionship service specifically mean (to define), but also to say what they specifically do *not* mean (to delimit). DOL seems to agree with this reading of the delegation, citing *Pickens* and *Mayfield* favorably.

But that is the start, not the end, of the analysis. The Court must still independently ensure that DOL is acting within the boundaries of the delegation: in other words, whether DOL is defining or delimiting terms. *Id.* at 558. DOL, however, performs only the first half of the analysis, and fails entirely to explain how a rule prohibiting third-party employers from availing themselves of the exemption for companionship services explains what a statutory term means (defines), or what a term does not mean (delimits), by establishing a "workable method" for determining who falls within a specific set of terms, or otherwise. *Id.* at 588. Nor did DOL explain this in the 2013 rule. This failure alone flunks the "corollary" of the foundational *Chenery* rule: that the basis of an administrative action "must be set forth with such clarity as to be understandable." *Dia*, 353 F.3d at 241.

This failure isn't because DOL didn't know how to exercise its authority to define or delimit terms. For example, DOL specifically defines domestic service employment, and specifically delimits the term "domestic service employment" by excluding "[e]mployees employed in dwelling places which are primarily rooming or boarding houses." 29 C.F.R. § 552.101. That regulation is within the boundaries of the Secretary's delegation to delimit terms because it excludes boarding houses from the term "domestic service employment." Similarly, since 1975, DOL has excluded employees who do household work (such as cleaning and cooking) over 20% of their time, drawing a line for when companionship services end, and when maid services begin. 40 Fed. Reg. 7,404, 7,405 (1975). Again, this delimits "companionship services."

The same cannot be said of 29 C.F.R. § 552.109. Unlike DOL's rule excluding boarding houses, DOL's rule excluding third-party employers defines and delimits no particular term in the exemption. DOL can't possibly be defining or delimiting "domestic service employment"—it

13

agrees that the employees here work in domestic service employment. *See supra*. Nor does DOL purport to define or delimit "companionship services." *Cf.* 29 C.F.R. § 552.106. DOL does not argue, for example, that the rule establishes a "workable method" of identifying who provides "companionship services." *Pickens*, 133 F.4th at 588–89. If that were the case, then there is no basis for the rule to apply to the live-in exemption, which covers all "domestic service," regardless of whether it qualifies as a companionship service.

So what, then, is DOL defining or delimiting?

Nothing. DOL is just claiming that it can declare third-party employers outside the protection of the exemption for companionship services because *Coke*, a *Chevron* case, suggested it could declare so in broad obiter dicta, while upholding a diametrically opposed rule. But whatever weight that dicta received before *Loper Bright*, it should get none after. Nor does *Coke* anticipate the analysis *Loper Bright* requires as DOL claims. DOL's Mem. at 14 n.8. Unlike *Pickens* and *Mayfield*, which faithfully apply the framework set out by *Loper Bright*, *Coke* never once bothered to independently set the boundaries of DOL's authority to define or delimit statutory terms in the exemption by construing the power to define and delimit, nor did the Court independently ask whether the agency was acting within those boundaries. It just said the statute didn't "expressly answer" the question. That makes sense, because *Coke* applied *Chevron*, and courts applying *Chevron* deferred to agency interpretations even of the boundaries of their delegated authority in the face of mere "silence," unlike courts following *Loper Bright*. *See City of Arlington*, 569 U.S. at 296–97.

What doesn't make "good sense" is reading the text of the exemption differently based upon the identity of the employer at issue in the case at hand. *Pickens*, 133 F.4th at 588–89. DOL's rule simply declaring third-party employers ineligible under the exemption results in a paradox at

14

war with the text of the exemption: The same employee is exempt, but not exempt, at the same time, for one joint employer (for example, a family member) but not another (a third-party agency). That doesn't make "good sense." It makes no sense. There rule is therefore, at the very least, an unreasonable exercise of discretion.

### III.    *WiCare* Is Partially Irrelevant and Otherwise Unpersuasive

In opposition, DOL will rely upon a Third Circuit panel's non-precedential decision in *WiCare Home Care Agency*, 2026 WL 36153. In a conclusory sentence with no explanation, the *WiCare* panel cites *Loper Bright* and claims that: "In the Third-Party Regulation, the Secretary chose to 'delimit[ ]' the scope of the companionship services exemption by excluding third-party employers from its reach." *Id.* at *2.

Of course, *WiCare* doesn't control. Nonprecedential decisions are not considered decisions of the Third Circuit but are merely "the opinion of three members of the court in a particular case." *In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006); *see also WiCare*, 2026 WL 36153, at *3 n.* ("This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent."). "*A fortiori*, they are not precedents for the district courts." *In re Grand Jury Investigation*, 445 F.3d at 276. For good reason: A non-precedential opinion designation reflects a judgment that the case, as litigated by the parties, "appears to have value only to the trial court or the parties." 3d Cir. I.O.P. 5.3 (Jan. 6, 2023). This reflects the truth that in our adversarial system, lawyers representing their clients don't always put their best foot forward or make the strongest arguments.

To be sure, nonprecedential decisions may be persuasive when relevant. But *WiCare* is both irrelevant to key issues in this case, and otherwise unpersuasive.

15

First, as DOL has explained, *WiCare* is at least partially irrelevant because it concerns only the exemption for companionship services, 29 U.S.C. § 213(a)(15), and doesn't involve the live-in exemption, *id.* § 213(b)(21), which is central to this challenge, and the primary focus of the Plaintiffs' brief. *See* Acting Sec'y of Labor's Opp. to Mot. for Leave to File Br. of Amici Curiae at 7, *Walsh v. WiCare Home Care Agency*, No. 24-2565 (3d Cir. Feb. 11, 2025), Dkt. 30 ("The validity of the 29 C.F.R. § 552.109(c) … is not one of the issues presented in this appeal, which does not involve live-in home care workers."). Although Plaintiffs have a compelling argument that DOL's rule conflicts with the exemption for companionship services, the argument as to the live-in exemption is stronger, given the absence of any delegation to define or delimit, which concededly grants DOL a degree of discretion.

Second, *WiCare* is unpersuasive. *WiCare*'s cursory conclusion conflicts with *Loper Bright* and *Pickens*. The panel never independently set the boundaries of the delegation to "delimit," as *Loper Bright* requires, not does the panel explain how the third-party employer rule actually delimits terms in the statute, as opposed to excluding a class of disfavored employers by sheer fiat. *See WiCare*, 2026 WL 36153, at *2. The panel simply leaps from the (correct) conclusion that DOL has a delegation to delimit terms, to the (erroneous) conclusion that DOL has acted within the boundaries of that delegation, failing to apply the second step analysis that *Loper Bright* requires. *Pickens*, 133 F.4th at 588.

That leap in logic is perhaps excusable given the quality of the briefing of the Third Circuit received. *WiCare*'s principal (and only) brief appears to have largely copy-pasted pre-*Loper Bright* summary judgment briefing before the district, arguing principally (as the lead argument) that the third-party employer rule was unlawful at "*Chevron* Step one" even through the principal brief

16

was filed well after *Loper Bright* had overruled the *Chevron* framework. Br. & App'x for Appellants at 11, *WiCare*, No. 24-2565 (Nov. 4, 2024), Dkt. 15. Very likely, this is because the defendants, a tiny business and its owner, had long since run out of resources to adequately defend itself against the taxpayer-funded DOL. Given the quality of *WiCare*'s presentation, it is unsurprising that the panel held no oral argument and issued an unpublished cursory decision. Here, by contrast, the Court will hold oral argument and has received adequate briefing.

In short, *WiCare* lacks persuasive weight and merely reflects "the limits of the adversarial process" in a particular, poorly briefed case. *Loper Bright*, 603 U.S. at 420 (Gorsuch, J., concurring). "[D]ifferent facts and different legal arguments … dictate different outcomes in" this case. *Id.*

## IV.    Vacatur and Declaratory Relief Are Proper

As to remedy, DOL claims that "[t]he specific remedies that Plaintiffs seek … are unauthorized by law." DOL's Mem. at 24. DOL is wrong.

First, DOL claims that "the APA does not authorize vacatur," citing a concurring opinion by Justice Gorsuch, where the Justice professes skepticism about this APA remedy. *Id.* (citing *United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring in the judgement)). Other Justices, however, disagree. *See Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 827 (2024) (Kavanaugh, J., concurring) ("[T]he APA authorizes vacatur of agency rules."). This debate is interesting, but beside the point, because the Third Circuit has held that the APA authorizes vacatur of agency rules. *Comité De Apoyo A Los Trabajadores Agrícolas v. Perez*, 774 F.3d 173, 191 (3d Cir. 2014). That binding precedent controls, so DOL's argument is a dead end in this circuit, and the Court should vacate 29 C.F.R § 552.109.

Second, DOL agrees that under the APA, parties may seek "declaratory judgments." DOL's Mem. at 25. That follows from the plain text of the APA, which expressly authorizes declaratory judgments binding upon agencies. 5 U.S.C. § 703. Plaintiffs seek that very remedy, so the Court may concededly enter a "declaratory judgment" declaring 29 C.F.R § 552.109 void and unenforceable.

Third, DOL argues that Plaintiffs may not seek a prohibitory injunction restraining DOL from prosecuting enforcement proceedings or bringing new ones against Plaintiffs based upon the unlawful rule because that would interfere with DOL's enforcement discretion. DOL's Mem. at 25–26. The government lost the battle for prosecutorial discretion unchecked by equity a very long time ago. The APA authorizes prohibitory injunctions, 5 U.S.C. § 703, and the quintessentially appropriate prohibitory injunction in agency cases under longstanding caselaw is an injunction preventing government officials from enforcing an unlawful rule or order. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The court need not, however, grant an injunction at this stage. A declaratory judgment and vacatur should suffice to abate DOL's unlawful conduct in this case, and the propriety of injunctive relief can be revisited at a later date in the event declaratory judgment and vacatur somehow prove insufficient.

## CONCLUSION

For the foregoing reasons, the Court should deny summary judgment to DOL and grant summary judgment to Plaintiffs.

Respectfully submitted,


| | |
|---|---|
| */s/ Bruce C. Fox* | */s/ James R. Conde* |
| Bruce C. Fox (PA 42576) | Michael B. Buschbacher (DC 1048432) |
| McCardle Booker (PA 320890) | James R. Conde (DC 1031694) |
| OBERMAYER REBMANN | BOYDEN GRAY PLLC |
| MAXWELL & HIPPEL LLP | 800 Connecticut Avenue NW |
| 525 William Penn Place, Suite 1710 | Suite 900 |
| Pittsburgh, PA 15219 | Washington, DC 20006 |
| (412) 566-1500 | (202) 955-0620 |
| bruce.fox@obermayer.com | mbuschbacher@boydengray.com |
| mccardle.booker@obermayer.com | jconde@boydengray.com |

*Counsel for Plaintiffs Intra-National Home Care, LLC, and Agewell Home Helpers, Inc.*

*Counsel for Plaintiff Intra-National Home Care, LLC*


Dated: January 21, 2026

19